ORIGINAL

*handwritten notes in left margin:*
*sm issued*
*MC to CNOT*
*Cumberland*
*J. Rambo*

*handwritten top right:* ① 5/7/0

# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

1:CV-01-0786

ALLFIRST BANK
25 S. Charles Street
Baltimore, MD 21201

    Plaintiff,

v.

JOHN M. ORTENZIO
510 Orchard Drive
Lemoyne, PA

    Defendant.

\*
\*
\*
\*
\*
\*
\*

FILED
HARRISBURG

MAY 0 4 2001

CASE NO.: MARY E. D'ANDREA, CLERK
Per _____
DEPUTY CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

Plaintiff, Allfirst Bank ("Allfirst"), by its undersigned attorneys, sues Defendant, John M.

Ortenzio ("Ortenzio"), and states as follows:

1.      Allfirst is a banking institution chartered under the laws of the State of Maryland, with

its principal place of business in Baltimore, Maryland. For this reason, Allfirst is a citizen of the State

of Maryland.

2.      Ortenzio is a citizen of the Commonwealth of Pennsylvania.

3.      The matter in controversy in this case exceeds the sum or value of Seventy-Five

Thousand Dollars ($75,000.00), exclusive of interests and costs.

4.      Subject matter jurisdiction exists in this case on the basis of diversity of citizenship and

amount in controversy pursuant to 28 U.S.C. Section 1332.

5.      Ortenzio is the sole shareholder and president of CCI Construction Co., Inc. ("CCI"),

a construction company with its principal office in the Commonwealth of Pennsylvania.

6.      On or about March 24, 1999, Allfirst reestablished for the benefit of CCI a Four

Million Dollar unsecured revolving line of credit and cash management facility pursuant to a Film Cash Solutions Promissory Note ("Film Note"). A true and accurate copy of the Film Note is attached hereto as Exhibit A.

7.    Pursuant to the revolving line of credit and cash management facility established in connection with the Film Note, CCI could borrow sums under the revolving line of credit by the issuance of checks drawn on its account with Allfirst up to the sum of Four Million Dollars. All collections made by CCI from customers were deposited, either directly by customers or by CCI upon receipt from customers, into CCI's account with Allfirst. Such deposits were applied on at least a daily basis to reduce the outstanding balance advanced under the revolving line of credit or, to the extent no amounts were outstanding under the revolving line of credit, into an interest bearing account, whose interest accrued to the benefit of CCI.

8.    Ortenzio did not guaranty the revolving line of credit and had no obligation to Allfirst with respect to the repayment of the revolving line of credit. The sole obligor under the revolving line of credit was CCI.

9.    In November of 1999, CCI experienced financial difficulties with respect to the cash flow generated by its business in the sense that its anticipated cash receipts were expected to be substantially less than its anticipated cash expenditures. To address the problem of CCI's expected cash flow shortfall, Ortenzio requested an additional extension of credit in the amount of One Million Two Hundred Thousand Dollars from Allfirst to or for the benefit of CCI.

10.    Allfirst was unwilling to extend additional credit to CCI on the basis of its credit alone. Allfirst agreed to extend additional credit to CCI in the requested amount of One Million Two Hundred Thousand Dollars, but only upon the condition that Ortenzio guaranty and become a surety

and co-obligor with CCI on the additional One Million Two Hundred Thousand Dollars of indebtedness. To induce Allfirst to extend the additional One Million Two Hundred Thousand Dollars of credit to CCI, Ortenzio agreed to guaranty and become a surety and co-obligor on the additional One Million Two Hundred Thousand Dollars to be extended by Allfirst to CCI.

11.     On November 8, 1999, CCI executed a Commercial Loan Note ("Commercial Note") in the face amount of One Million Two Hundred Thousand Dollars, payable on demand, and Allfirst advanced to CCI the principal amount of the Commercial Note.   Exhibit B is a true and accurate copy of the Commercial Note executed by CCI on November 8, 1999.

12.     Also on November 8, 1999, Ortenzio executed a Suretyship Agreement in which he guaranteed and became a surety for and a co-obligor with CCI with respect to the One Million Two Hundred Thousand Dollar loan extended by Allfirst to CCI., including all principal, interest, and attorneys fees and collection expenses with respect to collecting the sums due on the Commercial Note.   In addition, Ortenzio agreed to pay all attorneys fees and costs of collection incurred by Allfirst in connection with enforcing the Suretyship Agreement and obtaining from Ortenzio the sums due thereon. A true and accurate copy of the Suretyship Agreement is attached hereto as Exhibit C.

13.     Despite the advance of One Million Two Hundred Thousand Dollars by Allfirst to CCI pursuant to the Commercial Note, CCI's cash flow problems continued to exist and to worsen significantly.

14.     On or about February 12, 2000, Ortenzio drew a check upon the account of CCI with Allfirst established in connection with the revolving line of credit in an amount sufficient to repay all sums then due and owing on the Commercial Note and delivered the aforementioned check to a teller of Allfirst with the instruction that the check was being delivered to Allfirst for the purpose of

satisfying in full all sums owed by CCI under the Commercial Note. In accordance with Ortenzio's

instructions, the teller accepted the check and provided Ortenzio with a receipt therefore.

15.    At the time Ortenzio drew the check on the account of CCI and delivered the check

to Allfirst to repay the sums owed on the Commercial Note, CCI had an outstanding balance under

its revolving line of credit. Payment of this check, drawn on the account of CCI established in

connection with the revolving line of credit, required an advance under the revolving line of credit.

Through this procedure, Ortenzio caused CCI to repay Allfirst on a loan which he had guaranteed

with money borrowed from Allfirst under a revolving line of credit which he had not guarantied.

16.    In accepting the check presented by Ortenzio in payment of the One Million Two

Hundred Thousand Dollar loan and in processing and paying the check drawn on the account of CCI,

Allfirst was unaware that the payment being made by Ortenzio of the One Million Two Hundred

Thousand Dollar loan was simply a further borrowing under the revolving line of credit.

17.    The repayment of CCI's loan by Ortenzio was a conditional payment and was not

effective unless and until such time as the outstanding balance and all advances under the revolving

line of credit had been repaid and satisfied.

18.    Ortenzio delivered the CCI check representing a draw upon the revolving line of credit

to Allfirst in payment of the One Million Two Hundred Thousand Dollar loan for the express and sole

purpose of ostensibly discharging his guaranty of the One Million Two Hundred Thousand Dollar

loan and to avoid the obligations which he undertook in executing the Suretyship Agreement.

19.    On or about February 18, 2000, Ortenzio met with representatives of Allfirst and

provided them with detailed information relating to CCI's continuing cash flow shortages. This

information indicated that CCI anticipated severe and substantial cash flow shortages over the

succeeding months, approximating $3.8 million in February and reaching almost $6 million by June, and that its business was in danger of failing.

20.     As a result of the information provided by Ortenzio at the meeting on February 18, 2000, Allfirst on or about February 24, 2000 declared a default under an equipment loan extended to CCI on the basis of a material adverse change in CCI's financial condition and, as a result of the default under the equipment note, also declared a default under the Film Note. Allfirst notified CCI that no further advances would be made on the revolving line of credit and that Allfirst was demanding immediate repayment of all sums due and owing from CCI. Exhibit D attached hereto is a true and accurate copy of the default letter issued by Allfirst to CCI.

21.     Between the date of Ortenzio's meeting with representatives of Allfirst on February 18, 2000 and the declaration of default on February 24, 2000, Allfirst realized that Ortenzio had caused CCI to repay the One Million Two Hundred Thousand Dollar loan with a borrowing under the revolving line of credit for the purpose of attempting to effect a discharge of his personal liability to Allfirst under the Suretyship Agreement.

22.     Pursuant to the cash management facility established under the Film Note, collections from CCI customers were received by Allfirst on February 22, 24, and 25, 2000, aggregating the sum of $2,317,291.28, which amount was applied by Allfirst to reduce the outstanding balance under the revolving line of credit.

23.     On May 19, 2000, CCI filed for relief under Chapter 11 of the United States *Bankruptcy Code*. At the time of the filing of the petition under Chapter 11, the outstanding balance under the revolving line of credit owed by CCI to Allfirst for principal and interest, but exclusive of the costs and expenses of collection, was the sum of $300,373.16. Allfirst has incurred costs and

expenses, including attorneys fees, in connection with the CCI bankruptcy case and will continue to incur such costs and expenses until the bankruptcy case has concluded.

24.    On or about January 10, 2001, CCI, as debtor and debtor-in-possession, instituted an adversary proceeding in the United States Bankruptcy Court for the Middle District of Pennsylvania in a case entitled *CCI Construction Co., Inc. v. Allfirst Bank* (Adversary No. 1-01-00011A) in which CCI seeks to recover either as preferential or as an improper setoff the $2,317,291.28 dollars in payments received by Allfirst on February 22, 24, and 25, 2000. Allfirst is contesting the claims of CCI in the bankruptcy case and has denied that the receipt of the payments were either a preference or an improper setoff. Allfirst has incurred litigation costs and expenses in connection with the defense of this preference action and will continue to incur litigation costs and expenses until the preference action has concluded.

