IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLFIRST BANK, | : | CIVIL ACTION NO. 1:01-CV-786 |
| Plaintiff, | : | |
| v. | : | |
| JOHN M. ORTENZIO, | : | |
| Defendant. | : | |

FILED
HARRISBURG

JAN 30 2002

MARY E. D'ANDREA, CLERK
Per_____ DEPUTY CLERK

**DEFENDANT'S EXPERT REPORT**

**Ardmore Capital Advisors**
*Strategic Financial Advisors to Corporations*

January 22, 2002

Edward T. Swichar, Esq.
Blank Rome Comisky & McCauley LLP
One Logan Square
Philadelphia, PA 19103-6998

re:   Allfirst Bank vs. John M. Ortenizo

Dear Mr. Swichar:

At your request I have reviewed the $1.2 Million Line of Credit granted by Allfirst Bank to CCI Construction Co., Inc. and guaranteed by John M. Ortenizo to determine if the repayment of this facility violated any of the terms of the parties' loan documents.

In connection with this request I have reviewed the following items:

- Complaint of Allfirst Bank vs. John M. Ortenizo
- Defendant's Responses to Plaintiff's first set of Interrogatories
- Defendant's Amended Answer
- Plaintiff's Answers to Defendant's Interrogatories
- Documents included in Allfirst's Document Production (see attachment #1)
- Deposition of John M. Ortenizo and related exhibits

I have concluded that CCI Construction Co., Inc acted in accordance with the terms of the parties' loan documents and operating procedures that were established between the company and the Bank to repay the $1.2 Million Line of Credit. My conclusion is based on over twenty-five years of experience in the financial services industry, including extensive experience in underwriting, administering and collecting commercial loans. Additional experience as an advisor to banks for over five years in matters of loan policy, loan administration and loan review are pertinent here.

OVERVIEW DISCUSSION

CCI Construction Co., Inc. was an existing commercial borrowing customer of Allfirst Bank in 1999. The company requested the Bank through its representative, Craig Schwartz, lend additional working capital funds on a temporary basis in November 1999.

Based on the 11/2/99 "Discussion Outline" (see attachment #2) the Bank considered responding to the company's request by temporarily increasing until 2/28/00 the existing revolving Line of Credit of $4 Million to $5 Million and requiring Mr. Ortenizo's guarantee of the entire facility.

 **ARDMORE CAPITAL ADVISORS**

However, the Bank determined on 11/5/99 to approve a separate $1.2 MM temporary Line of Credit (see attachment #3), to be guaranteed by John M. Ortenizo. This temporary facility was documented and closed 11/9/99.

In February 2000 the company informed the Bank that they would be paying off the temporary line. Since the company's existing Revolving Line of Credit for $4 MM was structured by the Bank to adjust daily based on deposits and presentments to a zero balance checking account, the company's check to repay the temporary Line of Credit was an additional presentment on that day. On 2/5/00 the Bank's representative, Craig Schwartz, acknowledged repayment of the temporary Line of Credit and subsequently returned the note and guarantee related thereto (see attachment #4).

THE ISSUE

The issue which I examined is whether the repayment of the $1.2 Million temporary Line of Credit violated any of the terms of parties' loan documents.

Specifically did the documents:
- Require payment only on a date certain?
- Prohibit any source of funds from being used for repayment?
- Specify any conditional nature to payments made on the temporary Line of Credit?

The Bank's "Commercial Loan Note-Line of Credit" (see attachment #5) stipulated only that it is "payable on demand 30 days after written notice of demand by Bank" but places no limitations on borrower's opportunity to repay at any time prior to demand by the Bank. This is the usual and customary practice for a line of credit obligation.

The Bank's documents for the temporary Line of Credit do not specify the source of repayment, nor do they prohibit any source of repayment. Absent any prohibitions, which could have been included if required by the Bank, it is not uncommon for borrowers to utilize one accommodation to repay another accommodation from their bank depending on tenor, terms or rate of interest. The Bank agreed to make multiple facilities available to the company and didn't specifically prohibit movement of funds between those facilities.

