ORIGINAL

2 to cv

FILED
HARRISBURG, PA

MAY 9 – 2002

MARY E. D'ANDREA, CLER
Per
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLFIRST BANK, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 1:01-CV-786 |
| JOHN M. ORTENZIO, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE
### WITH RESPECT TO THE TESTIMONY OF THE DEFENDANT'S
### EXPERT WITNESS, DONALD C. FRUEH

Plaintiff, Allfirst Bank ("Allfirst"), by its undersigned attorneys, files this Memorandum in

Support of its Motion in Limine with respect to the testimony of Donald C. Frueh, an expert witness

designated to testify at trial by Defendant, John M. Ortenzio ("Ortenzio").

## I.
## INTRODUCTION

This action involves a temporary $1.2 Million commercial loan that Allfirst extended to CCI

Construction Company, Inc. ("CCI") which was personally guaranteed by Ortenzio. In this action,

Allfirst is seeking to nullify Ortenzio's improper attempt to discharge his obligations under his

guaranty by causing CCI to repay the $1.2 Million loan with monies surreptitiously drawn from a

separate $4 Million line of credit that Allfirst extended to CCI, which Ortenzio did not personally

guarantee.

In defense of Allfirst's claims, Ortenzio has designated Donald C. Frueh, a former banker,

to testify as an expert witness at trial. Mr. Frueh intends to testify at trial that repayment of the $1.2

Million personally guaranteed loan with funds drawn from the $4 Million unguaranteed line of credit did not violate any term or provision of the loan documents for the two credit facilities. Mr. Frueh's testimony would violate the well-settled rule that expert opinion testimony regarding the legal effect of a written agreement is not admissible. Accordingly, Ortenzio should be barred from calling Mr. Frueh as an expert witness at trial.

## II.
## MR. FRUEH'S OPINIONS

Mr. Frueh is a consultant and former bank officer. His opinions are set forth in the Defendant's Expert Report, a copy of which is attached to this Memorandum as Exhibit "A." Mr. Frueh was asked by counsel for Ortenzio to examine a very narrow issue. In Mr. Frueh's words: "[t]he issue which I have examined is whether repayment of the $1.2 Million temporary Line of Credit violated any of the terms of [sic] parties' loan documents." (Defendant's Expert Report, p. 2) In particular, Mr. Frueh examined the loan documents to determine if the documents "require[d] payment only on a certain date," "prohibit[ed] any source of funds from being used for repayment," or "specif[ied] any conditional nature to payments made on the temporary Line of Credit." (Defendant's Expert Report, p. 2) Based upon his review of the loan documents, Mr. Frueh concludes that "CCI Construction Co., Inc. acted in accordance with the terms and conditions of the Allfirst Bank documents and operating procedures that were established between the company and the Bank regarding the repayment of their $1.2 Million Line of Credit." (Defendant's Expert Report, p. 3)

2

## III.
## THE GROUNDS FOR EXCLUDING MR. FRUEH'S TESTIMONY

The admissibility of expert witness testimony is a legal issue to be decided by the Court. *Fed. R. Evid.* 104(a). The party seeking to introduce the expert witness testimony bears the burden of establishing that the requirements for the admissibility of the testimony are met by a preponderance of the evidence. *Bourjaily v. United States*, 46 U.S. 171 (1987).

The requirements for the admissibility of expert witness testimony are set forth in Rule 702 of the *Federal Rules of Evidence*, which provides:

> If scientific, technical, or other specialized knowledge will **assist the trier of fact to understand the evidence or to determine a fact in issue**, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness applied the principles and methods reliability to the facts of the case. (emphasis added)

Not only must the opinion testimony be rendered by a qualified expert using reliable data and sound analysis, the testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue. . . ." Opinion testimony by a qualified expert witness, no matter how reliable and sound, which will not assist the trier of fact is not admissible. *See generally Oddi v. Ford Motor Company*, 234 F.3d 136, 144-45, n. 12 (3rd Cir. 2000)(expert opinion testimony "must first be relevant to be admissible").

As the United States Supreme Court observed in *Daubert v. Merrell Dowell Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), Rule 702 "clearly contemplates some degree of

3

regulation of the subjects about which an expert may testify." The Court in *Daubert* established a "gatekeeping role" for trial judges, charging them with responsibility to exclude unreliable, unsound or unhelpful expert witness testimony. Although *Daubert* involved scientific expert testimony, the United States Supreme Court subsequently emphasized in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), that the gatekeeping function applies to all expert testimony, not just testimony based on science.

