ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ALLFIRST BANK,                    :

        Plaintiff,            :

        v.                    :    CASE NO. 1:01-CV-786

JOHN M. ORTENZIO,                 :

        Defendant.            :

**FILED**
HARRISBURG, PA

JUN 1 4 2002

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

## DEFENDANT'S MOTION FOR RECONSIDERATION AND MEMORANDUM OF LAW IN SUPPORT THEREOF

### Motion for Reconsideration

Defendant, John M. Ortenzio ("Mr. Ortenzio"), by and through his undersigned counsel, hereby moves for reconsideration of this Honorable Court's June 6, 2002 Order.  Mr. Ortenzio does not object to the Court's ruling that Plaintiff's failure to provide expert reports for Messers Schwartz, Gibson and Elias is not grounds for excluding their testimony.  However, because Plaintiff failed to disclose the opinions and factual bases of the opinions of these fact/expert witnesses in response to Mr. Ortenzio's discovery requests, the expert portion of their testimony should be excluded.   Therefore, Mr. Ortenzio respectfully requests that this Honorable Court vacate its June 6, 2002 Order and enter an Order precluding Allfirst from eliciting expert opinion testimony from Messers Schwartz, Gibson and Elias.

### Memorandum of Law

According to the June 6, 2002 Order, Allfirst may elicit expert opinion testimony from Messers Schwartz, Gibson and Elias (the "Hybrid Witnesses") so long as their opinions are gleaned from their personal involvement in this matter.  A true and correct copy of the June 6, 2002 Order is attached hereto as Exhibit "A."  Mr. Ortenzio does not dispute this Court's ruling

that, according to Federal Rule of Civil Procedure 26(a)(2), Allfirst's failure to provide an expert report for the hybrid witnesses is not grounds for excluding their expert opinion testimony. However, Allfirst's failure to disclose the opinion and factual bases for the opinions of the hybrid witnesses in response to Mr. Ortenzio's specific discovery requests **is** a valid ground for excluding the expert portion of their testimony.    See, Federal Rules of Civil Procedure 26(e)(1) and 37(c)(1).

As this Court noted in its June 6, 2002 Order, the disclosure requirements for non-retained fact/expert witnesses (or hybrid witnesses) is a relatively novel issue.   See, Exhibit "A" at 4.  While the disclosure requirements for retained experts do not apply to hybrid witnesses, a party is permitted to discover the opinion and factual bases of the opinion of hybrid witnesses. See, Sullivan v. Glock, 175 F.R.D. 497, 506 (D. Md. 1997) ("counsel must be prepared to obtain information about the opinions and bases of [hybrid witness] testimony by interrogatories and/or depositions"); Salas v. U.S., 165 F.R.D. 31, 34 (W.D.N.Y 1995) (noting that government had been provided with nature and substance of treating physician's opinion and plaintiff's failure to provide expert report was not grounds for exclusion of treating physician's opinion testimony).

Thus, even though Allfirst may not have been required to furnish an expert report for the hybrid witnesses pursuant to Federal Rule of Civil Procedure 26(a)(2), it was nevertheless required to disclose the opinions and factual bases of the opinions for the hybrid witnesses in response to Mr. Ortenzio's specific discovery requests.  Mr. Ortenzio attempted to obtain this information from Allfirst during discovery to no avail.   In fact, to this date, Allfirst has **never** disclosed the actual opinion of, or facts relied upon by, any of its hybrid witnesses.

2

Mr. Ortenzio timely served Allfirst with Interrogatories and Requests for Production of Documents. Interrogatory Number 20 requested that Allfirst disclose the names and addresses of all persons it expected to call as expert witnesses; the facts to which the expert is expected to testify; and the opinion of the experts. A copy of Mr. Ortenzio's Interrogatory Number 20 and Allfirst's response thereto is attached hereto as Exhibit "B." On December 12, 2001, Plaintiff responded to Mr. Ortenzio's Interrogatory by stating that it had not yet determined which experts it would be calling at trial and by stating that it would supplement its answer to Interrogatory Number 20.[1] See, Exhibit "B." Despite being required to supplement its response to this interrogatory pursuant to Federal Rule of Civil Procedure 26(e)(2), Allfirst has never provided an answer to this interrogatory. According to Federal Rule of Civil Procedure 37(c)(1), the penalty for Allfirst's failure to supplement its answer is exclusion of this testimony at trial.[2]

On February 5, 2002, Plaintiff identified Messers Schwartz, Gibson and Elias as fact witness who will offer expert testimony on the "issue of whether it is consistent with custom and practice in the banking industry to permit a borrower to repay a guaranteed credit facility with a draw upon an unguaranteed revolving line of credit shortly before the company announces it is in financial distress." A copy of Allfirst's February 5, 2002 letter is attached hereto as Exhibit "C." Although Allfirst identified the subject matter of its hybrid witnesses' proposed testimony, Allfirst failed to disclose the expert opinion of each of these proposed witnesses and failed to disclose the facts upon which each of the witnesses relied in forming their opinions.