## COUNT I

25.    Allfirst incorporates by reference the matters and facts alleged in paragraphs 1 through 24.

26.    The purported payment by Ortenzio on behalf of CCI on or about February 12, 2000, was a conditional payment and did not have the effect of repaying the Commercial Note or discharging the One Million Two Hundred Thousand Dollar obligation of CCI to Allfirst except to the extent that Allfirst received non-avoidable repayments on the revolving line of credit in an amount sufficient to discharge in full the entire revolving line of credit and all sums due under the Film Note, including attorneys fees and collection expenses.

27.    The revolving line of credit was never discharged in full and presently has an outstanding balance of $326,655.72 with respect to principal and to interest accrued to May 1, 2001.

In addition, Allfirst has incurred attorneys fees and collection costs with respect to collection of the revolving line of credit and defense of the preference action in the bankruptcy case.

28.     Because the revolving line of credit has never been satisfied and discharged in full, the One Million Two Hundred Thousand Dollar loan evidenced by the Commercial Note was never repaid in full and remains an obligation of CCI.

29.     Because the One Million Two Hundred Thousand Dollar loan from Allfirst to CCI was never paid or discharged in full, the obligation of Ortenzio, as guarantor and surety and co-obligor with respect to the One Million Two Hundred Thousand Dollar loan and the Commercial Note, was never discharged or satisfied, such that Ortenzio remains liable under the Suretyship Agreement for all sums owed by CCI pursuant to the One Million Two Hundred Thousand Dollar loan and the Commercial Note.

30.     The amount owed by Ortenzio pursuant to the Suretyship Agreement equals the lesser of (a) the unpaid balance of all principal and interest owed on the Commercial Note as though the February 12, 2000 payment had not been made or (b) the greater of (i) the unpaid principal balance and all accrued interest due under the revolving line of credit, together with all collection costs and attorneys fees, or (b) the unpaid principal balance and all accrued interest due under  the revolving line of credit, together with all collection costs and attorneys fees, plus the amount of any recovery made by CCI in the preference action pending in the bankruptcy case, together with, in either case (a) or (b), all  attorneys fees and collection costs in enforcing the Suretyship Agreement as provided therein.

## COUNT II

31.     Allfirst incorporates by reference the matters and facts alleged in paragraphs 1 through

24.

32.    Because CCI and Ortenzio used the proceeds of the revolving line of credit of CCI with Allfirst to repay the One Million Two Hundred Thousand Dollar loan without Allfirst's knowledge or consent and because Ortenzio was unjustly enriched thereby, Allfirst, as creditor under the revolving line of credit, is equitably subrogated to the rights of Allfirst, as creditor under the One Million Two Hundred Thousand Dollar loan, including through such equitable subrogation the right to enforce and collect upon the Suretyship Agreement executed by Ortenzio.

33.    The amount to which Allfirst is entitled to be equitably subrogated in the enforcement of the Suretyship Agreement against Ortenzio equals the lesser of (a) the unpaid balance of all principal and interest owed on the Commercial Note as though the February 12, 2000 payment had not been made or (b) the greater of (i) the unpaid principal balance and all accrued interest due under the revolving line of credit, together with all collection costs and attorneys fees, or (b) the unpaid principal balance and all accrued interest due under the revolving line of credit, together with all collection costs and attorneys fees, plus the amount of any recovery made by CCI in the preference action pending in the bankruptcy case, , together with, in either case (a) or (b), all attorneys fees and collection costs in enforcing the Suretyship Agreement as provided therein.

## COUNT III

34.    The payment by Ortenzio of the One Million Two Hundred Thousand Dollar loan extended by Allfirst to CCI through the use of a check drawn upon and reflecting an advance on CCI's revolving line of credit with Allfirst constituted common law fraud by Ortenzio in that (a) delivery of the check amounted to and was the equivalent of a representation by Ortenzio that payment of the One Million Two Hundred Thousand Dollar loan was being made by CCI or by

Ortenzio through CCI with monies other than those borrowed under the revolving line of credit. This representation by Ortenzio was knowingly false when made and was justifiably relied upon by Allfirst in giving Ortenzio and CCI a receipt for the payment and noting on its record that the obligations under the Commercial Note and Suretyship Agreement had been satisfied. Allfirst has suffered damages as a direct and proximate result of the knowingly false representation made by Ortenzio upon which it justifiably relied in an amount equal to the lesser of (a) the unpaid balance of all principal and interest owed on the Commercial Note as though the February 12, 2000 payment had not been made or (b) the greater of (i) the unpaid principal balance and all accrued interest due under the revolving line of credit, together with all collection costs and attorneys fees, or (b) the unpaid principal balance and all accrued interest due under the revolving line of credit, together with all collection costs and attorneys fees, plus the amount of any recovery made by CCI in the preference action pending in the bankruptcy case, , together with, in either case (a) or (b), all attorneys fees and collection costs in enforcing the Suretyship Agreement as provided therein.

WHEREFORE, Allfirst requests judgment:

1.    As to Counts One, Two and Three for compensatory damages against Ortenzio in an amount equal to the lesser of (a) the unpaid balance of all principal and interest owed on the Commercial Note as though the February 12, 2000 payment had not been made or (b) the greater of (i) the unpaid principal balance and all accrued interest due under the revolving line of credit, together with all collection costs and attorneys fees, or (b) the unpaid principal balance and all accrued interest due under the revolving line of credit, together with all collection costs and attorneys fees, plus the amount of any recovery made by CCI in the preference action pending in the bankruptcy case, , together with, in either case (a) or (b), all attorneys fees and collection costs in enforcing the

Suretyship Agreement as provided therein;

2.     As to Count Three, punitive damages in an amount equal to One Million Two Hundred

Thousand Dollars or such other amount as is appropriate under the circumstances; and

3.     As to Counts One, Two, and Three, an award of costs.


Lawrence J. Gebhardt
(Motion for *Pro Hac Vice* Admission Pending)
Michael D. Nord
Pennsylvania Bar # 52486
Ramsay M. Whitworth
Pennsylvania Bar # 85208
GEBHARDT & SMITH LLP
The World Trade Center, 9th Floor
401 E. Pratt Street
Baltimore, MD 21202

(410) 752-5830

Attorneys for Allfirst Bank

**EXHIBIT**

Ortenzie
2/13/01 TKB

* a division of
FMB Bank

FILM/CASH SOLUTIONS PROMISSORY NOTE
(PENNSYLVANIA)

**Instructions to Loan Officer:** Use for (a) loans to corporations, regardless of amount, and (b) loans to non-corporate borrowers when the only purpose of any such loan is business and the principal amount of such loan exceeds $50,000.

$ 4,000,000.00                    Mechanicsburg, PA                    March 24 , 1999
                                     (City)          (State)

FOR VALUE RECEIVED, the undersigned ("Borrower") promises to pay on demand to the order of THE FIRST NATIONAL BANK OF MARYLAND, _____ ("Bank"), at any of Bank's offices, or at such other place as the holder of this Promissory Note may from time to time designate, the principal sum of FOUR MILLION _____ and _____00 /100 Dollars ($ 4,000,000.00 ), or such other amount as may be advanced from time to time to Borrower, together with interest thereon at the rate or rates hereafter specified and any and all other sums which may be owing to Bank by Borrower pursuant to this Promissory Note. The following terms, as well as the applicable terms on Exhibit A, attached hereto and incorporated herein by reference, shall apply to this Promissory Note.

1.  **DEFINITIONS.** The following terms have the following definitions:
    A.  "Account" means the commercial checking account maintained by Borrower with Bank and designated as Account No. ___28864514_____ , together with any replacement account therefor.
    B.  "Business Day" means any day other than Saturday, Sunday or other day on which commercial banks in the Commonwealth of Pennsylvania are authorized to close.
    C.  "Incremental Advance Amount" means the amount indicated on Exhibit A as the Incremental Advance Amount. Each Loan must be an integral multiple of such amount.
    D.  "Initial Excess Balance" means, for any Business Day, the amount by which the collected balance in the Account at the end of such Business Day after posting all credits to the Account (subject to funds availability), but prior to posting any debits to the Account, exceeds the Target Balance.
    E.  "Line Availability" means, for any Business Day, an amount equal to the difference obtained by subtracting the aggregate principal balance outstanding under all Loans from the Maximum Line Amount.
    F.  "Loan" means an advance of monies from Bank to Borrower pursuant to the terms of this Promissory Note; and the term "Loans" means more than one Loan.
    G.  "Maximum Advance Amount" means an amount equal to the highest integral multiple of the Incremental Advance Amount which does not exceed the Line Availability.
    H.  "Maximum Line Amount" means the amount indicated on Exhibit A as the Maximum Line Amount, which amount is the maximum aggregate principal balance of the Loans which may be outstanding at any one time.
    I.  "Minimum Loan Advance" means the amount indicated on Exhibit A as the Minimum Loan Advance, which amount is the minimum principal amount of each Loan.
    J.  "Presented Items" means, for any Business Day, the aggregate amount of debits which have been presented for payment against the Account.
    K.  "Prime Rate" means a fluctuating annual rate of interest equal to the greater of: (i) that rate announced from time to time by Bank as its "prime rate;" or (ii) the rate obtained by adding one percent (1%) to the average rate, rounded to the nearest one-tenth of one percent, for three month maturity dealer placed commercial paper for the week most recently reported in the Federal Reserve Statistical Release No. H.15(519) entitled "Selected Interest Rates" or any succeeding publication.
    L.  "Target Balance" means the amount indicated on Exhibit A as the Target Balance, which amount is the minimum collected balance that must be maintained in the Account.