The Bank's "Commercial Loan Note-Line of Credit" speaks to the application of payments between fees, interest and principal but never uses the term "conditional acceptance". The usual and customary banking practice would only be to require that the payment must be made with "collected funds" before it is credited, and since the repayment was from Allfirst funds it was immediately available funds.



## SUMMARY

It is my opinion expressed to a reasonable degree of certainty that CCI Construction Co., Inc. acted in accordance with the terms and conditions of the Allfirst Bank documents and operating procedures that were established between the company and the Bank regarding the repayment of their $1.2 Million Line of Credit.

My opinion or aspects thereof may change on the basis of additional information which I may review at some future time.

Donald C. Frueh

#1

## ALLFIRST'S GENERAL OUTLINE OF DOCUMENT PRODUCTION

| BATES NO. | DESCRIPTION |
|---|---|
| C-0001 to 789 | Allfirst Bankruptcy Document Production |
| C-0790 to 871 | Ortenzio Deposition Transcript and Exhibits |
| C-0872 to 1445 | Allfirst Credit File |
| C-1446 to 1556 | Allfirst "Legal File" as to $4 Million Line of Credit |
| C-1557 to 1592 | Allfirst "Legal File" as to $1.2 Million Commercial Loan Note |
| C-1593 to 1647 | Allfirst "Legal File" as to $2 Million Secured Equipment Line of Credit |
| C-1648 to 1677 | Allfirst "Legal File" regarding $200,000 Letter of Credit |
| C-1678 | Change in CCI Account after 2/11/00 Sweep |
| C-1679 to 1685 | Financial Information provided by CCI to Allfirst |
| C-1686 to 1692 | Notes taken by Jamin Gibson on February 18, 23 & 24, 2000 |

# 2

 allfirst

Allfirst Bank
P.O. Box 2961
Harrisburg, PA 17105-2961

## CCI CONSTRUCTION COMPANY, INC.
### Line of Credit Increase
### Discussion Outline

November 2, 1999

**LINE AMOUNT:**  $5,000,000 ( $1,000,000 increase)

**COLLATERAL:**  Specific Security Interest in all unencumbered equipment including titled vehicles.

**DURATION:**  The increase will expire February 28, 2000.

**SURETY:**  John Ortenzio

1. Satisfactory receipt and review of a personal financial statement.
2. The amount or the Surety shall be for the entire amount of the line.
3. The Surety will decrease to $4,000,000 when the line increase expires.
4. The Surety shall remain in effect until the net worth of CCI Construction Company, Inc. is greater than $4,000,000.

All costs shall be paid by the Borrower.

This outline is for discussion purposes only and does not represent a commitment on the part of Allfirst Bank.

This outline is subject to approval by the Bank and subject to satisfactory review by the Bank of requested financial information and related matters as part of the Banks due diligence process.

C 0720

 allfirst

#3

Allfirst Bank
P.O. Box 2961
Harrisburg, PA 17105-2961

November 5, 1999

Mr. John M Ortenzio, President
CCI Construction Co., Inc
P.O. Box 8800
Mechanicsburg, PA  17055

Dear John:

I am pleased to inform you that Allfirst Bank (hereinafter "Bank") has approved a $1,200,000 partially secured line of credit to CCI Construction Co., Inc. (hereinafter "Borrower") as follows:

| | |
|---|---|
| Principal Amount of Line: | $1,200,000.00 |
| Interest Rate: | Bank's Base Rate as in effect from time to time, minus 1/2%. |
| Repayment: | Interest payable monthly, principal on demand. |
| Use of Proceeds: | Finance work in progress and accounts receivable. |
| Collateral: | Specific equipment financed, including titled vehicles |

Borrowings under Loan will bear interest at an annual rate equal to the Bank's Base Rate as in effect from time to time, minus one-half percent. This interest will change when and as the Bank's Base Rate changes. Interest will be calculated on the basis of the actual number of days in the current calendar year divided by 360. Interest will be payable monthly upon submission of the Bank's notice therefor.