Because the interpretation of a contract is an issue for the court, expert witnesses are generally not permitted to testify regarding the legal effect of a written agreement. *Energy Oils, Inc. v. Montana Power Co.*, 626 F.2d 731, 737 n.11 (9th Cir. 1980) ("the construction of written agreements belongs to the court (citation omitted); and witnesses should not have been permitted to testify as to the legal effect of the agreements."). Expert testimony may be appropriate to explain highly technical or confusing terms in a technical contract or document. *International Paper Co. v. Standard Indus., Inc.*, 389 F.2d 99, 102 n.2 (10th Cir. 1968). Similarly, expert testimony of custom and practice may be appropriate to interpret ambiguous contract provisions. *Harbor Ins. Co. v. Lewis*, 562 F. Supp. 800, 803 (E.D. Pa. 1983). However, "[a]bsent any need to clarify or define terms of art, science, or trade, expert opinion testimony to interpret contract language is inadmissible." *TCP Indus., Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 549 (6th Cir. 1981)(error to admit expert testimony interpreting the meaning of a pricing clause in a chemical contract which did not involve "a technical term which needed explaining"). *See also Forrest Creek Assoc. v. McClean Sav. & Loan Ass'n*, 831 F.2d 1238, 1242 (4th Cir. 1987)(excluding expert testimony interpreting standby fee clause in loan commitment because "the commitment speaks for itself, and its proper

interpretation is a question of law"); *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1280-81 (6th Cir. 1997) (expert testimony interpreting insurance binder and policy which did not involve "ambiguous provisions or confusing technical terms" properly excluded).

In the present case, the expert testimony which Ortenzio intends to elicit from Mr. Frueh amounts to nothing more than Mr. Frueh's personal interpretation of the clear and unambiguous language of the loan documents evidencing the credit facilities which Allfirst extended to CCI. Neither Ortenzio nor Mr. Frueh contends that any of the terms and provisions of the loan documents are ambiguous requiring interpretation by reference to custom and practice in the banking industry. Nor do they contend that any of the terminology used in the loan documents is highly technical or specialized, or that it has a meaning different from common usage. Indeed, Mr. Frueh bases his opinion that the loan documents did not prohibit CCI from drawing money down on its line of credit to repay the $1.2 Million loan solely upon the absence of any provision in the loan documents restricting the source of the funds used to repay the loan. (*See* Defendant's Expert Report at pp. 2-3)

Several Pennsylvania courts have excluded expert witness testimony similar to that which Ortenzio is seeking to introduce in this case. For instance, in *Cury v. The Colonial Life Insurance Company of America*, 737 F.Supp. at 847 (E.D. Pa. 1990), the plaintiff sought to introduce testimony from an insurance expert interpreting the language of a pre-existing condition exclusion in a group health insurance policy. The court held that the expert testimony was inadmissible because the language of the pre-existing condition exclusion was "unambiguous and susceptible to only one reasonable interpretation." 737 F.Supp. at 854. Similarly, in *Roy F. Weston Services, Inc. v. Haliburton NUS Environmental Corporation*, 839 F.Supp. 1144 (E.D. Pa. 1993), the plaintiff sought

to introduce expert testimony of custom and practice regarding the defendant's administration of a hazardous waste contract with the plaintiff. The court granted the defendant's motion in limine and excluded the expert testimony on the grounds that the contract was not ambiguous and therefore expert testimony concerning custom and practice was not relevant. 839 F.Supp. at 1148.

Clearly, Mr. Frueh's proposed testimony will not "assist the [Court] to understand the evidence or to determine a fact in issue. . . ." *Fed. R. Evid.* 702. The language of the loan documents is clear and unambiguous. As such, their interpretation is a legal issue for the Court. *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1011 n. 10 (3rd Cir. 1980). This Court obviously does not need Mr. Frueh to tell the Court what the loan documents say. The Court is fully capable of reviewing the loan documents and interpreting the terms and provisions of the loan documents on its own. Because Mr. Frueh's testimony would impinge upon the Court's determination of an issue of law, and would serve no valid purpose, the testimony should be excluded.

## IV.
## CONCLUSION

For all of the foregoing reasons, Ortenzio should be precluded from calling Mr. Frueh as an expert witness at trial.