Furthermore, on February 15, 2002, at the deposition of Mr. Schwartz, Mr. Ortenzio's

---

[1] Allfirst did not object to interrogatory number 20.

[2] Federal Rule of Civil Procedure 37(c)(1) provides: "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed."

counsel asked Allfirst's counsel if Mr. Schwartz would be called as an expert witness at trial. Schwartz Dep. at 172.[3]  Allfirst's counsel responded that it would depend upon the testimony of any experts called by Mr. Ortenzio.[4]  See, Exhibit "D" at 172.  Mr. Ortenzio's counsel proceeded to question Mr. Schwartz regarding his knowledge of banking practices and custom, **the very subject Allfirst identified as the subject matter of the proposed expert testimony of Allfirst employees in its February 5, 2002 letter.**  See, Exhibit "D" at 174.   Mr. Schwartz testified that he did not recall any banking practices or customs which prohibit borrowers from repaying guaranteed loans from unguaranteed loans.  See, Exhibit "D" at 174.[5]   Because Mr. Schwartz claimed not to recall any such banking practice or custom, Mr. Ortenzio's counsel was unable to elicit further testimony from Mr. Schwartz regarding his opinion on whether the facts of this case conformed to such banking practices or customs.

In addition, on January 17, 2002, Mr. Ortenzio conducted the deposition of Mr. Gibson, who was identified as Allfirst's 30(b)(6) witness.  At his deposition, Mr.Gibson testified that he became involved with CCI and Mr. Ortenzio on February 18, 2000  and had no knowledge of any loan relationships CCI had with Allfirst prior to February 18, 2000.  Gibson Dep. at 13-14.[6]

---

[3] Excerpts from Mr. Schwartz's deposition are attached hereto as Exhibit "D."

[4] At the time of Mr. Schwartz's deposition, Allfirst had already been served with the expert report of Mr. Ortenzio's expert.

[5] Allfirst may respond that because it will only be calling Messers. Schwartz, Gibson and Elias on rebuttal as per its February 5, 2002 letter, it cannot determine the facts and opinions of these expert witnesses at this time.  However, in light of this Court's June 6, 2002 Order, which does not appear to limit their testimony to rebuttal (even though Allfirst's counsel's letter of February 5, 2002 limited their testimony to rebuttal), this argument must be rejected. According to the June 6, 2002 Order, Messers. Schwartz, Gibson and Elias may offer their expert opinion **"provided that such opinions are gleaned from each witness's personal involvement in this matter."**  See, Exhibit "A" at 7 (emphasis added).  Since this Court requires that the expert opinions be derived from the witness's personal involvement in the transaction – and not the evidence presented by the defendant at trial - the opinions of the experts must already be formed.   Moreover, the subject matter of the proposed expert testimony of the hybrid witnesses was identified by Allfirst in its February 5, 2002 letter, thereby giving the hybrid witnesses ample time within which to form their expert opinions.  Consequently, the expert opinion of Messers. Schwartz, Gibson and Elias must be excluded due to Allfirst's failure to disclose the actual opinion and factual bases of the hybrid witnesses' opinions in response to Mr. Ortenzio's discovery requests.

[6] Excerpts form Mr. Gibson's deposition are attached hereto as Exhibit "E."

Further, Mr. Gibson testified that it was not until after February 14, 2000 that he became involved in managing loan relationships at Allfirst, as prior to that time, his duties at Allfirst were related to risk management. See, Exhibit "E" at 10. In light of these facts, Mr. Ortenzio's cannot be faulted for his decision not to notice Mr. Gibson's deposition in order to obtain his expert opinion after receiving the February 5, 2002 letter identifying Mr. Gibson as a proposed expert. In addition, under Federal Rule of Civil Procedure 26(e)(2), Allfirst had the continuing obligation to supplement its response to Mr. Ortenzio's interrogatories and provide the opinion and factual basis of Mr. Gibson, as well as Mr. Schwartz and Mr. Elias.

In the interests of fairness, Allfirst's stonewalling tactics of refusing to provide the requested disclosures should not be rewarded. In addition, as a matter of law, Allfirst's failure to provide the requested disclosures warrants the exclusion of expert opinion testimony from the hybrid witnesses pursuant to Federal Rule of Civil Procedure 37(c)(1). Thus, as Allfirst has failed to disclose the opinions and factual bases for the opinions of the hybrid witnesses in response to Mr. Ortenzio's specific discovery requests, Allfirst must be precluded from eliciting the expert opinion of Messers. Schwartz, Gibson and Elias at trial.