2.  **PROCEDURES FOR LOANS.** All Loans shall be made in the form of a transfer of funds into the Account in accordance with the procedures set forth in this paragraph. Borrower hereby irrevocably authorizes Bank to make Loans in accordance with the procedures set forth herein. At the end of each Business Day, Bank shall calculate the Initial Excess Balance and the aggregate amount of the Presented Items. In the event the Initial Excess Balance is less than the aggregate amount of the Presented Items, Bank shall make a Loan by transferring funds into the Account in an amount equal to the amount, which when added to the Initial Excess Balance, would be equal to the aggregate amount of the Presented Items; provided, however, that: (a) the principal amount of the Loan shall not be less than the Minimum Loan Advance; (b) the principal amount of the Loan must be an integral multiple of the Incremental Advance Amount, and therefore, if it would not otherwise be an integral multiple of the Incremental Advance Amount, the amount of the Loan will be rounded up to the next higher integral multiple of the Incremental Advance Amount unless there is insufficient Line Availability in which case the Loan amount will be the Maximum Advance Amount; and (c) the principal amount of the Loan shall not exceed the Maximum Advance Amount. If at any time the amount of the Initial Excess Balance is less than the amount of the Presented Items by an amount greater than the Maximum Advance Amount, Bank shall: (i) make a Loan by transferring funds into the Account in an amount equal to the Maximum Advance Amount; and (ii) determine, in its sole discretion, which Presented Items will be paid, and which Presented Items will not be paid. In the event the Initial Excess Balance is greater than the amount of the Presented Items, Bank shall post and pay all of the Presented Items. If, following Bank's posting and paying of all of the Presented Items, there remains a balance in the Account in excess of the Target Balance, Bank is hereby irrevocably authorized to debit the Account in an amount up to the portion of the balance in the Account which exceeds the Target Balance, and apply such sums to the outstanding balance of the Loans. Bank agrees to make such debit of the Account to repay sums outstanding under the Loans as of the end of each Business Day; provided, however, that in the event the option labeled "Cash Solutions Protection" is marked on Exhibit A attached hereto, Bank shall not automatically debit the Account to make payments on the Loans, but may do so, in its sole and absolute discretion.

3.  **TERMINATION.** The procedure for making Loans, and the obligation of Bank to provide Loans, as set forth in this Promissory Note, may be terminated by Borrower upon ten (10) days prior written notice to Bank and may be terminated by Bank upon thirty (30) days prior written notice to Borrower. Upon termination, no further Loans shall be made under this Promissory Note, but all other terms of this Promissory Note (including, but not limited to, the holder's right to demand payment at any time and for any reason) shall remain in full force and effect.

Page -1-

BS-3108A-9811 PAGE 1                                                                    PK 10

4.    INTEREST. From    date hereof until all sums due hereunder, including pri    pal, interest, charges, fees and expenses are paid in full, ...e principal amount outstanding from time to time pursuant to this Promissory Note shall bear interest as follows (Check One):

[ ]    Fluctuating Rate. At a fluctuating rate equal to _____% per annum above the Prime Rate in effect from time to time. Bank at its discretion may charge a lesser rate from time to time. Interest on the principal amount outstanding shall be adjusted daily, with the rate for each day being adjusted to reflect the Prime Rate in effect at the close of business on that day. Bank makes loans at interest rates at, above and below the Prime Rate.

[X]    Other. (describe):   Interest shall accrue at a rate per annum equal to the Bank's Base Rate minus 1/2% as in effect from time to time.

5.    CALCULATION OF INTEREST. Interest shall be calculated on the basis of a three hundred sixty (360) days per year factor applied to the actual days on which there exists an unpaid balance hereunder.

6.    REPAYMENT. Borrower shall make payments of principal and interest in accordance with the following terms:
(a)    Principal:    ALL SUMS OUTSTANDING UNDER THIS PROMISSORY NOTE, INCLUDING THE PRINCIPAL AMOUNT OF ALL OF THE LOANS, ARE IMMEDIATELY DUE IN FULL UPON THE FIRST TO OCCUR OF: (I) THE DEMAND OF THE HOLDER OF THIS PROMISSORY NOTE, WHICH DEMAND MAY BE MADE AT ANY TIME AND FOR ANY REASON, IN THE SOLE AND ABSOLUTE DISCRETION OF THE HOLDER OF THIS PROMISSORY NOTE; OR (II) THE OCCURRENCE OF ANY DEFAULT UNDER THE TERMS OF THIS PROMISSORY NOTE with 30 days written
(b)    Interest:    Borrower shall make payments of all accrued and unpaid interest on the _31st_ day of each notice successive month, beginning on _March 31, 1999_ and continuing until all sums outstanding hereunder are paid in full.    *JP*
Borrower may prepay this Promissory Note in whole or in part at any time or from time to time without premium or additional interest.

7.    LATE PAYMENT CHARGE. If any payment due hereunder (including any payment in whole or in part of principal) is not received by the holder within fifteen (15) calendar days after its due date, Borrower shall pay a late payment charge equal to five percent (5%) of the amount then due.

8.    APPLICATION OF PAYMENTS. All payments made pursuant to this Promissory Note shall be applied first to accrued and unpaid interest, then to unpaid expenses and charges payable hereunder, and then to principal, or in such other order or proportion as the holder, in the holder's sole discretion, may elect from time to time.

9.    SECURITY. Sums due under this Promissory Note are secured by, and Borrower grants to Bank a security interest in, all deposits and property of Borrower now or at any time hereafter in the possession of or on deposit with Bank whether as custodian or depository or in any other capacity. Bank shall have the right to set-off and apply against the obligations of Borrower to Bank evidenced by this Promissory Note any sums of Borrower at any time on deposit with Bank whether such deposits are special, time or demand, provisional or final. In addition, this Promissory Note is secured by any property described as collateral in any security agreement, pledge agreement or other document previously, simultaneously, or hereafter entered into by Borrower in connection with any obligation or liability of Borrower to Bank or any corporate affiliate of Bank, such other security documents include but are not limited to the following:

*See below->unsecured*    *JP*

[ ]    Security Agreement(s)

[ ]    Real estate mortgage or deed of trust on property known as _____
located in _____ County/City, State of _____.

[X]    Other (describe):    Unsecured

This Promissory Note specifically incorporates by reference, as if fully set forth herein, all of the language and provisions of the security documents described generally or specifically above.

10.    REPRESENTATIONS AND WARRANTIES. Borrower (and if more than one Borrower, each Borrower) represents and warrants to Bank that the following statements are true, correct and complete as of the date hereof, and as of the date each Loan is made hereunder: (a) it is duly organized and in good standing under the laws of the state in which it is organized; (b) it has the full power and authority to execute, deliver and perform this Promissory Note; (c) neither such execution, delivery and performance, nor compliance by it with the provisions of this Promissory Note will conflict with or result in a breach or violation of its organizational documents, or any judgment, order, regulation, ruling or law to which it is subject or any contract or agreement to which it is a party or to which any of its assets and properties are subject; (d) this Promissory Note constitutes its legal, valid and binding obligation enforceable in accordance with its terms; (e) there is no litigation or proceeding pending or, to the knowledge of its representative signing this Promissory Note on its behalf, threatened against or affecting it which might materially adversely affect its business, financial condition or operations or its ability to perform and comply with this Promissory Note; (f) all financial statements and information furnished or to be furnished to Bank hereunder have been and will be prepared in accordance with generally accepted accounting principles and fairly present its financial condition as of the dates thereof and the results of its operations for the period covered thereby; (g) it is not in violation of any applicable federal, state or local law, statute, rule, regulation or ordinance and has not received any notice nor is the subject of any investigation to the effect that its operations are not in material compliance with any such law, statute, rule, regulation or ordinance, including, without limitation, applicable environmental, health and safety laws and regulations; (h) since September 2, 1974, no pension, employee benefit, multi-employer, profit sharing, savings, stock bonus or other deferred compensation plan ("Plan") maintained by it or any trade or business group with which it is affiliated subject to the requirements of the Employee Retirement Income Security Act of 1974 ("ERISA") has been terminated, no lien exists against Borrower in favor of the Pension Benefit Guaranty Corporation ("PBGC"), and no "reportable event" (as such term is defined in ERISA) has occurred with respect to any such Plan, and Borrower has not incurred any "accumulated funding deficiency" within the meaning of ERISA or any liability to the PBGC in connection with any Plan; and (i) no information, exhibit, report, statement, certificate or document furnished by Borrower or any other person to Bank in connection with the Loans, this Promissory Note or the negotiation thereof contains any material

Page -2-

PK 10

misstatement of fact or ~~ted to state a material fact or any fact necessary to ma~~ ~e statements contained herein or therein not misleading.