Borrowings under the Loan will be payable on demand. If no demand is made, the Loan will expire and all borrowings will be due and payable, together with interest thereon, on March 31, 2000.

Borrowings under the Loan shall be limited to 80% of the Borrower's qualified accounts receivable which are less than 90 days past due, excluding retainages.

C 0400

CCI Construction Co., Inc.
November 5, 1999
Page Two

The Loan will be supported by the personal Suretyship of John M. Ortenzio limited to $1,200,000.

The Borrower shall furnish the Bank with financial reporting as follows:

1. Annual CPA- audited financial statements of CCI Construction Co., Inc.

2. Quarterly work in process reports for CCI Construction, Co., Inc.

3. Quarterly Company prepared financial statements of CCI Construction Co., Inc.

4. Monthly borrowers certification with monthly accounts receivable aging and listing.

5. Annual personal financial statement of John M. Ortenzio.

The Borrower shall maintain a primary business deposit relationship with the Bank.

The Borrower will not create, assume or permit to exist, any mortgage, pledge, lien or encumbrance of or upon, or security interest in any of Borrower's property or assets now owned or hereafter acquired in favor of the Bank, other than purchase money, without prior written consent of the Bank.

The availability to the Loan is contingent upon the Borrower and the Bank entering into mutually acceptable loan documentation setting forth the terms and conditions contained herein and such other terms and conditions, covenants, warranties and representations as may be required by the Bank and be mutually acceptable to the Borrower and the Bank. All terms and conditions contained herein shall survive the execution of such loan documentation.

The commitment is contingent upon the right of the Bank at any time hereafter and from time to time to review the commitment, to adjust terms and conditions, or to discontinue the commitment should the Bank in the reasonable exercise of its sole business discretion deem it necessary to do so.

CCI Construction Co., Inc.
November 5, 1999
Page Three

Please indicate the acceptability of these terms and conditions by dating, signing, and returning an executed copy of this letter no later than November 19, 1999.

Very truly yours,

Craig J. Schwartz
Vice President

CJS/mas

Enclosure

ACKNOWLEDGED AND ACCEPTED THIS          DAY OF          , 1999.

ATTEST:                                  CCI CONSTRUCTION CO., INC.

BY: _____             BY: _____
Title: Sec/Treas                         Title: Pres

WITNESS:                                 SURETY:

_____                  _____
                                         John M. Ortenzio

C 0402

#4

 allfirst

Allfirst Bank

Mr. John Ortenzio
President
CCI Construction Co., Inc.
P.O. Box 8800
Camp Hill, PA 17001-8800

February 15, 2000

Dear John:

This to inform you that the line of credit to CCI Construction in the amount of $1,200,000.00 has been paid in full as of February 11, 2000.

I have contacted our legal department to retrieve the canceled note and suretyship and to send it to me as soon as possible. I should have these items by Thursday the 17th at which time I will return them to you.

If you have any questions please contact me.

Thank you.

Craig J Schwartz
Vice President

C 1375

#4

FEB-15-00 TUE 10:59   CL CMPHILL   FAX NO. 7176125007   P. 01

## RELEASE OF COLLATERAL

**DAUPHIN DEPOSIT BANK AND TRUST COMPANY**
BANK OF PENNSYLVANIA • FARMERS BANK • VALLEYBANK

(Bank of Pennsylvania, Farmers Bank and Valleybank are divisions of Dauphin Deposit Bank and Trust Company)

DATE: February 15, 2000
TO: Collateral Clerk  D. Maletz
DEPT: Commercial Loan Operations Main
FROM: Craig Schwartz
DEPT: C/L

Customer's Name  CCJ Construction
Customer Number  0102595                     Loan/Line Number(s)  0200
Type of Collateral  Surety J. Ortenzio

Reason for Release:

✓ Loan has been paid in full
___ Customer will pay off loan with cash, certified funds or proceeds of savings instrument
___ Substitution of collateral (Two (2) signatures required)
___ Early release of collateral (Two (2) signatures required)