Lawrence J. Gebhardt, *Pro Hac Vice*
Ramsay M. Whitworth, Pa. Bar No. 85208
GEBHARDT & SMITH LLP
The World Trade Center, 9th Floor
401 E. Pratt Street
Baltimore, Maryland 21202
(410) 752-5830

*Attorneys for Plaintiff, Allfirst Bank*

6

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _____ day of May, 2002, a copy of the foregoing Memorandum in Support of Plaintiff's Motion in Limine With Respect to the Testimony of the Defendant's Expert Witness, Donald C. Frueh was mailed by first class mail, postage prepaid, to: Edward I. Swichar, Esquire, Blank Rome Comisky & McCauley LLP, One Logan Square, Philadelphia, Pennsylvania 19103-6998, attorneys for Defendant.

Lawrence J. Gebhardt

S:\JTH\19527 - Allfirst-Ortenzio\Pleadings\Memo Support of Mtn in Limine.wpd

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALLFIRST BANK,                    :        CIVIL ACTION NO. 1:01-CV-786
                                  :
          Plaintiff,       :
                                  :
    v.                          :
                                  :
JOHN M. ORTENZIO,                 :
                                  :
          Defendant.       :

## **DEFENDANT'S EXPERT REPORT**

 **Ardmore Capital Advisors**
*Strategic Financial Advisors to Corporations*

January 22, 2002

Edward T. Swichar, Esq.
Blank Rome Comisky & McCauley LLP
One Logan Square
Philadelphia, PA  19103-6998

re:    Allfirst Bank vs. John M. Ortenizo

Dear Mr. Swichar:

At your request I have reviewed the $1.2 Million Line of Credit granted by Allfirst Bank
to CCI Construction Co., Inc. and guaranteed by John M. Ortenizo to determine if the
repayment of this facility violated any of the terms of the parties' loan documents.

In connection with this request I have reviewed the following items:

- Complaint of Allfirst Bank vs. John M. Ortenizo
- Defendant's Responses to Plaintiff's first set of Interrogatories
- Defendant's Amended Answer
- Plaintiff's Answers to Defendant's Interrogatories
- Documents included in Allfirst's Document Production (see attachment #1)
- Deposition of John M. Ortenizo and related exhibits

I have concluded that CCI Construction Co., Inc acted in accordance with the terms of
the parties' loan documents and operating procedures that were established between the
company and the Bank to repay the $1.2 Million Line of Credit.  My conclusion is based
on over twenty-five years of experience in the financial services industry, including
extensive experience in underwriting, administering and collecting commercial loans.
Additional experience as an advisor to banks for over five years in matters of loan policy,
loan administration and loan review are pertinent here.

OVERVIEW DISCUSSION

CCI Construction Co., Inc. was an existing commercial borrowing customer of Allfirst
Bank in 1999.  The company requested the Bank through its representative, Craig
Schwartz, lend additional working capital funds on a temporary basis in November 1999.

Based on the 11/2/99 "Discussion Outline" (see attachment #2) the Bank considered
responding to the company's request by temporarily increasing until 2/28/00 the existing
revolving Line of Credit of $4 Million to $5 Million and requiring Mr. Ortenizo's
guarantee of the entire facility.

An Ardmore Alliance Company

 **ARDMORE CAPITAL ADVISORS**

However, the Bank determined on 11/5/99 to approve a separate $1.2 MM temporary Line of Credit (see attachment #3), to be guaranteed by John M. Ortenizo. This temporary facility was documented and closed 11/9/99.

In February 2000 the company informed the Bank that they would be paying off the temporary line. Since the company's existing Revolving Line of Credit for $4 MM was structured by the Bank to adjust daily based on deposits and presentments to a zero balance checking account, the company's check to repay the temporary Line of Credit was an additional presentment on that day. On 2/5/00 the Bank's representative, Craig Schwartz, acknowledged repayment of the temporary Line of Credit and subsequently returned the note and guarantee related thereto (see attachment #4).

THE ISSUE

The issue which I examined is whether the repayment of the $1.2 Million temporary Line of Credit violated any of the terms of parties' loan documents.

Specifically did the documents:
- Require payment only on a date certain?
- Prohibit any source of funds from being used for repayment?
- Specify any conditional nature to payments made on the temporary Line of Credit?

The Bank's "Commercial Loan Note-Line of Credit" (see attachment #5) stipulated only that it is "payable on demand 30 days after written notice of demand by Bank" but places no limitations on borrower's opportunity to repay at any time prior to demand by the Bank. This is the usual and customary practice for a line of credit obligation.