## **Conclusion**

In light of the foregoing, Mr. Ortenzio respectfully requests this Honorable Court vacate its June 6, 2002 Order and enter an Order prohibiting Allfirst from eliciting the expert opinion of Mr. Schwartz, Mr. Gibson and Mr. Elias.

Respectfully submitted,

BLANK ROME COMISKY & McCAULEY LLP

Dated: 6.13.02

BY: _____

EDWARD I. SWICHAR, ESQUIRE
ROBERT A. BURKE, ESQUIRE
*Attorneys for Defendant, John M. Ortenzio*

## CERTIFICATE OF SERVICE

Edward I. Swichar, attorney for Defendant, John Ortenzio, hereby certifies that he caused

a true and correct copy of Defendant's Motion for Reconsideration and Memorandum of Law to

be served upon the following on this 13th day of June, 2002, by Federal Express Next Day

Delivery:

> Lawrence Gebhardt, Esquire
> Gebhardt & Smith, LLP
> The World Trade Center, Ninth Floor
> Baltimore, MD  21020-3064

EDWARD I. SWICHAR, ESQUIRE

7

## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**ALLFIRST BANK,**

      **Plaintiff**

    v.

**JOHN M. ORTENZIO,**

      **Defendant**

:
:
:
:
:
:
:
:
:
:

**CIVIL ACTION NO. 1:CV-01-0786**



FILED

JUN 0 6 2002

PER _____
HARRISBURG, PA  DEPUTY CLERK

### O R D E R

    The background of this order is as follows: On May 13, 2002, Plaintiff filed a pretrial memorandum. In that document, Plaintiff indicated that it intended to call the following persons to provide opinion testimony at trial: (1) Sheri Phillips, CCI, Inc.'s former Chief Financial Officer; (2) Craig Schwartz, the Allfirst Vice President who made the loans at issue in this case; (3) Gerard Elias, Allfirst's Senior Vice President; (4) Jamin Gibson, another Allfirst employee; and (5) Michael Zarcone, a former Allfirst Vice President who was Schwartz's direct supervisor. According to Plaintiff:

> Because of their education, training, and experience, the [sic] are competent to express opinion [sic] in the areas of finance, commercial lending, and banking and lending custom and practice. These witnesses have been identified as such to Defendant during the discovery period and Plaintiff expects their testimony to encompass opinions with respect to the aforementioned areas.

(Pl.'s Pretrial Memo. at 8.)

    On May 22, 2002, the court held a pretrial conference in the captioned matter. During that meeting, the court voiced concern over Plaintiff's intention to have the above-listed fact witnesses offer opinion testimony. By a letter dated May 23, 2002, Plaintiff's counsel indicated that the employees would not be called to



offer lay opinion testimony. Rather, Plaintiff intends to have these witnesses provide expert testimony pursuant to Federal Rule of Evidence 702.[1]  Plaintiff acknowledges that it did not provide Defendant with written expert reports from these witnesses. Instead, Plaintiff states: "we did disclose the identities of all of these individuals as potential experts at the beginning of February 2002 before expiration of the discovery period and before their depositions had been taken by Defendant." (Pl.'s Letter to court dated May 23, 2002 at p. 1-2.)

Defendant responded to this contention with a letter to the court dated May 28, 2002. Defendant contends that Plaintiff's failure to provide a written report for these witnesses precludes them from providing expert opinions. In support of his contention, Defendant offers a letter from Plaintiff's counsel, dated February 5, 2002, in which Plaintiff indicated that it would call several Allfirst employees – Gerard Elias, Jamin Gibson, Craig Schwartz, and Daryl Myers – to testify as rebuttal experts.[2]

---

[1]Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

[2]The letter states:

> Regarding the subject of expert witnesses, please be advised that the Bank may provide rebuttal testimony from any of the Bank officers involved in this transaction, including Gerard Elias, Jamin Gibson, Craig Schwartz, and Daryl Myers. The rebuttal testimony would be directed to the issue of whether it is consistent with custom and practice in the banking industry to permit a borrower to repay a guaranteed credit facility with a draw upon an unguaranteed revolving line of credit shortly before the company announces that it

(continued...)

2

Under Federal Rule of Civil Procedure 26(a)(2)(A), a party must disclose the identity of any witness who may provide opinion testimony at trial pursuant to Federal Rules of Evidence, 702, 703, or 705. Rule 26(a)(2)(B) requires that a party provide a comprehensive written and signed report from any "witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony. . . ." Rule 37(c)(1), the enforcement mechanism for Rule 26(a)(2), provides that: "A party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at trial . . . any witness or information not so disclosed." Accordingly, Defendant argues, the fact witnesses must be precluded from providing expert opinions because Plaintiff failed to provide expert reports in accordance with Rule 26(a)(2)(B). Plaintiff, on the other hand, argues that Rule 26(a)(2)(B)'s requirement applies only to retained experts and employees whose positions regularly involve giving expert testimony. Because none of its fact witnesses fall into this category, Plaintiff argues, Rule 26(a)(2)(B) does not apply.