11.   **DEFAULT.**  Any of the following will be a default under this Promissory Note: (a) failure to pay any principal, expense, fee, charge or interest when due, or failure to perform any other obligations hereunder; (b) a default by any Borrower upon any of the existing or future obligations of any Borrower to Bank; (c) a default by any guarantor or other person other than Borrower that is now or hereafter liable upon or in connection with any of the obligations of any Borrower to Bank or that has granted any lien or security interest to or for the benefit of Bank to secure any of the obligations of any Borrower to Bank ("Other Obligor"), upon any of the existing or future obligations of any Other Obligor to Bank; (d) a default in any other agreement, instrument or document between any Borrower or Other Obligor and Bank, or any corporate affiliate of Bank, including, without limitation, any security document referred to above, whether previously, simultaneously, or hereafter entered into; (e) ~~a material adverse change in the financial condition of any Borrower or Other Obligor from that expressed in the financial statement most recently submitted to Bank prior to the date of this Promissory Note, as determined in good faith by Bank in its sole discretion;~~ (f) institution of bankruptcy, insolvency, reorganization or receivership proceedings by or against any Borrower or Other Obligor in any state or federal court; (g) the appointment of a receiver, assignee, custodian, trustee or similar official under any federal or state insolvency or creditors' rights law for any property of any Borrower or Other Obligor; (h) ~~failure of any Borrower or Other Obligor to furnish to Bank such collateral or additional collateral as Bank may in good faith request;~~ (i) any warranty, representation, or statement to Bank by or on behalf of any Borrower or Other Obligor proving to have been incorrect in any material respect when made or furnished; (j) the occurrence of any event which is, or would be with the passage of time or the giving of notice or both, a default under any indebtedness of any Borrower or Other Obligor to any person other than Bank; (k) any material loss, theft or substantial damage, which is not fully insured, to any of the assets of any Borrower or Other Obligor, or the sale, transfer, lease, encumbrance or other disposition of all or any material part of the assets of any Borrower or Other Obligor other than in the ordinary course of business of Borrower or Other Obligor; (l) the entry of any final judgment against any Borrower or Other Obligor for the payment of money in excess of $5,000.00; (m) the levy upon or attachment of any assets of any Borrower or Other Obligor; (n) ~~the recordation of any federal, state or local tax lien against any Borrower or Other Obligor;~~ (o) a change of ownership or dissolution, merger, consolidation, liquidation or reorganization of any Borrower or Other Obligor which is a corporation, partnership or other legal entity; (p) ~~the death of any Borrower or Other Obligor who is a natural person;~~ (q) failure of any Borrower or Other Obligor to furnish to Bank such financial information as Bank may require from time to time, including, but not limited to, such financial statements as Bank may require; (r) failure of any Borrower or Other Obligor to comply with all laws, rules, regulations and decrees to which such Borrower or Other Obligor may be subject, the violation of which may have a material adverse effect on the business operation or financial condition of such Borrower or Other Obligor; (s) ~~the acquisition by a Borrower of all or substantially all of the assets, properties or equity interest of any other person or entity without Bank's prior written consent;~~ (t) failure of any Borrower to maintain its existence in good standing in the jurisdiction of its organization; (u) any of the licenses or permits which are necessary to the conduct of any Borrower's business as now conducted is not maintained in full force and effect; or (v) ~~the determination in good faith by Bank, in its sole discretion, that the ability of any Borrower or Other Obligor to pay or perform any of their respective obligations to Bank is impaired for any reason.~~

12.   **REMEDIES.**  Upon a default, in addition to all other rights and remedies available to the holder of this Promissory Note under any document or agreement between Borrower and Bank or under applicable law, the holder of this Promissory Note, in the holder's sole discretion and without notice or demand, may raise the rate of interest accruing on the unpaid principal balance outstanding under this Promissory Note by two (2) percentage points above the rate of interest otherwise applicable. The Bank shall have no further obligation to provide any Loans to Borrower following: (a) a demand by Bank for payment hereunder; or (b) a default under this Promissory Note. Borrower agrees that a default under this Promissory Note is a default by Borrower under all other liabilities and obligations of Borrower to the holder, and that the holder shall have the right to declare immediately due and payable all liabilities and obligations owed by Borrower to the holder of this Promissory Note.

13.   **CONFESSION OF JUDGMENT.**  Borrower irrevocably and unconditionally authorizes any attorney admitted to practice before any court of record in the United States to appear on behalf of Borrower in any court in one or more proceedings, or before any clerk thereof or prothonotary or other court official, and appear for, to confess and enter judgment against Borrower, at any time, whether before or after the occurrence of any default hereunder, with or without averment of default, with or without complaint filed, and without prior notice or opportunity of Borrower for prior hearing, in favor of the holder of this Promissory Note in the full amount outstanding on this Promissory Note (including principal, accrued interest and any and all charges, fees and expenses) plus court costs, plus attorneys' fees equal to fifteen percent (15%) of the unpaid balance of principal, interest, charges, and other sums outstanding hereunder, with release of all errors and without right of appeal. Borrower waives the benefit of any and every statute, ordinance, or rule of court which may be lawfully waived conferring upon Borrower any right or privilege of exemption, homestead rights, appraisement, stay of execution, or supplementary proceedings, or other relief from the enforcement or immediate enforcement of a judgment or related proceedings on a judgment. (To the extent prohibited by applicable law, any judgment obtained by confession shall not constitute a lien on any real property located in Pennsylvania which is the residence of the Borrower.) The authority and power to appear for and enter judgment against Borrower shall not be exhausted by one or more exercises thereof, or by any imperfect exercise thereof, and shall not be extinguished by any judgment entered pursuant thereto; such authority and power may be exercised on one or more occasions from time to time, in the same or different jurisdictions, as often as the holder shall deem necessary or advisable. BORROWER HEREBY ACKNOWLEDGES THAT THE CONFESSION OF JUDGMENT PROVISIONS HEREIN CONTAINED WHICH AFFECT AND WAIVE CERTAIN LEGAL RIGHTS OF BORROWER HAVE BEEN READ, UNDERSTOOD AND VOLUNTARILY AGREED TO BY BORROWER.

14.   **EXPENSES.**  Borrower shall pay all costs and expenses, including attorneys' fees (to the extent not prohibited by law) incident to the making of the Loans. Borrower shall pay all costs and expenses incurred by Bank in collecting sums due under this Promissory Note, including without limitation the costs of any lien, judgment or other record searches, appraisals, travel expenses and the like. In addition, if this Promissory Note is referred to an attorney for collection, whether or not judgment has been confessed or suit has been filed, Borrower shall pay all of the holder's costs, fees (including, but not limited to, the holder's attorneys' fees, charges and expenses) and all other expenses resulting from such referral.

15.   **AMENDMENTS.**  The fees and charges required to be paid by Borrower in connection with the Loans may, at any time and from time to time, be amended by Bank, upon prior written notice thereof to Borrower and otherwise in compliance with applicable law. Any such amendment shall become effective on the first day of the month in which Borrower obtains a Loan, after the date specified in the notice of amendment (which date shall be not less than thirty (30) days from the date

Page -3-

PK 10

the notice was mailed    orrower), or upon such other date as may be required in    cordance with applicable law. If Borrower obtains a Loan after the date specified in the notice, the changes in the fees and charges described in the amendment shall apply to all outstanding unpaid indebtedness and obligations under this Promissory Note, whether incurred or arising prior to, upon, or after the effective date of the amendment.

16.    NEGOTIABLE INSTRUMENT.  Borrower agrees that this Promissory Note shall be deemed to be a negotiable instrument, even though this Promissory Note may not qualify under applicable law, absent this paragraph, as a negotiable instrument.

17.    WAIVERS.  Borrower, and all parties to this Promissory Note, whether maker, indorser, or guarantor, waive presentment, demand, notice of dishonor and protest.

18.    EXTENSIONS OF MATURITY.  All parties to this Promissory Note, whether maker, indorser, or guarantor, agree that the maturity of this Promissory Note, or any payment due hereunder, may be extended at any time or from time to time without releasing, discharging, or affecting the liability of such party.