Please indicate if the COLLATERAL CODE should be changed on the Loan/Line level:
Yes ___ No ___. If yes, change the code from _____ to _____

Reason for Substitution/Early Release _____

Instructions  Send docs to me CJS ASAP 014-62-01

Rec
DPM
2-15-00

_____ Loan Officer's Signature

_____ Regional Approval Signature

Date _____

Receipt of the above is hereby acknowledged

_____ Customer Signature

Post-it® Fax Note  7671
To  D Maletz          From  C A C
Co./Dept             Co.
Phone #              Phone #
Fax #                Fax #

00-060-240 (rev. 4/97)

25SetPk

C 1576

#5

 **allfirst**

COMMERCIAL LOAN NOTE
LINE OF CREDIT

COPY

$ __1,200,000.00__   Date __11-8-99__

FOR VALUE RECEIVED, the undersigned, __CCI Construction Co., Inc__ a (corporation/partnership/limited liability company/individual) (the "Borrower"), jointly and severally (if more than one), promise to pay to the order of ALLFIRST BANK, a Maryland state-chartered commercial bank (the "Bank") or its assigns, the principal amount of __ONE MILLION TWO HUNDRED THOUSAND & NO/100 DOLLARS__ to be paid as follows:

Principal is payable on demand.

Interest is payable monthly, accrued to date of Bank's notice thereof, with all accrued and unpaid interest, and unpaid fees and charges, due with the principal payment.


EXHIBIT
Ortenzio-A
2/13/01

Interest shall accrue at a rate per annum equal to the Bank's Base Rate minus .50000% as in effect from time to time. The term "Bank's Base Rate," which is not necessarily the lowest rate of interest charged by the Bank, is defined as the prime rate of interest for loans established by the Bank from time to time.

Interest shall be calculated on the basis of the actual number of days elapsed and a year of 360 days. Both principal and interest are payable in lawful money of the United States of America at any office of Bank in immediately available funds. If any payment due hereunder is received by the Bank more than fifteen (15) calendar days after its due date, the Borrower shall pay a late payment charge equal to five percent (5%) of the amount then due or $10.00, whichever is greater.

APPLICATION OF PAYMENTS. All payments made hereunder shall be applied first to late payment charges or other sums owed to the Bank, next to accrued interest, and then to principal, or in such other order or proportion as the Bank, in its sole and absolute discretion, may elect from time to time.

SECURITY. The payment of this note and any renewals, extensions and modifications thereof, and the payment, performance and discharge of all other present or future indebtedness, obligations and undertakings (individual, joint, several, direct, contingent or otherwise) of the Borrower to or for the benefit of the Bank, whether arising directly to the Bank under this note or under any other agreement, promissory note or undertakings now existing or hereinafter entered by the Borrower to the Bank (collectively, the "Liabilities") is secured by the property described in, and under and pursuant to the terms and conditions of that certain:
Collateral as set forth in a Security Agreement - Specific Collateral dated __11__/__8__/__99__.

As additional security for the Liabilities, Borrower grants the Bank a lien upon and a security interest in any securities, instruments or other personal property of Borrower now or hereafter in Bank's possession and in any deposit balances now or hereafter held by Bank for Borrower's account and in all proceeds of any such personal property or deposit balances. Such liens and security interests shall be independent of Bank's right of setoff.

STATEMENT OF ACCOUNT. The Bank will furnish the Borrower with a statement of account on a periodic basis. Each and every statement of account shall be final, conclusive and binding upon the Borrower in all respects as to the outstanding balance of principal and as to all loans, fees, interest, charges, payments, receipts, balances, and all other matters reflected therein unless the Borrower, within ten (10) days after the posting thereof in the United States mail, shall give notice to the Bank in writing of any objections which the Borrower may have to any such statement of account, and in such event, only those items expressly objected to in such written notice shall be considered to be disputed by the Borrower and all other items shall be binding.