The Bank's documents for the temporary Line of Credit do not specify the source of repayment, nor do they prohibit any source of repayment. Absent any prohibitions, which could have been included if required by the Bank, it is not uncommon for borrowers to utilize one accommodation to repay another accommodation from their bank depending on tenor, terms or rate of interest. The Bank agreed to make multiple facilities available to the company and didn't specifically prohibit movement of funds between those facilities.

The Bank's "Commercial Loan Note-Line of Credit" speaks to the application of payments between fees, interest and principal but never uses the term "conditional acceptance". The usual and customary banking practice would only be to require that the payment must be made with "collected funds" before it is credited, and since the repayment was from Allfirst funds it was immediately available funds.

 **ARDMORE CAPITAL ADVISORS**

SUMMARY

It is my opinion expressed to a reasonable degree of certainty that CCI Construction Co., Inc. acted in accordance with the terms and conditions of the Allfirst Bank documents and operating procedures that were established between the company and the Bank regarding the repayment of their $1.2 Million Line of Credit.

My opinion or aspects thereof may change on the basis of additional information which I may review at some future time.

Donald C. Frueh

#1

## ALLFIRST'S GENERAL OUTLINE OF DOCUMENT PRODUCTION

| BATES NO. | DESCRIPTION |
|---|---|
| C-0001 to 789 | Allfirst Bankruptcy Document Production |
| C-0790 to 871 | Ortenzio Deposition Transcript and Exhibits |
| C-0872 to 1445 | Allfirst Credit File |
| C-1446 to 1556 | Allfirst "Legal File" as to $4 Million Line of Credit |
| C-1557 to 1592 | Allfirst "Legal File" as to $1.2 Million Commercial Loan Note |
| C-1593 to 1647 | Allfirst "Legal File" as to $2 Million Secured Equipment Line of Credit |
| C-1648 to 1677 | Allfirst "Legal File" regarding $200,000 Letter of Credit |
| C-1678 | Change in CCI Account after 2/11/00 Sweep |
| C-1679 to 1685 | Financial Information provided by CCI to Allfirst |
| C-1686 to 1692 | Notes taken by Jamin Gibson on February 18, 23 & 24, 2000 |

# 2

 allfirst

Allfirst Bank
P.O. Box 2961
Harrisburg, PA 17105 2961

## CCI CONSTRUCTION COMPANY, INC.
### Line of Credit Increase
### Discussion Outline

November 2, 1999

**LINE AMOUNT:**      $5,000,000 ( $1,000,000 increase)

**COLLATERAL:**      Specific Security Interest in all unencumbered equipment including titled vehicles.

**DURATION:**      The increase will expire February 28, 2000.

**SURETY:**      John Ortenizo

1. Satisfactory receipt and review of a personal financial statement.
2. The amount or the Surety shall be for the entire amount of the line.
3. The Surety will decrease to $4,000,000 when the line increase expires.
4. The Surety shall remain in effect until the net worth of CCI Construction Company, Inc. is greater than $4,000,000.

All costs shall be paid by the Borrower.

This outline is for discussion purposes only and does not represent a commitment on the part of Allfirst Bank.

This outline is subject to approval by the Bank and subject to satisfactory review by the Bank of requested financial information and related matters as part of the Banks due diligence process.

C 0720



#3

Allfirst Bank
P.O. Box 2961
Harrisburg, PA 17105-2961

November 5, 1999

Mr. John M Ortenzio, President
CCI Construction Co., Inc
P.O. Box 8800
Mechanicsburg, PA 17055

Dear John:

I am pleased to inform you that Allfirst Bank (hereinafter "Bank") has approved a $1,200,000 partially secured line of credit to CCI Construction Co., Inc. (hereinafter "Borrower") as follows:

| | |
|---|---|
| Principal Amount of Line: | $1,200,000.00 |
| Interest Rate: | Bank's Base Rate as in effect from time to time, minus 1/2%. |
| Repayment: | Interest payable monthly, principal on demand. |
| Use of Proceeds: | Finance work in progress and accounts receivable. |
| Collateral: | Specific equipment financed, including titled vehicles |

Borrowings under Loan will bear interest at an annual rate equal to the Bank's Base Rate as in effect from time to time, minus one-half percent. This interest will change when and as the Bank's Base Rate changes. Interest will be calculated on the basis of the actual number of days in the current calendar year divided by 360. Interest will be payable monthly upon submission of the Bank's notice therefor.

Borrowings under the Loan will be payable on demand. If no demand is made, the Loan will expire and all borrowings will be due and payable, together with interest thereon, on March 31, 2000.