Regardless of the breadth of Rule 26(a)(2)(B)'s reporting requirement, it is clear that Rule 26(a)(2)(A) required Plaintiff to identify any party that would be providing opinion testimony. It appears that Plaintiff failed to identify both Sheri

---

[2](. . .continued)
is in financial distress. We also may present one or more third party experts as rebuttal witnesses on this issue. We do not believe we are obliged to provide any Rule 26(a)(2) report with respect to the Bank's own personnel who may express opinions, but we will provide a report from any third party expert called as rebuttal witnesses to the extent their testimony is to rebut matters raised in your expert's report.

(Pl.'s Letter to Def. dated Feb. 5, 2002 at 1.)

3

Phillips and Michael Zarcone as expert witnesses in its February 5, 2002 letter to Plaintiff's counsel. Absent a showing of substantial justification, Rule 37(c)(1) applies. Accordingly, the court will preclude these witnesses from offering expert opinion testimony at trial.

The stickier issue is whether Plaintiff was required to provide a written expert report, pursuant to Rule 25(a)(2)(B), for the other non-retained fact/expert witnesses that it identified to Defendant in the letter of February 5, 2002. Although it this is a relatively novel issue, the court finds that Plaintiff was not required to provide written expert reports for Craig Schwartz, Gerard Elias, and Jamin Gibson.

The literal language of Rule 26(a)(2)(B) limits its application to witnesses who are "retained or specifically employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony." The Advisory Committee's Notes to the 1993 amendment of Rule 26(a) establishing the reporting requirement, relieves any doubts as to the scope of the rule. "The requirement of a written report in paragraph (2)(B) . . . applies *only* to those experts who are retained or specially employed to provide such testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony." Fed. R. Civ. Pro. 26(a) Advisory Committee's Notes, 1993 amendment (emphasis added). Given the repeated emphasis on this language, the court finds that the rule's drafters did not intend to extend its application to situations like the one at hand.

Neither Schwartz, Elias, nor Gibson were retained to provide expert testimony or have, as part of their employment duties, regularly provided expert testimony on Allfirst's behalf. At least, there is no allegation or evidence as such.

4

Therefore, Rule 26(a)(2)(B)'s reporting requirement is inapplicable to them. Although these witnesses will present opinions, those opinions are gleaned from their direct experiences with the subject matter of this litigation. In fact, both parties list all three Allfirst employees as fact witnesses. (*See* Def.'s Pretrial Memo. at 8; Pl.'s Pretrial Memo at 11.)

Courts that have addressed the "hybrid" fact/expert witness conundrum have generally held that Rule 26(a)(2)(B) does not apply to such witnesses so long as the witness bases his opinion on the facts that he observed. *See Lauria v. National R.R. Passenger Corp.*, 1997 U.S. Dist. LEXIS 3408, at *2 (E.D. Pa. Mar. 24, 1997) (holding that where a treating physician bases his expert opinion on facts gleaned during treatment of the plaintiff, the physician is not required to file a Rule 26(a)(2)(B) report in order to offer opinion testimony); *Salas v. United States*, 165 F.R.D. 31, 33 (W.D.N.Y. 1995) (same); *see also Sullivan v. Glock*, 175 F.R.D. 497, 500-01 (D. Md. 1997) (holding that the party wishing to offer a hybrid fact/expert witness need only provide the witness's identification to satisfy Rule 26(a)(2)); *Sprague v. Liberty Mutual Ins. Co.*, 177 F.R.D. 78, 81 (D.N.H. 1998) ("The structure of Rule 26(a)(2) provides a clear distinction between the 'retained' class of experts and the unretained class of experts. While all experts must be disclosed under Rule 26(a)(2)(A), only 'retained' experts must provide Rule 26(a)(2)(B) reports. The distinction is both fair and logical."). *But see Hall v. Sykes*, 164 F.R.D. 46, 48-49 (E.D. Va. 1995) (holding that where a physician is specially retained or bases his opinion on facts that were not learned during the course of treatment, he must provide a written expert report).