19.    NOTICES.  Any notice or demand required or permitted by or in connection with this Promissory Note, without implying the obligation to provide any notice or demand, shall be in writing at the address set forth below or to such other address as may be hereafter specified by written notice to Bank by Borrower. Any such notice or demand shall be deemed to be effective as of the date of hand delivery or facsimile transmission, one (1) day after dispatch if sent by telegram, mailgram, overnight delivery, express mail or federal express, or three (3) days after mailing if sent by first class mail with postage prepaid.

20.    ASSIGNABILITY.  This Promissory Note may be assigned by Bank or any holder at any time.

21.    JOINT AND SEVERAL LIABILITY.  If more than one person or entity is executing this Promissory Note as Borrower, all liabilities under this Promissory Note shall be joint and several with respect to each of such persons or entities.

22.    BINDING NATURE.  This Promissory Note shall inure to the benefit of and be enforceable by Bank and Bank's successors and assigns and any other person to whom Bank may grant an interest in Borrower's obligations to Bank, and shall be binding and enforceable against Borrower and Borrower's personal representatives, successors and assigns.

23.    INVALIDITY OF ANY PART.  If any provision or part of any provision of this Promissory Note shall for any reason be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of this Promissory Note and this Promissory Note shall be construed as if such invalid, illegal or unenforceable provision or part thereof had never been contained herein, but only to the extent of its invalidity, illegality or unenforceability.

24.    MAXIMUM RATE OF INTEREST; COMMERCIAL LOAN.  Notwithstanding any provision of this Promissory Note to the contrary, Borrower shall not be obligated to pay interest hereunder in excess of the maximum rate of interest permitted by the laws of any state determined to govern this Promissory Note or the laws of the United States applicable to loans in such state. If any provision of this Promissory Note shall ever be construed to require the payment of any amount of interest in excess of that permitted by applicable law, then the interest to be paid hereunder shall be held subject to reduction to the amount allowed under applicable law, and any sums paid in excess of the interest rate allowed by law shall be applied in reduction of the principal balance outstanding under this Promissory Note. Borrower acknowledges that it has been contemplated at all times by Borrower that the laws of the Commonwealth of Pennsylvania will govern the maximum rate of interest that it is permissible for the holder of this Promissory Note to charge Borrower under this Promissory Note. Borrower warrants that this Promissory Note evidences a loan made solely to acquire or carry on a business or commercial enterprise.

25.    CHOICE OF LAW; CONSENT TO VENUE AND JURISDICTION.  This Promissory Note shall be governed, construed and interpreted in accordance with the laws of the Commonwealth of Pennsylvania, even if the Commonwealth of Pennsylvania rules governing conflicts of laws would otherwise require that the laws of another jurisdiction govern this Promissory Note. Borrower consents to the jurisdiction and venue of the courts of any city or county in the Commonwealth of Pennsylvania or to the jurisdiction and venue of the United States District Court for the Middle District of Pennsylvania in any action or judicial proceeding brought to enforce, construe or interpret this Promissory Note.

26.    UNCONDITIONAL OBLIGATIONS.  Borrower's obligations under this Promissory Note shall be the absolute and unconditional duties and obligations of Borrower and shall be independent of any rights of set-off, recoupment or counterclaim which Borrower might otherwise have against the holder of this Promissory Note, and Borrower shall pay absolutely the payments of principal, interest, fees, charges and expenses required hereunder, free of any deductions and without abatement, diminution or set-off.

27.    ACTIONS AGAINST BANK.  Any action brought by Borrower against Bank which is based, directly or indirectly, or in whole or in part, upon this Promissory Note or any matter related to this Promissory Note shall be brought only in the courts of the Commonwealth of Pennsylvania.

28.    WAIVER OF JURY TRIAL.  Borrower (by execution of this Promissory Note) and Bank (by acceptance of this Promissory Note) agree that any suit, action, or proceeding, whether claim or counterclaim, brought or instituted by Borrower, Bank, or any successor or assign of Borrower or Bank on or with respect to this Promissory Note or which in any way relates, directly or indirectly, to the obligations of Borrower to Bank under this Promissory Note, or the dealings of the parties with respect thereto, shall be tried only by a court and not by a jury. BORROWER AND BANK HEREBY EXPRESSLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION, OR PROCEEDING.  Borrower and Bank acknowledge and agree that this provision is a specific and material aspect of the agreement between the parties and that Bank would not enter into the transaction with Borrower if this provision were not a part of their agreement.

[SIGNATURES CONTAINED ON NEXT PAGE]

BS-3108A-9811 PAGE 4                                                              PK 10

IN WITNESS WHE~~~~ ~, and intending to be legally bound hereby, the undersig~~~ ~xecutes this Promissory Note under seal, as Borrower, ~f the date first written above.

WITNESS/ATTEST*:

CCI Construction Co, Inc
(Name of Organization)

7500 Old Gettushurg Rd
(Street Address)

Camp Hill, Pa 17011
(City-State-Zip)

717-909-4224   717-909-4610
(Telephone)                (Facsimile)

E M Avery
E.M. AVERY, ASSISTANT SECRETARY
(Print Name)

By: Sheri Phillips CFO (SEAL)
(Authorized Signature)

Sheri Phillips, CFO
(Print Name and Title)

By: _____ (SEAL)
(Authorized Signature)

_____
(Print Name)

_____
(Print Name and Title)

*NOTE:  Attestation by a corporate officer of another corporate officer's capacity to sign is required in all corporate transactions.

If Borrower is an individual he or she should sign below:

WITNESS:

_____

_____ (SEAL)

(Print Name)

(Print Name)

_____
(Street Address)

_____
(City-State-Zip)

_____
(Telephone)                (Facsimile)

BS-3108A-9811 PAGE 5                                      PK 10

**EXHIBIT A**
**FILM/Cash Solutions Promissory Note**

Account Number:   __28864514__

Borrower:  __CCI Construction Company, Inc.__

The terms and provisions of the option checked below are incorporated in and made a part of the FILM/Cash Solutions Promissory Note executed by Borrower to which this Exhibit A is attached:

[X]    **FILM LOAN OPTION** - The following terms apply to this option:

     i)    Maximum Line Amount  -  __$4,000,000.00__

     ii)   Minimum Loan Advance  -  $0.01

     iii)  Incremental Advance Amount  -  __$1.00__

     iv)   Target Balance  -  $   __0__

     v)    Fees  -  __0__

[ ]    **CASH SOLUTIONS PROTECTION OPTION** - The following terms apply to this option:

     i)    Maximum Line Amount  -  _____

     ii)   Minimum Loan Advance  -  $500.00

     iii)  Incremental Advance Amount  -  $500.00

     iv)   Target Balance  -  $_____

     v)    Fees  -  _____

[ ]    **CASH SOLUTIONS MAXIMIZER OPTION** - The following terms apply to this option:

     i)    Maximum Line Amount  -  _____

     ii)   Minimum Loan Advance  -  $500.00

     iii)  Incremental Advance Amount - $500.00

     iv)   Target Balance  -  $_____

     v)    Fees  -  _____

     vi)   Balance in Account is not transferred to investments until all Loans are paid in full.

[ ]    **CASH SOLUTIONS LOAN OPTION** - The following terms apply to this option:

     i)    Maximum Line Amount  -  _____

     ii)   Minimum Loan Advance  -  $500.00

     iii)  Incremental Advance Amount  -  $500.00

     iv)   Target Balance  -  $_____

     v)    Fees  -  _____

WITNESS/ATTEST:                          BORROWER:

                                      _CCI Construction Co. Inc_

_____       By: _____ CFO (SEAL)
                                   Name:  _Sheri Phillips_
                                   Title:  _CFO_

If Borrower is an individual he or she should sign below:

_____       _____ (SEAL)
                              Name:  _____

PA-FCS-PN
10/13/98

Exhibit "A" - Page 1

 **allfirst**

**COMMERCIAL LOAN NOTE**
**LINE OF CREDIT.**

COPY

$ ___1,200,000.00___                                      Date __11-8-99__

FOR VALUE RECEIVED, the undersigned, __CCI Construction Co., Inc.__
a (corporation/partnership/limited liability company/individual) (the "Borrower"), jointly and severally (if more than one), promise
to pay to the order of ALLFIRST BANK, a Maryland state-chartered commercial bank (the "Bank") or its assigns, the principal
amount of __ONE MILLION TWO HUNDRED THOUSAND & NO/100 DOLLARS__
to be paid as follows:
Principal is payable on demand.

Interest is payable monthly, accrued to date of Bank's notice thereof,
with all accrued and unpaid interest, and unpaid fees and charges, due
with the principal payment.



EXHIBIT
Artenzio-1
2|13|01    9ca

Interest shall accrue at a rate per annum equal to the Bank's Base Rate minus .50000%
as in effect from time to time. The term "Bank's Base Rate," which is not
necessarily the lowest rate of interest charged by the Bank, is defined as the prime
rate of interest for loans established by the Bank from time to time.

Interest shall be calculated on the basis of the actual number of days elapsed and a year of 360 days. Both principal and
interest are payable in lawful money of the United States of America at any office of Bank in immediately available funds. If
any payment due hereunder is received by the Bank more than fifteen (15) calendar days after its due date, the Borrower
shall pay a late payment charge equal to five percent (5%) of the amount then due or $10.00, whichever is greater.