PAYMENT OF COSTS. In addition to the principal and interest payments specified above, the Borrower shall pay to the Bank or any other holder of this note, upon demand, all costs and expenses (including reasonable attorneys fees whether or not litigation is commenced) which may be incurred by the Bank or such holder in the collection or enforcement of this note. Said costs shall include reasonable attorneys' fees and costs in bankruptcy proceedings and any costs and attorneys fees incurred for any action or proceeding in relation to the loan transaction, including but not limited to the joinder of Bank in any action between the Borrower and a third party

CE 111.1

6 99

C 0850

*DEFAULTS* The Borrower shall be in default hereunder upon the occurrence of any of the following events (a) the nonpayment when due of any amount payable on any of the Liabilities, or the failure of any Obligor to observe or perform any agreement of any nature whatsoever, with the Bank (the term "Obligor" as used herein being meant to include the Borrower and all persons liable on the note or any renewals, extensions, or modification thereof, such as endorsers sureties, or guarantors). (b) if any Obligor becomes insolvent or makes an assignment for the benefit of creditors, or if any petition is filed by or against any Obligor under any provisions of any law or statute alleging that such Obligor is insolvent or unable to pay debts as they mature; (c) the entry of any judgment against any Obligor or the issuing of any attachment or garnishment against any property of any Obligor or the occurrence of any change in the financial condition of any Obligor which in the sole judgment of the Bank is materially adverse; (d) the dissolution, merger, consolidation or reorganization of any Obligor, which is an entity such as a corporation, limited partnership, partnership or limited liability company (e) the death of any Obligor who is a natural person; (f) any information heretofore or hereinafter furnished to the Bank by any Obligor in connection with the loan evidenced hereby or any suretyship or guaranty should be materially false and (g) the failure of any Obligor to furnish such financial and other information as the Bank may reasonably request. If this Note is payable on demand, Bank's right to demand payment hereof shall not be restricted or impaired by the absence of, non-occurrence of or waiver of a default hereunder, and it is understood that Bank may demand payment at any time after giving borrower a 30-day written notice of demand

30 days written notice

*ACCELERATION AND ENFORCEMENT RIGHTS* Whenever the Borrower shall be in default as aforesaid, (1) unless the Bank elects otherwise, the entire unpaid amount of such of the Liabilities as are not then due and payable shall become immediately due and payable without notice to or demand on any Obligor, and (2) the Bank may at its option exercise from time to time any or all rights and remedies available to it at law or in equity. The Borrower waives all right to stay of execution or garnishment and exemption of property in any action to enforce any of the Liabilities.

reasonable attorney fees

*JUDGMENT* The Borrower does hereby authorize and empower any attorney of any court of record of Pennsylvania or elsewhere to appear for and enter judgment against Borrower for the above sum, with or without declaration, with costs of suit, including reasonable attorneys' fees and fees in bankruptcy proceedings, if any, release of errors, without stay of execution, and with fifteen (15%) percent added for collection fees, and the Borrower further agrees that real, personal or mixed property may be sold or garnished upon any writ of execution or writ of garnishment as now or hereafter provided by law or the Pennsylvania Rules of Civil Procedure governing the enforcement of judgments; and Borrower hereby waives and releases all relief from any appraisement, stay or exemption laws of any state now in force or hereafter enacted. If a copy hereof, verified by affidavit, shall have been filed in such proceeding, it shall not be necessary to file the original as a warrant of attorney. The Borrower (and each of them, if more than one) hereby waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of this warrant and power to confess judgment shall be deemed to exhaust this power, whether or not any such exercise shall be held by any court to be invalid, voidable or void, but this power shall continue undiminished and may be exercised from time to time as often as Bank shall elect until all sums due hereunder shall have been paid in full.