Borrowings under the Loan shall be limited to 80% of the Borrower's qualified accounts receivable which are less than 90 days past due, excluding retainages.

C 0400

CCI Construction Co., Inc.
November 5, 1999
Page Two

The Loan will be supported by the personal Suretyship of John M. Ortenzio limited to $1,200,000.

The Borrower shall furnish the Bank with financial reporting as follows:

1.  Annual CPA- audited financial statements of CCI Construction Co., Inc.

2.  Quarterly work in process reports for CCI Construction, Co., Inc.

3.  Quarterly Company prepared financial statements of CCI Construction Co., Inc.

4.  Monthly borrowers certification with monthly accounts receivable aging and listing.

5.  Annual personal financial statement of John M. Ortenzio.

The Borrower shall maintain a primary business deposit relationship with the Bank.

The Borrower will not create, assume or permit to exist, any mortgage, pledge, lien or encumbrance of or upon, or security interest in any of Borrower's property or assets now owned or hereafter acquired in favor of the Bank, other than purchase money, without prior written consent of the Bank.

The availability to the Loan is contingent upon the Borrower and the Bank entering into mutually acceptable loan documentation setting forth the terms and conditions contained herein and such other terms and conditions, covenants, warranties and representations as may be required by the Bank and be mutually acceptable to the Borrower and the Bank. All terms and conditions contained herein shall survive the execution of such loan documentation.

The commitment is contingent upon the right of the Bank at any time hereafter and from time to time to review the commitment, to adjust terms and conditions, or to discontinue the commitment should the Bank in the reasonable exercise of its sole business discretion deem it necessary to do so.

C 0401

CCI Construction Co., Inc.
November 5, 1999
Page Three


Please indicate the acceptability of these terms and conditions by dating, signing, and returning an executed copy of this letter no later than November 19, 1999.

Very truly yours,


Craig J. Schwartz
Vice President

CJS/mas

Enclosure

ACKNOWLEDGED AND ACCEPTED THIS          DAY OF                    , 1999.


ATTEST:                                        CCI CONSTRUCTION CO., INC.

BY: _____ _Sec._             BY: _____
       Title: _Sec/Treas'_                          Title: _Pres_


WITNESS:                                       SURETY:

_____                  _____
                                            John M. Ortenzio





Allfirst Bank

Mr. John Ortenzio                          February 15, 2000
President
CCI Construction Co., Inc.
P.O. Box 8800
Camp Hill, PA 17001-8800

Dear John:

This to inform you that the line of credit to CCI Construction in the amount of $1,200,000.00 has been paid in full as of February 11, 2000.

I have contacted our legal department to retrieve the canceled note and suretyship and to send it to me as soon as possible. I should have these items by Thursday the 17th at which time I will return them to you.

If you have any questions please contact me.

Thank you,

Craig J Schwartz
Vice President

C 1375

#4

FEB-15-00 TUE 10:59    CL C MCHILL          FAX NO. 7176125007.          P. 01

## RELEASE OF COLLATERAL

### DAUPHIN DEPOSIT BANK AND TRUST COMPANY
BANK OF PENNSYLVANIA • FARMERS BANK • VALLEYBANK

*(Bank of Pennsylvania, Farmers Bank and Valleybank are divisions of Dauphin Deposit Bank and Trust Company)*

DATE: _February 15 2000_

TO:    Collateral Clerk    D. Maletz
DEPT: Commercial Loan Operations Main

FROM: _Craig Schwartz_
DEPT: _____ O/L _____

Customer's Name _CCJ Construction_

Customer Number _0102595_          Loan/Line Number(s) _0200_

Type of Collateral _Surety J. Cotenzio_

_____

_____

Reason for Release:

___✓___ Loan has been paid in full
_____ Customer will pay off loan with cash, certified funds or proceeds of savings instrument
_____ Substitution of collateral (Two (2) signatures required)
_____ Early release of collateral (Two (2) signatures required)

Please indicate if the COLLATERAL CODE should be changed on the Loan/Line level:
Yes _____ No _____ . If yes, change the code from _____ to _____

Reason for Substitution/Early Release _____

_____. Instructions  _Send docs to me CIS ASAP 014-62-01_

_____

_____

Rec
DPM
2-15-00

                                        Loan Officer's Signature

                                        Regional Approval Signature

| Post-it® Fax Note | 7671 | Date | # of pages ▶ |
|---|---|---|---|
| To D Maletz | | From Craig | |
| Co./Dept. | | Co. | |
| Phone # | | Phone # | |
| Fax # | | Fax # | |

Date _____

Receipt of the above is hereby acknowledged

_____
                                        Customer Signature

00-060-240 (rev. 4/97)

                                        2SSet/Pk.