5

A principal purpose of Rule 26(a)(2) is to permit a "reasonable opportunity to prepare effective cross examination and . . . arrange for expert testimony from other witnesses." Fed. R. Civ. Pro. 26(a)(2), Advisory Committee's Notes, 1993 amendment. Here, Plaintiff notified Defendant on February 5, 2002, that it would be presenting several of its employees as experts at trial. This communication occurred prior to the witness' depositions. Therefore, Defendant was aware that the witnesses could testify as to expert opinions. The depositions, therefore, presented Defendant with a perfect opportunity to discover all of the information that would have been provided through a Rule 26(a)(2)(B) written expert report. Having been provided with notice that Plaintiff would be calling its employees to offer both fact and opinion testimony, Defendant cannot now argue that he lacked a reasonable opportunity to discover the witness' opinions, the basis for such opinions, and the methodology for arriving at such conclusions. Likewise, because of the advance notice, Defendant cannot legitimately argue that Plaintiff unduly surprised him.

Because Rule 37(c)(1) is a self-executing provision, the court has taken it upon itself to issue this order without a motion from either party. *See Sullivan v. Glock*, 175 F.R.D. at 501 (stating that exclusion under Rule 37 (c)(1) is automatic). However, because of this situation, and the fact that there are pending cross-motions for summary judgment, the court will set up an expedited briefing schedule should either party wish to file a motion for reconsideration.

In accordance with the preceding discussion, **IT IS HEREBY ORDERED THAT**:

6

(1) Plaintiff is **PRECLUDED** from eliciting opinion testimony from witnesses Sheri Phillips and Michael Zarcone; and

(2) Plaintiff is **ALLOWED** to elicit expert opinion testimony from witnesses Craig Schwartz, Gerard Elias, and Jamin Gibson; provided that such opinions are gleaned from each witness's personal involvement in this matter and complies with all other requirements for expert testimony found in Federal Rule of Evidence 703.

(3) If either party wishes to file a motion for reconsideration of this order, that motion shall be filed, accompanied by a legal brief no more than five (5) pages in length, no later than June 14, 2002. Any brief in response must be filed by June 21, 2002 and shall not exceed five (5) pages in length.

SYLVIA H. RAMBO
United States District Judge

Dated: June  6 , 2002.

7

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

*priv each H*

| | | |
|---|---|---|
| ALLFIRST BANK | * | |
| Plaintiff, | * | |
| v. | * | CASE NO.:   1:01-CV-786 |
| JOHN M. ORTENZIO | * | |
| Defendant. | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## PLAINTIFF, ALLFIRST BANK'S ANSWERS TO DEFENDANT, JOHN M. ORTENZIO'S INTERROGATORIES AND DOCUMENT REQUESTS

FROM:      ALLFIRST BANK

TO:          JOHN M. ORTENZIO

Plaintiff, Allfirst Bank, by its undersigned attorneys, respond to the Interrogatories (the "Interrogatories") served upon them by Defendant, John M. Ortenzio, as follows:

### PRELIMINARY STATEMENT

(1)     The information supplied in these Answers is provided in accordance with the provisions and intent of the *Federal Rules of Civil Procedure,* which require the disclosure of facts which may be relevant to the claim or defense of any party or which may lead to the discovery of admissible evidence.  Accordingly, by providing the requested information, the Plaintiffs do not waive any objections to the admission of the requested information into evidence on grounds of materiality, relevancy or other proper grounds for objection.

(2)     The information supplied in these Answers is not based solely on the knowledge of the Plaintiff, but includes knowledge of the Plaintiff's agents, representatives and attorneys.

(3)     The word usage and sentence structure of these Answers may be that of the attorney

Defendant to the records and documents previously produced by Plaintiff.

**INTERROGATORY NO. 18:**     Identify all documents that refer or in any way relate to Plaintiff's declarations of default (specifically, the defaults identified in paragraphs 20 - 21 of Plaintiff's Complaint), including, but not limited to, all communications, internal memoranda and analysis relating to same, as well as all witnesses with knowledge thereof.

**ANSWER:**     Plaintiff responds to this interrogatory pursuant to *Fed. R. Civ. P.* 33(d) by directing

Defendant to the records and documents previously produced by Plaintiff.

**INTERROGATORY NO. 19:**     Set forth all facts and identify all documents, which support and/or evidence, your contention that Defendant is liable for costs and fees incurred by Plaintiff in connection with the CCI Bankruptcy Case, as alleged in paragraphs 23 and 24 of Plaintiff's Complaint.

**ANSWER:**     See Answer to Interrogatory No. 6, 7, 11 and 12. Allfirst further responds to this

interrogatory pursuant to *Fed. R. Civ. P.* 33(d) by directing Defendant to the records and documents

previously produced by Plaintiff.

**INTERROGATORY NO. 20:**     State the name, home and business address, and telephone number of all persons you expect to call as expert witnesses either on liability or on damages at the trial of this case, and for each person set forth the following: (a) Subject matter to which the expert is expected to testify; (b) The facts to which the expert is expected to testify; and (c) The opinions to which the expert is expected to testify.