*APPLICATION OF PAYMENTS.* All payments made hereunder shall be applied first to late payment charges or other
sums owed to the Bank, next to accrued interest, and then to principal, or in such other order or proportion as the Bank, in
its sole and absolute discretion, may elect from time to time.

*SECURITY.* The payment of this note and any renewals, extensions and modifications thereof, and the payment,
performance and discharge of all other present or future indebtedness, obligations and undertakings (individual, joint,
several, direct, contingent, or otherwise) of the Borrower to or for the benefit of the Bank, whether arising directly to the
Bank under this note or under any other agreement, promissory note or undertakings now existing or hereinafter entered
by the Borrower to the Bank (collectively, the "Liabilities") is secured by the property described in, and under and pursuant
to the terms and conditions of that certain:
Collateral as set forth in a Security Agreement – Specific Collateral dated __11 / 8 / 99__.


As additional security for the Liabilities, Borrower grants the Bank a lien upon and a security interest in any securities,
instruments or other personal property of Borrower now or hereafter in Bank's possession and in any deposit balances now
or hereafter held by Bank for Borrower's account and in all proceeds of any such personal property or deposit balances.
Such liens and security interests shall be independent of Bank's right of setoff.

*STATEMENT OF ACCOUNT.* The Bank will furnish the Borrower with a statement of account on a periodic basis. Each
and every statement of account shall be final, conclusive and binding upon the Borrower in all respects as to the
outstanding balance of principal and as to all loans, fees, interest, charges, payments, receipts, balances, and all other
matters reflected therein unless the Borrower, within ten (10) days after the posting thereof in the United States mail, shall
give notice to the Bank in writing of any objections which the Borrower may have to any such statement of account; and
in such event, only those items expressly objected to in such written notice shall be considered to be disputed by the
Borrower and all other items shall be binding.

*PAYMENT OF COSTS.* In addition to the principal and interest payments specified above, the Borrower shall pay to the
Bank or any other holder of this note, upon demand, all costs and expenses (including reasonable attorneys' fees, whether
or not litigation is commenced) which may be incurred by the Bank or such holder in the collection or enforcement of this
note. Said costs shall include reasonable attorneys' fees and costs in bankruptcy proceedings and any costs and attorneys'
fees incurred for any action or proceeding in relation to the loan transaction, including but not limited to the joinder of
Bank in any action between the Borrower and a third party.

CE-111-1                                                                                  6/99

**DEFAULTS.** The Borrower shall be in default hereunder upon the occurrence of any of the following events: (a) the nonpayment when due of any amount payable on any of the Liabilities, or the failure of any Obligor to observe or perform any agreement of any n____ whatsoever with the Bank (the term "Obligor" as u__ herein being meant to include the Borrower and all person____able on the note or any renewals, extensions, or modification thereof, such as endorsers, sureties, or guarantors); (b) if any Obligor becomes insolvent or makes an assignment for the benefit of creditors, or if any petition is filed by or against any Obligor under any provisions of any law or statute alleging that such Obligor is insolvent or unable to pay debts as they mature; (c) the entry of any judgment against any Obligor or the issuing of any attachment or garnishment against any property of any Obligor or the occurrence of any change in the financial condition of any Obligor which in the sole judgment of the Bank is materially adverse; (d) the dissolution, merger, consolidation or reorganization of any Obligor, which is an entity such as a corporation, limited partnership, partnership or limited liability company; (e) the death of any Obligor who is a natural person; (f) any information heretofore or hereinafter furnished to the Bank by any Obligor in connection with the loan evidenced hereby or any suretyship or guaranty should be materially false; and (g) the failure of any Obligor to furnish such financial and other information as the Bank may reasonably request. If this Note is payable on demand, Bank's right to demand payment hereof shall not be restricted or impaired by the absence of, non-occurrence of or waiver of a default hereunder, and it is understood that Bank may demand payment at any time ~~after giving borrower a 30-day written notice of demand~~. *30 days written notice*

**ACCELERATION AND ENFORCEMENT RIGHTS.** Whenever the Borrower shall be in default as aforesaid, (1) unless the Bank elects otherwise, the entire unpaid amount of such of the Liabilities as are not then due and payable shall become immediately due and payable ~~without notice to or~~ demand on any Obligor, and (2) the Bank may at its option exercise from time to time any or all rights and remedies available to it at law or in equity. The Borrower waives all right to stay of execution or garnishment and exemption of property in any action to enforce any of the Liabilities.

**JUDGMENT.** The Borrower does hereby authorize and empower any attorney of any court of record of Pennsylvania or elsewhere to appear for and enter judgment against Borrower for the above sum, with or without declaration, with costs of suit, including *reasonable* attorneys' fees and fees in bankruptcy proceedings, if any, release of errors, without stay of execution, and with ~~fifteen (15%) percent~~ added for collection fees, and the Borrower further agrees that real, personal or mixed property may be sold or garnished upon any writ of execution or writ of garnishment as now or hereafter provided by law or the Pennsylvania Rules of Civil Procedure governing the enforcement of judgments; and Borrower hereby waives and releases all relief from any appraisement, stay or exemption laws of any state now in force or hereafter enacted. If a copy hereof, verified by affidavit, shall have been filed in such proceeding, it shall not be necessary to file the original as a warrant of attorney. The Borrower (and each of them, if more than one) hereby waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of this warrant and power to confess judgment shall be deemed to exhaust this power, whether or not any such exercise shall be held by any court to be invalid, voidable or void, but this power shall continue undiminished and may be exercised from time to time as often as Bank shall elect until all sums due hereunder shall have been paid in full.

**WAIVERS.** The Borrower hereby, waives presentment, notice of dishonor and protest. The Borrower hereby waives and releases all errors, defects and imperfections of a procedural nature in any proceedings instituted by the Bank hereunder, as well as all benefit that might accrue to the Borrower by virtue of any present or future laws exempting any property, real or personal, or any part of the proceeds arising from any sale of such property, from garnishment, attachment, levy or sale under execution, or providing for any stay of execution, exemption from civil process, or extension of time for payment. The Borrower agrees that any property, real or personal, that may be levied upon pursuant to any writ of execution or writ of garnishment issued on any judgment by virtue of this note, may be sold, in whole or in part, in any order desired by the Bank.

**HOLDERS IN DUE COURSE.** This note may be assigned by the Bank or any subsequent holder of this note at any time or from time to time. The Borrower hereby agrees that no subsequent holder of this note to whom the note was transferred for value shall be subject to any claims or defenses which the Borrower may have against a prior holder, all of which are waived as to such subsequent holder, and that all such subsequent holders shall have all of the rights of a holder in due course even though the subsequent holder may not qualify, under applicable law, absent this paragraph, as a holder in due course.

**MISCELLANEOUS.** Any failure of the Bank to exercise any right hereunder shall not be construed as a waiver of the right to exercise the same or any other right at any other time. If the Borrower consists of more than one person, such persons shall be jointly and severally liable hereunder. The Borrower intends this to be a sealed instrument and to be legally bound hereby. This note shall inure to the benefit of and be enforceable by the Bank and its successors and assigns and be binding and enforceable against the Borrower, its legal representatives, successors and permitted assigns. All issues arising hereunder shall be governed by the laws of Pennsylvania without giving effect to choice of law rules.

CCI Construction Co., Inc.

WITNESS OR ATTEST:                                              BORROWER:

_____                    _____

_____ (Seal)                    (Name of Individual, Corporation,
Name and Title                                      Partnership or Limited Liability Company)

                                                    By: _____ (Seal)
_____ (Seal)                          Name and Title
Name and Title
                                                    By: _____ (Seal)
_____ (Seal)                          Name and Title
Name and Title
                                                    By: _____ (Seal)
_____ (Seal)                          Name and Title
Name and Title

2500 Old Gettysburg Road Camp Hill, PA 17001
Address

CE-111-2                                                                          6/99

 allfirst


EXHIBIT

SURETYSHIP AGREEMENT

C

under the *1,200,000 commercial loan note dated 11-8-99

Date_____11-8-99

For value received, the Undersigned, jointly and severally, hereby unconditionally agree to make prompt payment of all obligations, indebtedness and liabilities due Allfirst Bank, a Maryland state-chartered commercial bank, hereinafter called "Bank," of any kind (whether now existing or hereafter arising) due or which may become due, whether by acceleration or otherwise, absolute or contingent, joint or several, direct or indirect, secured or unsecured, by CCI Construction Co., Inc. hereinafter called "Borrower," all such obligations being hereinafter further described and collectively called the "Liabilities," and the Undersigned agree(s) to pay all expenses (including attorneys' fees and legal expenses, whether or not litigation is commenced) paid or incurred by the Bank in endeavoring to collect the Liabilities or any part thereof, whether or not bankruptcy has been declared, and in enforcing this Suretyship Agreement. The liability of the Undersigned hereunder is a primary and direct obligation without regard to any other obligor or security or collateral held by the Bank.