*WAIVERS* The Borrower hereby, waives presentment, notice of dishonor and protest. The Borrower hereby waives and releases all errors, defects and imperfections of a procedural nature in any proceedings instituted by the Bank hereunder, as well as all benefit that might accrue to the Borrower by virtue of any present or future laws exempting any property, real or personal, or any part of the proceeds arising from any sale of such property, from garnishment, attachment, levy or sale under execution, or providing for any stay of execution, exemption from civil process, or extension of time for payment. The Borrower agrees that any property, real or personal, that may be levied upon pursuant to any writ of execution or writ of garnishment issued on any judgment by virtue of this note, may be sold, in whole or in part, in any order desired by the Bank.

*HOLDERS IN DUE COURSE.* This note may be assigned by the Bank or any subsequent holder of this note at any time or from time to time The Borrower hereby agrees that no subsequent holder of this note to whom the note was transferred for value shall be subject to any claims or defenses which the Borrower may have against a prior holder, all of which are waived as to such subsequent holder, and that all such subsequent holders shall have all of the rights of a holder in due course even though the subsequent holder may not qualify, under applicable law, absent this paragraph, as a holder in due course.

*MISCELLANEOUS.* Any failure of the Bank to exercise any right hereunder shall not be construed as a waiver of the right to exercise the same or any other right at any other time. If the Borrower consists of more than one person, such persons shall be jointly and severally liable hereunder. The Borrower intends this to be a sealed instrument and to be legally bound hereby This note shall inure to the benefit of and be enforceable by the Bank and its successors and assigns and be binding and enforceable against the Borrower, its legal representatives, successors and permitted assigns. All issues arising hereunder shall be governed by the laws of Pennsylvania without giving effect to choice of law rules

WITNESS OR ATTEST:                                             CCI Construction Co., Inc.
                                                               BORROWER:

_____                                _____
                                                               (Name of Individual, Corporation,
                                                               Partnership, or Limited Liability Company)

_____(Seal)    By: _____(Seal)
Name and Title                            Name and Title

_____(Seal)    By: _____(Seal)
Name and Title                            Name and Title

_____(Seal)    By: _____(Seal)
Name and Title                            Name and Title

_____(Seal)    By: _____(Seal)
Name and Title                            Name and Title

2500 Old Gettysburg Road Camp Hill, PA 17001
Address

CE 111 2

6/99

C 0851

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of January, 2002, I mailed a true and correct copy of Defendant's Expert Report via Federal Express, postage prepaid upon the following:

>Lawrence Gebhardt, Esquire
>Gebhardt & Smith, LLP
>The World Trade Center
>Ninth Floor
>Baltimore, MD 21020-3064

_____
EDWARD I. SWICHAR

113449.00601/20986567v1

**DONALD C. FRUEH**
311 Twin Oaks Drive
Havertown, PA   19083

(610) 449-2070 (Bus.)          (610) 449-2077 (Fax)

---

Seasoned business leader and financial management professional with 25 years of diverse experience at Fortune 100 financial institutions including 12 at the senior management level.

**PROFESSIONAL EXPERIENCE**

**THE ARDMORE ALLIANCE**, Ardmore, PA (1995-Present)

**Senior Vice President and Senior Consultant for Banking and Corporate Finance**

Responsible for client assignments in banking or finance and for new client development. Duties include issue identification and problem solving, risk management, strategic planning and team building.

**CORESTATES BANK, N.A.**, Philadelphia, PA (1990-1995)

**Senior Vice President and Senior Credit Officer for Regional and National Middle Market Groups**

Responsible for loan portfolios from New England to Virginia. Duties include team building and development, new market creation, risk management, strategic planning and financial accountability.

**FIRST PENNSYLVANIA BANK, N.A.**, Philadelphia, PA (1970-1990)

**Senior Vice President & Consumer Finance Department Manager** (1985-1990)

Responsible for all consumer lending products including small business lending. Duties included problem solving, team building and development, risk management, new product introduction, strategic planning, marketing and financial accountability.

**Senior Vice President & Credit Support Department Manager** (1979-1985)

Responsible for loan workout, loan accounting and loan documentation functions. Duties included team building and development, problem solving, risk management and financial accountability.

113449.00601/20987193v1