C 1576



 **allfirst**

COMMERCIAL LOAN NOTE
LINE OF CREDIT

COPY

$ ___1,200,000.00___                                       Date __11-8-99__

FOR VALUE RECEIVED, the undersigned, __CCI Construction Co., Inc__
a (corporation/partnership/limited liability company/individual) (the "Borrower"), jointly and severally (if more than one), promise
to pay to the order of ALLFIRST BANK, a Maryland state-chartered commercial bank (the "Bank") or its assigns, the principal
amount of ONE MILLION TWO HUNDRED THOUSAND & NO/100 DOLLARS
to be paid as follows:
Principal is payable on demand.

Interest is payable monthly, accrued to date of Bank's notice thereof,
with all accrued and unpaid interest, and unpaid fees and charges, due
with the principal payment.



**EXHIBIT**
Ortenzio-1
2/30/01   9ea

Interest shall accrue at a rate per annum equal to the Bank's Base Rate minus .50000%
as in effect from time to time. The term "Bank's Base Rate," which is not
necessarily the lowest rate of interest charged by the Bank, is defined as the prime
rate of interest for loans established by the Bank from time to time.

Interest shall be calculated on the basis of the actual number of days elapsed and a year of 360 days. Both principal and
interest are payable in lawful money of the United States of America at any office of Bank in immediately available funds. If
any payment due hereunder is received by the Bank more than fifteen (15) calendar days after its due date, the Borrower
shall pay a late payment charge equal to five percent (5%) of the amount then due or $10.00, whichever is greater.

APPLICATION OF PAYMENTS. All payments made hereunder shall be applied first to late payment charges or other
sums owed to the Bank, next to accrued interest, and then to principal, or in such other order or proportion as the Bank, in
its sole and absolute discretion, may elect from time to time.

SECURITY. The payment of this note and any renewals, extensions and modifications thereof, and the payment,
performance and discharge of all other present or future indebtedness, obligations and undertakings (individual, joint,
several, direct, contingent, or otherwise) of the Borrower to or for the benefit of the Bank, whether arising directly to the
Bank under this note or under any other agreement, promissory note or undertakings now existing or hereinafter entered
by the Borrower to the Bank (collectively, the "Liabilities") is secured by the property described in, and under and pursuant
to the terms and conditions of that certain:
Collateral as set forth in a Security Agreement - Specific Collateral dated _11_/_8_/_99_.

As additional security for the Liabilities, Borrower grants the Bank a lien upon and a security interest in any securities,
instruments or other personal property of Borrower now or hereafter in Bank's possession or control, or hereafter held by
Bank for Borrower's account and in all proceeds of any such personal property or deposit balances now or hereafter held by
Bank for Borrower's account and in all proceeds of any such personal property or deposit balances
Such liens and security interests shall be independent of Bank's right of setoff.

STATEMENT OF ACCOUNT. The Bank will furnish the Borrower with a statement of account on a periodic basis. Each
and every statement of account shall be final, conclusive and binding upon the Borrower in all respects as to the
outstanding balance of principal and as to all loans, fees, interest, charges, payments, receipts, balances, and all other
matters reflected therein unless the Borrower, within ten (10) days after the posting thereof in the United States mail, shall
give notice to the Bank in writing of any objections which the Borrower may have to any such statement of account, and
in such event, only those items expressly objected to in such written notice shall be considered to be disputed by the
Borrower and all other items shall be binding.

PAYMENT OF COSTS. In addition to the principal and interest payments specified above, the Borrower shall pay to the
Bank or any other holder of this note, upon demand, all costs and expenses (including reasonable attorneys' fees, whether
or not litigation is commenced) which may be incurred by the Bank or such holder in the collection or enforcement of this
note. Said costs shall include reasonable attorneys' fees and costs in bankruptcy proceedings and any costs and attorneys
fees incurred for any action or proceeding in relation to the loan transaction, including but not limited to the joinder of
Bank in any action between the Borrower and a third party.