**ANSWER:**     Allfirst has not yet determined which experts it will call to testify at trial. Allfirst will

designate its expert witnesses in accordance with the deadlines established in the Scheduling Order

entered in this case and, upon such designation, will supplement its answer to this interrogatory, and

provide the information required by Rule 26(a)(2) of the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 21:**     Set forth the balance under revolving line of credit prior to Defendant drawing the check as alleged in paragraph 15 of the Complaint.

12

## OATH

I, Jamin M. Gibson, do solemnly declare and affirm under the penalties of perjury that the foregoing answers are true and correct to the best of my knowledge, information and belief.

Jamin M. Gibson
Vice President
ALLFIRST BANK

21

LAW OFFICES

# GEBHARDT & SMITH LLP

NINTH FLOOR

THE WORLD TRADE CENTER

BALTIMORE, MARYLAND 21202-3064

BALTIMORE:     (410) 752-5830
WASHINGTON:   (301) 470-7468

FACSIMILE
(410) 385-5119

WRITER'S DIRECT DIAL NUMBER:
(410) 385-5100
Writer's E-Mail Address:
lgebh@gebsmith.com

February 5, 2002

Refer to File No. 19527

**VIA FACSIMILE**

Edward I. Swichar, Esquire
BLANK ROME COMISKY & MCCAULEY LLP
One Logan Square
Philadelphia, PA 19103

> Re:     *Allfirst Bank v. Ortenzio*
> *Case No.: 1:01 -CV - 0786 (Judge Rambo)*

Dear Ed:

Having received the report of your expert witness, Donald C. Fruch, I am writing to request dates from you for his deposition.

Regarding the subject of expert witnesses, please be advised that the Bank may provide rebuttal testimony from any of the Bank officers involved in this transaction, including Gerard Elias, Jamin Gibson, Craig Swartz, and Daryl Myers. The rebuttal testimony would be directed to the issue of whether it is consistent with custom and practice in the banking industry to permit a borrower to repay a guaranteed credit facility with a draw upon an unguaranteed revolving line of credit shortly before the company announces that it is in financial distress. We also may present one or more third party experts as rebuttal witnesses on this issue. We do not believe we are obligated to provide any Rule 26(a)(2) report with respect to the Bank's own personnel who may express opinions, but we will provide a report from any third party expert called as rebuttal witnesses to the extent their testimony is to rebut matters raised in your expert's report. Obviously, we are entitled to present a rebuttal expert based upon the live testimony provided by your expert witness and we will not know what this live testimony is until it is given and cannot provide a report aimed at something not reflected in your expert's report.

I should also advise you that we intend to file a motion in limine objecting to Mr. Fruch's testimony as an expert to the extent he wishes to opine as to the meaning or interpretation of the loan documents. This is not a proper subject for experts testimony, and we will file a motion at the appropriate time.

## Craig J. Schwartz

1          IN THE UNITED STATES DISTRICT COURT

2        FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

3    ALLFIRST BANK                :

4          Plaintiff      :

5        v.                  :   CA NO. 1:CV-01-0786

6    JOHN M. ORTENZIO              :

7          Defendant      :   Pages 1 - 216

8                  -----------

9

10

11

12        Deposition of Craig J. Schwartz

13            Baltimore, Maryland

14          Friday, February 15, 2002

15

16

17

18

19

20

21    Reported by:  Kathleen R. Turk, RPR-RMR

## Craig J. Schwartz

Page 172

1    Q   In your view, a permissible act.

2          MR. GEBHARDT: Objection.

3          MR. SWICHAR: I'll withdraw the

4   question. It's a fair objection.

5          Larry, are you -- I'm asking you

6   outright, and I almost hope the answer is yes -- are

7   you planning to use Mr. Schwartz as an expert at the

8   trial?

9          I think I'm entitled to know that.

10         MR. GEBHARDT: Well, as I mentioned,

11  depending on -- if you plan to have someone take the

12  stand that says, and testify as an expert, that it is

13  ordinary banking custom and practice to repay a

14  guaranteed loan facility with the proceeds of an

15  unsecured, unguaranteed line of credit in a situation

16  where the borrower is in default, I may ask

17  Mr. Schwartz if that's his understanding of banking

18  custom and practice, but I have no intention of

19  necessarily calling him in my case in chief as an

20  expert.

21    Q  (By Mr. Swichar) Mr. Schwartz, are you aware

# Craig J. Schwartz

1   of any custom or practice in the banking industry that

2   requires a borrower to repay a guaranteed loan with

3   funds other than -- which prohibits a borrower from

4   repaying a guaranteed loan from a draw on a

5   nonguaranteed loan?