The Undersigned hereby waive all notices of any character whatsoever with respect to this Suretyship Agreement and the Liabilities of the Borrower for which the Suretyship Agreement has been executed, including but not limited to notice of the acceptance hereof and reliance hereon and notice of default by the Borrower. The Undersigned hereby give consent to the Bank to the taking of, or failure to take, from time to time, by the Undersigned, any action of any nature whatsoever with respect to the Liabilities of the Borrower, with respect to any rights against any person or persons, including the Borrower and any of the Undersigned, in any property, including, but not limited to, any postponements, compromises, indulgences, waivers, extensions, exchanges, releases, and satisfactions. The Undersigned shall remain fully liable on this Suretyship Agreement, notwithstanding any of the foregoing.

This Suretyship Agreement shall in all respects be a continuing, absolute and unconditional one, and shall remain in full force and effect (notwithstanding, without limitation, the death, incompetency or dissolution of any of the Undersigned or that at any time, or from time to time, all Liabilities may have been paid in full). This Suretyship Agreement is subject to discontinuance as to any of the Undersigned only upon actual receipt by the Bank of written notice from such Undersigned, or any person duly authorized and acting on behalf of such Undersigned, of the discontinuance hereof as to such Undersigned; provided, however, that no such notice of discontinuance shall affect or impair any of the agreements and obligations of such Undersigned hereunder with respect to (a) any and all Liabilities existing prior to the time of actual receipt of such notice by the Bank, (b) any and all Liabilities created or acquired thereafter pursuant to any previous binding commitments made by the Bank, (c) any and all extensions or renewals of any of the foregoing, (d) any and all interest on any of the foregoing, and (e) any and all expenses paid or incurred by the Bank in endeavoring to collect any of the foregoing and in enforcing this Suretyship Agreement against such Undersigned. All obligations of the Undersigned under this Suretyship Agreement shall, notwithstanding any such notice of discontinuance, remain fully in effect until all Liabilities not subject to an effective notice of discontinuance (including any extensions or renewals of any thereof) and all such interest and expenses shall have been paid in full. Any notice of discontinuance by or on behalf of any one of the Undersigned shall not affect or impair the obligations hereunder of any other of the Undersigned.

At the option of Bank, all Liabilities of Borrower shall become immediately due and payable by the Undersigned, without demand or notice, in the event any of the following shall occur: (a) Borrower shall fail to make any payment or meet any other liability when due; (b) Borrower or the Undersigned shall fail to observe or perform any obligation, term, condition or provision of Borrower under any document evidencing or securing the Liabilities, this Suretyship Agreement or any other agreement, document, certificate, instrument of security, suretyship or guaranty given by Borrower to Bank; (c) Any representation, warranty or certificate made or furnished by Borrower to Bank, in connection with the Liabilities or any other agreement, document, certificate, instrument of security, suretyship or guaranty given by Borrower to Bank or in any certificate, financial statement or separate assignment made ~~~ereunder shall be materially false; (d) Borrower or any of the Undersigned shall make an assignment for the benefit of creditors; (e) Proceedings in ~~~kruptcy or for reorganization of Borrower or any of the Undersigned or for the readjustment of any of their debts under the Bankruptcy Act, as amended, or in any part thereof, or under any other act or law, whether state or federal, for the relief of debtors now or hereafter existing, shall be commenced by or against Borrower or the Undersigned; (f) A receiver or trustee shall be appointed for Borrower or any of the Undersigned or for any substantial part of their assets; or any proceedings are instituted for the dissolution, or the full or partial liquidation, of Borrower or any of the Undersigned; (g) Material adverse changes in the financial condition of the Borrower or any of the Undersigned; (h) A death of Borrower or any of the Undersigned or, if Borrower or the Undersigned is a partnership, the death of any general partner; or (i) Borrower or any of the Undersigned ceases doing business as a going concern.

As security for the Liabilities hereunder, the Undersigned hereby grants Bank a security interest in the following:
NONE

Together with a right, without demand or notice of any kind, at any time and from time to time when any amount shall be due and payable by the Undersigned hereunder and in such order of application as the Bank may elect, to set-off against all monies, deposits or other property of any kind, without limitation, owned by the Undersigned or in which the Undersigned has a joint or contingent interest and which are in possession of Bank for any reason whatsoever.

The Undersigned further agree that, if at any time, any part of any payment theretofore applied by the Bank to any of the Liabilities is or must be returned by the Bank for any reason whatsoever (including, without limitation, the insolvency, bankruptcy or reorganization of the Borrower), such Liabilities shall, for the purposes of this Suretyship Agreement, to the extent that such payment is or must be rescinded or returned, be deemed to have continued in existence, notwithstanding such application by the Bank, and this Suretyship Agreement shall continue to be effective or be reinstated, as the case may be as to such Liabilities, all as though such application by the Bank had not been made. In such an event the Undersigned hereby waives any right of contribution, subrogation or indemnification against the Borrower, for a period of twelve (12) months subsequent to the last payment made or due to be made from Borrower to Bank.

The Bank may, from time to time, whether before or after any discontinuance of this Suretyship Agreement, at its sole discretion and without notice to the Undersigned (or any of them), take any or all of the following actions: (a) retain or obtain a security interest in any property to secure any of the Liabilities or any obligation hereunder; (b) retain or obtain the primary or secondary obligation of any obligor or obligors in addition to the Undersigned, with respect to any of the Liabilities; (c) extend or renew for one or more periods (whether or not longer than the original period), alter or exchange any of the Liabilities, or release or compromise any obligation of any of the Undersigned hereunder or any obligation of any nature of any other obligor with respect to any of the Liabilities, (d) release its security interest in, or surrender, release or permit any substitution or exchange for, all or any part of any property securing any of the Liabilities or any obligation hereunder, or extend or renew for one or more periods (whether or not longer than the original period) or release, compromise, alter or exchange any obligations of any nature of any obligor with respect to any such property; and (e) resort to the ~~~ersigned (or any of them) for payment of any of the Liabilities, whether or not the Bank shall have resorted to any property securing any of the ~~~lities for payment of any of the Liabilities, or any obligation hereunder or shall have proceeded against any other of the Undersigned or any other obligor primarily or secondarily obligated with respect to any of the Liabilities

Any amounts received by the Bank from whatsoever source on account of the Liabilities may be applied by Bank toward the payment of such of the Liabilities and in such order of application, as the Bank may from time to time elect, and, notwithstanding any payments made by or for the account of the Undersigned pursuant to this Suretyship Agreement, the Undersigned shall not be subrogated to any rights of the Bank until such time as this Suretyship Agreement shall have been discontinued as to all of the Undersigned and the Bank shall have received payment of the full amount of all Liabilities and of all obligations of the Undersigned hereunder. The Bank shall not be obligated under any theory of law relating to the marshalling of payment received or security interest granted under the terms of this Suretyship Agreement

CE-128-1

6/99

The Bank may, from time to time, . . . . . before or after any discontinuance of this Surety . . . . . . Agreement, without notice to the undersigned (or any of them), assign or transfer any or all . . . . . . . . the Liabilities or any interest therein; and, notwithstan . . . . g any such assignment or transfer or any subsequent assignment or transfer thereof, such Li . . . . . . . ties shall be and remain Liabilities for the purpose of this Suretyship Agreement and each and every immediate and successive assignee or transferee of any of the Liabilities or of any interest therein shall, to the extent of the interest of such assignee or transferee in the Liabilities, be entitled to the benefits of this Suretyship Agreement to the same extent as if such assignee or transferee were the Bank; provided, however, that unless the Bank shall otherwise consent in writing, the Bank shall have an unimpaired right prior and superior to that of any such assignee or transferee, to enforce this Suretyship Agreement for the benefit of the Bank, as to those of the Liabilities which the Bank has not assigned or transferred.

No modification or waiver of any of the provisions of this Suretyship Agreement shall be binding upon the Bank except as expressly set forth in writing duly signed by each of the Undersigned and the Bank. No action of the Bank permitted hereunder shall in any way affect or impair the rights of the Bank and the obligation of the Undersigned under this Suretyship Agreement. For the purpose of this Suretyship Agreement, Liabilities shall include any obligations of the Borrower to the Bank notwithstanding any right or power of the Borrower or anyone else to assert any claim or defense as to the invalidity or unenforceability of any such obligation and no such claim or defense shall affect or impair the obligations of the Undersigned hereunder.

The Liability of the Undersigned for Liabilities of Borrower incurred on or prior to the date hereof shall not exceed, at any time, the aggregate principal amount of ONE MILLION TWO HUNDRED THOUSAND & NO/100 DOLLARS *Under 1,200,000 commercial loan note dated 11-8-99 JMO OR*
($ 1,200,000.00 ), plus interest as stated in the evidence of indebtedness given by Borrower to Bank and fifteen percent (15%) attorneys' commission; provided that this Suretyship Agreement shall also be applicable to and extend to any and all Liabilities, plus interest and costs as aforesaid, of Borrower arising after the date hereof even if the total of such Liabilities plus the Liabilities outstanding on or prior to the date hereof exceed the aforementioned aggregate principal amount. If no limitation is inserted in this paragraph, there is no limit to the liability of the Undersigned to the Bank.