CE 1111

5  99

C 0850

*DEFAULTS* The Borrower shall be in default hereunder upon the occurrence of any of the following events: (a) the nonpayment when due of any amount payable on any of the Liabilities, or the failure of any Obligor to observe or perform any agreement of any nature whatsoever, with the Bank (the term "Obligor" as used herein being meant to include the Borrower and all persons liable on the note or any renewals, extensions, or modification thereof, such as endorsers, sureties, or guarantors), (b) if any Obligor becomes insolvent or makes an assignment for the benefit of creditors, or if any petition is filed by or against any Obligor under any provisions of any law or statute alleging that such Obligor is insolvent or unable to pay debts as they mature, (c) the entry of any judgment against any Obligor or the issuing of any attachment or garnishment against any property of any Obligor or the occurrence of any change in the financial condition of any Obligor which in the sole judgment of the Bank is materially adverse; (d) the dissolution, merger, consolidation or reorganization of any Obligor, which is an entity such as a corporation, limited partnership, partnership or limited liability company, (e) the death of any Obligor who is a natural person; (f) any information heretofore or hereinafter furnished to the Bank by any Obligor in connection with the loan evidenced hereby or any suretyship or guaranty should be materially false and (g) the failure of any Obligor to furnish such financial and other information as the Bank may reasonably request. If this Note is payable on demand, Bank's right to demand payment hereof shall not be restricted or impaired by the ~~absence of, non-occurrence of or waiver of a default hereunder, and it is understood that Bank may demand payment at~~ any time ~~after~~ giving borrower a 30-day written notice of demand

*ACCELERATION AND ENFORCEMENT RIGHTS* Whenever the Borrower shall be in default as aforesaid, (1) unless the Bank elects otherwise, the entire unpaid amount of such of the Liabilities as are not then due and payable shall become immediately due and payable ~~without notice to or~~ demand on any Obligor, and (2) the Bank may at its option exercise from time to time any or all rights and remedies available to it at law or in equity. The Borrower waives all right to stay of execution or garnishment and exemption of property in any action to enforce any of the Liabilities.
~~to~~ reasonable attorney fees

*JUDGMENT* The Borrower does hereby authorize and empower any attorney of any court of record of Pennsylvania or elsewhere to appear for and enter judgment against Borrower for the above sum, with or without declaration, with costs of suit, including reasonable attorneys' fees and fees in bankruptcy proceedings, if any, release of errors, without stay of execution, and with ~~fifteen (15%) percent~~ added for collection fees, and the Borrower further agrees that real, personal or mixed property may be sold or garnished upon any writ of execution or writ of garnishment as now or hereafter provided by law or the Pennsylvania Rules of Civil Procedure governing the enforcement of judgments; and Borrower hereby waives and releases all relief from any appraisement, stay or exemption laws of any state now in force or hereafter enacted. If a copy hereof, verified by affidavit, shall have been filed in such proceeding, it shall not be necessary to file the original as a warrant of attorney. The Borrower (and each of them, if more than one) hereby waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of this warrant and power to confess judgment shall be deemed to exhaust this power, whether or not any such exercise shall be held by any court to be invalid, voidable or void, but this power shall continue undiminished and may be exercised from time to time as often as Bank shall elect until all sums due hereunder shall have been paid in full.

*WAIVERS* The Borrower hereby, waives presentment, notice of dishonor and protest. The Borrower hereby waives and releases all errors, defects and imperfections of a procedural nature in any proceedings instituted by the Bank hereunder, as well as all benefit that might accrue to the Borrower by virtue of any present or future laws exempting any property, real or personal, or any part of the proceeds arising from any sale of such property, from garnishment, attachment, levy or sale under execution, or providing for any stay of execution, exemption from civil process, or extension of time for payment. The Borrower agrees that any property, real or personal, that may be levied upon pursuant to any writ of execution or writ of garnishment issued on any judgment by virtue of this note, may be sold, in whole or in part, in any order desired by the Bank.

*HOLDERS IN DUE COURSE.* This note may be assigned by the Bank or any subsequent holder of this note at any time or from time to time. The Borrower hereby agrees that no subsequent holder of this note to whom the note was transferred for value shall be subject to any claims or defenses which the Borrower may have against a prior holder, all of which are waived as to such subsequent holder, and that all such subsequent holders shall have all of the rights of a holder in due course even though the subsequent holder may not qualify, under applicable law, absent this paragraph, as a holder in due course.

*MISCELLANEOUS.* Any failure of the Bank to exercise any right hereunder shall not be construed as a waiver of the right to exercise the same or any other right at any other time. If the Borrower consists of more than one person, such persons shall be jointly and severally liable hereunder. The Borrower intends this to be a sealed instrument and to be legally bound hereby. This note shall inure to the benefit of and be enforceable by the Bank and its successors and assigns and be binding and enforceable against the Borrower, its legal representatives, successors and permitted assigns. All issues arising hereunder shall be governed by the laws of Pennsylvania without giving effect to choice of law rules.