6          MR. GEBHARDT:  Objection.

7          Custom and practice is not a law.

8          MR. SWICHAR:  Well, I'm using your

9   quote.  I wrote it down when you said ordinary banking

10   custom and practice.

11          MR. GEBHARDT:  Right, but you're saying

12   is there a custom and practice that prohibits.

13          MR. SWICHAR:  Yes.

14          MR. GEBHARDT:  Well, banking customs

15   and practices don't prohibit anything.  They're not

16   law.  They're how --

17          MR. SWICHAR:  I'm asking -- I think the

18   whole banking custom or practice would be irrelevant

19   in this case, but you brought it up.

20          MR. GEBHARDT:  It's your expert --

21          MR. SWICHAR:  You said you may use him

## Craig J. Schwartz

Page 174

1    for that purpose if I use him, so I'm --

2          MR. GEBHARDT:  Your expert --

3          MR. SWICHAR:  -- hypothetically asking

4    him the question.

5      Q    (By Mr. Swichar) Are you aware of any

6    banking custom or practice which prohibits a borrower

7    from paying off a guaranteed loan from a loan that is

8    not guaranteed?

9      A    Not to my recollection.

10     Q    Okay.  Would your answer change if I said to

11   you are you aware of any banking practice or custom

12   that prohibits a borrower from paying off a guaranteed

13   loan with -- from a nonguaranteed line of credit if it

14   is in financial distress?

15         MR. GEBHARDT:  Objection.

16     A    Not to my recollection.

17     Q    All right.

18         MR. SWICHAR:  Well, I'm done.

19         MR. GEBHARDT:  I have some questions.

20         MR. SWICHAR:  Sure.

21                ----

1

1           IN THE UNITED STATES DISTRICT COURT

2        FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

                       - - -

3

4    ALLFIRST BANK,

                       Plaintiff,      :

5                                      :

                vs.                    :

6                                      :

     JOHN M. ORTENZIO,                 :

7                       Defendant      :   NO. 1:01-CV-786

8

                       - - -

9               January 17, 2002

                       - - -

10

11              Oral Deposition of JAMIN M. GIBSON,

12   taken pursuant to notice, was held at AllFirst

13   Bank, 213 Market Street, Harrisburg, Pennsylvania

14   17110, beginning at 1:00 p.m., on the above date,

15   before Donna L. Crossan, an Approved Registered

16   Professional Reporter and Notary Public in and for

17   the Commonwealth of Pennsylvania.

18

19                       - - -

20            ESQUIRE DEPOSITION SERVICES

                      15th Floor

21         1880 John F. Kennedy Boulevard

            Philadelphia, Pennsylvania 19103

22               (215) 988-9191

23

24

9

1 terms?
2     A     Special credits would be --
3 another term for that would be the loan workouts
4 function, commercial loan workouts.
5     Q     If you could break that down a
6 little further. I don't want to paraphrase. Does
7 that mean when a loan is in trouble you come in
8 and look at it. Where do you come in in terms of
9 working out a loan?
10     A     Generally, when we are brought in
11 at the request of the originating account officer,
12 we can provide either consultancy or overall
13 management of the credit relationship.
14     Q     How long have you been manager of
15 Special Credits Department for Pennsylvania?
16     A     Two years.
17     Q     What was your job before that?
18     A     I was manager of the Credit
19 Review Department for Pennsylvania.
20     Q     What were your duties then?
21     A     I would characterize my duties as
22 on the credit side risk management of the
23 commercial loan portfolio.
24     Q     How, if at all, did your duties

10

1 differ from your current duties?
2     A     My former duties did not involve
3 managing loan relationships. I would have been
4 responsible along with subordinates for an ongoing
5 basis managing the risk associated with all
6 commercial exposure that we would see in
7 Pennsylvania.
8     Q     When did you start your current
9 job as manager of Special Credits Department? You
10 said two years ago. Do you remember a date?
11     A     February 14th, 2000.
12     Q     And in terms of the manager of
13 the Credit Review Department, how long did you
14 hold that position?
15     A     I was employed June of '92. I
16 would have been a manager within a year after
17 that.
18     Q     So from about 1993 until February
19 14th, 2000, that's the time you held that job of
20 manager of Credit Review?
21     A     That is correct.
22     Q     I guess just another instruction,
23 and I should have given you this before. You have
24 to wait for me to finish my question. That's just

11

1 more of a courtesy to the court reporter. She's
2 not able to take down two people speaking at once.
3 They always tell me that. I've had trouble doing
4 that. I'll try to let you finish your answer if
5 you can just let me finish my question, even
6 though you can assume on many occasions what my
7 question is going to be. You need to let me
8 finish so we can help out the court reporter. Do
9 you understand that?
10     A     I do.
11     Q     What were you doing before June
12 of 1992?
13     A     I was manager of the credit
14 review function at Lebanon Valley National Bank.
15     Q     How long were you at that post?
16     A     Three years.
17     Q     Why did you leave Lebanon Valley
18 National Bank?
19     A     Career opportunity.
20     Q     What were you doing before
21 Lebanon Valley National Bank?
22     A     I was in a formal credit training
23 program, employee of Chase Manhattan Bank in New
24 York.