The creation or existence from time to time of Liabilities in excess of any amount to which the right of recovery under this Suretyship Agreement is limited is hereby authorized, without notice to the Undersigned (or any of them), and shall in no way affect or impair the rights of the Bank and the obligation of the Undersigned under this Suretyship Agreement.

The Undersigned, jointly and severally, do hereby authorize and empower any prothonotary or clerk or attorney of any court of record of Pennsylvania or elsewhere, to appear for and confess judgment against any or all of the Undersigned in favor of Bank for the total liability of the Undersigned as set forth herein together with interest thereon, with or without declaration, with costs of suit, release of errors, without stay of execution or garnishment and with fifteen percent (15%) for collection fees, and waive the right of inquisition, and the benefit of all exemption laws now or hereinafter enacted, and agree to condemnation and the sale of real estate or personal property, or a writ of execution.

In the event the Bank acquires any property securing this Suretyship Agreement after a foreclosure sale as to real property or a public auction sale as to personal property, the Undersigned agrees to indemnify and hold the Bank harmless from any loss, costs, or expense which the Bank may sustain as a result of: (a) selling the real or personal property so acquired for less than the total sums owed by the Borrower to the Bank, provided, however, that any such sale by the Bank is done in a commercially reasonable manner or (b) any action brought against the Bank under §548 or §544(b) of the United States *Bankruptcy Code*, as amended, on the ground that the consideration paid by the Bank for the real or personal property was not "fair equivalent value," within the contemplation of §544(b) of the United States *Bankruptcy Code*, as amended, or any applicable state fraudulent conveyance act.

The Undersigned waive and release the Bank from any damages which the Undersigned may incur as a result of any intentional or unintentional or negligent action or inaction of the Bank impairing, diminishing, or destroying any of the Undersigned's rights of subrogation which the Undersigned may have upon payment of any of the Borrower's obligations. The Undersigned acknowledges previously having waived, under certain conditions, any such rights.

The Undersigned hereby agrees that this Suretyship Agreement shall apply to *1,200,000 commercial loan note dated 11-8-99 JMO OR* to Bank by or on behalf of the Borrower which is determined to be a preference payment benefiting the undersigned.

If a photostatic copy hereof shall have been filed in any of said proceedings, it shall not be necessary to file the original as a warrant of attorney. The exercise shall be held by any court to be invalid, voidable or void, but may be exercised from time to time, as often as the Bank shall elect, until all sums payable or that may become payable by each of the Undersigned have been paid in full.

A subsequent guaranty or suretyship by the Undersigned or any other guarantor or surety of the Borrower's Liabilities given to the Bank shall not be deemed to be in lieu of or to supersede or terminate this Suretyship Agreement but shall be construed to be additional or supplementary unless otherwise expressly provided therein; and in the event the Undersigned or any other guarantor or surety has given to the Bank a previous guaranty or Suretyship Agreement, this Suretyship Agreement shall be construed to be additional or supplementary, and not to be in lieu thereof or to terminate such previous Suretyship Agreement, guaranty or guaranties unless expressly so provided herein.

This Suretyship Agreement shall be binding upon the Undersigned, and upon the heirs, legal representatives, successors and assigns of the Undersigned, and to the extent that the Borrower or any of the Undersigned is an entity such as a partnership, limited partnership, limited liability company, corporation or any other similar entity, all references herein to the Borrower and to the Undersigned, respectively, shall be deemed to include any successor or successors, whether immediate or remote, to such entity. If more than one party shall execute this Suretyship Agreement, the term "Undersigned" as used herein shall mean all parties executing this Suretyship Agreement and each of them, and all such parties shall be jointly and severally obligated hereunder.

This Suretyship Agreement shall be construed in accordance with and governed by the laws of the Commonwealth of Pennsylvania without giving effect to choice of law rules. Wherever possible each provision of this Suretyship Agreement shall be interpreted in such manner as to be effective and valid under applicable law but if any provision of this Suretyship Agreement shall be prohibited by or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Suretyship Agreement.

INTENDING TO BE LEGALLY BOUND HEREBY, the Undersigned have set their respective hands and seals the day and year first above written.

WITNESS OR ATTEST:

(SURETY) **John M Ortenzio**

_____

Title: _____  By: _____ Title: _____ (SEAL)

Title: _____  By: _____ Title: _____ (SEAL)

Title: _____  By: _____ Title: _____ (SEAL)

LAW OFFICES

# GEBHARDT & SMITH LLP

NINTH FLOOR

THE WORLD TRADE CENTER

BALTIMORE, MARYLAND 21202-3064

EXHIBIT B

BALTIMORE      (410) 752-5830
WASHINGTON    (301) 470-7468

WRITER'S DIRECT DIAL NUMBER:

FACSIMILE
(410) 385-5119

(410) 385-5100
Writer's E-Mail Address:
lgebh@gebsmith.com

Refer To File No. 18610

February 24, 2000

*Via Facsimile and Federal Express*
4027 1282 2484

CCI CONSTRUCTION CO., INC.
2500 Old Gettysburg Road
Camp Hill, Pennsylvania 17011-7307

Attn:   John M. Ortenzio, President

RE:    $4,000,000 Unsecured Revolving Line Of Credit and
$2,000,000 Secured Equipment Purchase Line of Credit
Extended By Allfirst Bank To CCI Construction Co., Inc.

Dear Mr. Ortenzio:

This firm represents Allfirst Bank ("Lender"), which has extended to CCI Construction Co., Inc. ("Borrower") (a) a revolving line of credit in the maximum principal amount of $4,000,000 pursuant to a FILM/Cash Solutions Promissory Note dated March 24, 1999 ("Film Note") and related documents, and (b) a secured equipment purchase line of credit in the stated principal amount of $2,000,000 pursuant to a Commercial Loan Note ("Commercial Note") and a Security Agreement, both dated November 20, 1998, and related documents.  This letter is being sent at the specific request and direction of the Lender.

As a result of the occurrence of various events which are materially adverse to the financial condition of the Borrower, and as a further result of the insolvency of the Borrower, the Lender hereby declares a default under the Commercial Loan Note and under the Security Agreement.  In consequence of this declaration of default under the equipment purchase line of credit, the Lender hereby accelerates and declares immediately due and payable all sums presently outstanding and owing under the equipment purchase line of credit.

As a result of the default under the equipment line of credit, the Borrower is, in turn, in default under the cross-default provisions of Section 11 of the FILM Promissory Note, and the Lender hereby declares the default.  In consequence of this default the Bank hereby accelerates and demands immediate payment of all sums presently due and owing under the FILM Promissory Note.

Because of the default under the FILM Promissory Note and the Bank's acceleration and demand for immediate payment of the sums due thereunder no further sums will be advanced under the revolving line of credit evidenced by the FILM/Cash Solutions Promissory Note, **effective immediately**  Any checks or other payments items in transit will not be honored by the Lender.

GEBHARDT & SMITH

CCI CONSTRUCTION CO., INC.
February 24, 2000
Page 2

The total sums presently due and outstanding under the equipment purchase line of credit and the revolving line of credit, respectively, are as follows:

Equipment Purchase Line Of Credit
    Principal                            $1,244,116.74
    Interest through February 23 2000    $    5,237.80
    Total                            $ 1,249,354.54
    Interest per day thereafter: $231.54

Revolving Line Of Credit
    Principal                            $2,601,514.01
    Interest through February 23, 2000   $   26,524.83
    Total                            $2,628,038.84
    Interest per day thereafter: $596.18

As previously stated, the Lender by this letter is demanding immediate payment in full of all sums due and owing to it by the Borrower under both loans. Unless full payment is made by the Borrower immediately upon receipt of this letter, all remedies available to the Lender under applicable law will be pursued without further notice to the Borrower, including the institution of judgment by confession and the enforcement of the Lender's security interest.

This letter is not intended to be a waiver of any rights, remedies, or recourse available to the Lender, nor an election of remedies arising as a result of the defaults or of any other default which may now or hereafter exist with respect to the revolving line of credit and the equipment line of credit. The collection of interest or acceptance of partial payments (that is, less than the total amount due in accordance with the terms of the debt instruments) by the Lender shall not constitute an extension of the maturity date of the revolving line of credit or equipment line of credit or a waiver of the Lender's acceleration of the indebtedness evidenced by the respective debt instruments or of any other rights under the loan documents.

Very truly yours,

Lawrence J. Gebhardt

LJG/dls
cc:    Gerard L. Elias, SVP
            - ALLFIRST BANK
      Robert E. Chernicoff, Esquire
            - CUNNINGHAM & CHERNICOFF, P.C.