CCI Construction Co., Inc.

WITNESS OR ATTEST:                               BORROWER:

_____                 _____

_____                 (Name of Individual, Corporation,
                                                 Partnership, or Limited Liability Company)

_____ (Seal)          By: _____
Name and Title                                       Name and Title                (Seal)

_____ (Seal)          By: _____
Name and Title                                       Name and Title                (Seal)

_____ (Seal)          By: _____
Name and Title                                       Name and Title                (Seal)

_____ (Seal)          By: _____
Name and Title                                       Name and Title                (Seal)

2500 Old Gettysburg Road Camp Hill, PA 17001
Address

CE 111 2                                                                    6/99

C 0851

**DONALD C. FRUEH**
311 Twin Oaks Drive
Havertown, PA  19083

(610) 449-2070 (Bus.)        (610) 449-2077 (Fax)

Seasoned business leader and financial management professional with 25 years of diverse experience at Fortune 100 financial institutions including 12 at the senior management level.

## PROFESSIONAL EXPERIENCE

**THE ARDMORE ALLIANCE**, Ardmore, PA (1995-Present)

**Senior Vice President and Senior Consultant for Banking and Corporate Finance**

Responsible for client assignments in banking or finance and for new client development.  Duties include issue identification and problem solving, risk management, strategic planning and team building.

**CORESTATES BANK, N.A.**, Philadelphia, PA (1990-1995)

**Senior Vice President and Senior Credit Officer for Regional and National Middle Market Groups**

Responsible for loan portfolios from New England to Virginia.  Duties include team building and development, new market creation, risk management, strategic planning and financial accountability.

**FIRST PENNSYLVANIA BANK, N.A.**, Philadelphia, PA (1970-1990)

**Senior Vice President & Consumer Finance Department Manager** (1985-1990)

Responsible for all consumer lending products including small business lending.  Duties included problem solving, team building and development, risk management, new product introduction, strategic planning, marketing and financial accountability.

**Senior Vice President & Credit Support Department Manager** (1979-1985)

Responsible for loan workout, loan accounting and loan documentation functions.  Duties included team building and development, problem solving, risk management and financial accountability.

**Vice President & Area Head of Commercial Finance Department** (1972-1979)

Responsible for new business development, loan workout, collateral management and audit functions of a national asset-based lending business.  Duties included team building and development, new market identification and development, risk management, strategic planning, financial accountability.

**Executive Development Program** (1970-1972)

Training in all aspects of retail and commercial banking.

## EDUCATION

Diploma, ABA Stonier Graduate School of Banking at Rutgers University, New Brunswick, NJ (1978)

A.B, Honors in Government & Law, Lafayette College, Easton, PA (1970)

Seminars attended:

Direct to the Consumer - Peat Marwick (1986)
Setting a Creative Climate - Center for Creative Leadership (1986)
Senior Executive Presentations - Myles Martel Assoc. (1987)
Management Practices and Tactics - SMR Forum (1990)

## PROFESSIONAL ACTIVITIES

Adjunct Professor of Finance - Philadelphia College of Textiles and Sciences
   (1995- Present)

Director, Greenstone Industries, Bethesda, Maryland (1996-Present)

Member, Consumer Bankers Association (1985-1991)
National Communications Committee Member (1987-1990)

Member, Robert Morris Associates (1973-Present)
Chairman, Program Committee of Philadelphia Chapter, Robert Morris Associates
   (1992-Present)
Instructor, Omega/Robert Morris "Lending to Business" course (1978-1985)

MATTER IN WHICH DONALD C. FRUEH HAS EITHER BEEN DEPOSED OR TESTIFIED
IN COURT DURING THE PAST FOUR YEARS:

1.    Condemnation by Lower Makefield Township v. the Lands of Lawrence J. Lancaster and
      Eileen Lancaster

COMPENSATION FOR REPORT & TESTIMONY:  $295 PER HOUR

# CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of January , 2002, I mailed a true and correct

copy of Defendant's Expert Report via Federal Express, postage prepaid upon the

following:

> Lawrence Gebhardt, Esquire
> Gebhardt & Smith, LLP
> The World Trade Center
> Ninth Floor
> Baltimore, MD  21020-3064

EDWARD I. SWICHAR

113449.00601/20986567v1