12

1     Q     How long were you there?
2     A     Approximately two years.
3     Q     Before that?
4     A     I was in graduate school in
5 Winter Park, Florida.
6     Q     What school was that?
7     A     Rollins College.
8     Q     Did you get a graduate degree?
9     A     Yes, I did.
10     Q     What was that in?
11     A     Master of business administration
12 in finance.
13     Q     What date did you get that?
14     A     May of 1987.
15     Q     And before Rollins College?
16     A     Working for a family-owned
17 business and pursuing an undergraduate degree in
18 business.
19     Q     Where did you get your
20 undergraduate degree?
21     A     St. Francis College.
22     Q     Where is that?
23     A     Loretto, Pennsylvania.
24     Q     Right now who is your immediate

4 (Pages 9 to 12)

13

1 superior?
2    A    Gerard Elias.
3    Q    E-L-I-A-S, correct?
4    A    That is correct.
5    Q    When did you first become
6 involved with CCI or my client, Mr. Ortenzio?
7    A    I would have been part of a
8 conversation that took place. For me it was over
9 the telephone on February 18th, 2000.
10    Q    And at that time you just started
11 your position as the manager of the Credit
12 Department for Pennsylvania. Is that correct?
13    A    Of the Special Credits
14 Department, yes.
15    Q    Was your office in Harrisburg at
16 that time?
17    A    It was, yes.
18    Q    It's in Harrisburg now?
19    A    Yes.
20    Q    Was that the first time, February
21 18, 2000, was that the first time you heard of CCI
22 or Mr. Ortenzio?
23    A    It is, yes.
24    Q    So prior to February 18, 2000,

14

1 you had no knowledge of any loan relationships CCI
2 had with AllFirst Bank. Is that correct?
3    A    That is correct.
4    Q    I'll show you what has been
5 marked as Gibson Exhibit 1 and ask you to take a
6 look at that. (Handing.)
7        Have you seen this document
8 before?
9    A    Yes, I have.
10    Q    This is the Notice of Deposition
11 of AllFirst Bank pursuant to Federal Rule
12 30(b)(6). I ask you to go to Page 2 of that
13 document, if you would please, and looking at Page
14 2 of Gibson 1, you've been designated by the
15 plaintiff in this case to testify regarding the
16 items that are on Page 2, those five items. I
17 would ask if you could just review each of those
18 items. Could you read 1 through 5?
19    A    Out loud?
20    Q    No.
21        Are you an individual who has
22 knowledge of all those items?
23    A    Yes.
24    Q    Were you involved in collecting

15

1 documents in response to Defendant's Request for
2 Production of Documents?
3    A    Yes, I was.
4    Q    Were you the individual at the
5 bank who was given the -- I'll ask you this way --
6 the sole responsibility of gathering those
7 documents?
8    A    I was once I became the
9 relationship manager for CCI Construction.
10    Q    When did you become the
11 relationship manager for CCI Construction?
12    A    I would have -- I can't remember
13 the exact date, but it would have been within
14 probably a two-week period of the February 18th,
15 2000 meeting.
16    Q    Let me go back and ask the
17 question again. There might have been some
18 confusion with it and let me try it again.
19        At some point in time after the
20 lawsuit was filed, myself on behalf of Mr.
21 Ortenzio, served upon the bank a Request for
22 Production of Documents. Do you understand that?
23    A    I do.
24    Q    Were you the individual who was

16

1 given the primary responsibility for collecting
2 those documents?
3    A    Yes.
4    Q    What did you do in order to
5 collect the documents that would be responsive to
6 the document request?
7    A    I would have, upon request, sent
8 them to bank counsel.
9    Q    In terms of -- let's go back even
10 before you sent them to bank's counsel. What did
11 you do in order to gather the documents? Strike
12 that. Let's make it even more basic.
13        Did you read a copy of the
14 document request?
15    A    Yes.
16    Q    And then what did you do?
17    A    The document files are kept with
18 me as the relationship manager in my offices or
19 ancillary offices here on the 14th floor. I would
20 have read over the request for the information and
21 bundled it up and sent it to bank counsel.
22    Q    You said you're the relationship
23 manager for CCI. Is that what you call it?
24    A    Yes.

5 (Pages 13 to 16)