ORIGINAL

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

ALLFIRST BANK,               :
                             :
        Plaintiff,           :
                             :
    v.                       :   CASE NO. 1:01-CV-786
                             :
JOHN M. ORTENZIO,            :
                             :
        Defendant.           :

FILED
HARRISBURG
JUN 21 2002
MARY E. D'ANDREA
Per _____ Deputy Clerk

### DEFENDANT'S MOTION TO FILE SUPPLEMENTAL BRIEF

Defendant, John M. Ortenzio ("Mr. Ortenzio"), by and through his undersigned counsel, hereby moves this Court for leave to file the three-page Supplemental Brief, attached hereto as Exhibit "A", in further Support of Mr. Ortenzio's Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment.

Mr. Ortenzio's counsel sought, and was unable to obtain, Allfirst's counsel's consent to file this Supplemental Brief. Accordingly, Mr. Ortenzio respectfully requests leave of this Court to do so.

Respectfully submitted,

BLANK ROME COMISKY & McCAULEY LLP

Dated: June 20, 2002          BY: _____
                              EDWARD I. SWICHAR, ESQUIRE
                              ROBERT A. BURKE, ESQUIRE
                              *Attorneys for Defendant, John M. Ortenzio*

900200.00001/21037216v1

A

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

ALLFIRST BANK, :
  :
       Plaintiff, :
  :
v. : CASE NO. 1:01-CV-786
  :
JOHN M. ORTENZIO, :
  :
       Defendant. :

**DEFENDANT'S SUPPLEMENTAL BRIEF IN FURTHER
SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

      Defendant, John M. Ortenzio ("Mr. Ortenzio"), by and through his undersigned counsel, hereby submits this Supplemental Brief in Further Support of his Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment. Mr. Ortenzio respectfully submits that this Supplemental Memorandum will correct an issue incorrectly raised by Plaintiff, Allfirst Bank ("Allfirst") in Allfirst's Summary Judgment Briefs, wherein Allfirst claims that Allfirst is entitled to the relief it seeks against Mr. Ortenzio because CCI breached the terms and conditions of the $4 million line of credit when CCI repaid the $1.2 million Short-Term Loan, in part, from a borrowing under the $4 million line of credit.

      In support of its argument, Allfirst incorrectly cites to a March 23, 1999 commitment letter between Allfirst and CCI. (Attached hereto as Exhibit "A") The first page of the March 23, 1999 commitment letter relating to the $4 million line of credit, states that Allfirst increased and reaffirmed the unsecured line of credit to CCI as follows:

          "Use of Proceeds:    Finance work in process and accounts receivable".

Id. The term "work in process" is not defined. This statement in the commitment letter does not support Allfirst's position that CCI breached the terms and conditions of the $4 million line of credit. Contrary to Allfirst's representations to the Court, the statement "Use of Proceeds: Finance work in process and accounts receivable" was not a term or condition of the $4 million line of credit between Allfirst and CCI. The commitment letter, drafted by Allfirst and executed by Sherri Phillips (CCI's CFO) specifically provides for this where it states:

> Availability of the Loan is contingent upon [CCI] and [Allfirst] entering into mutually acceptable loan documentation setting forth terms and conditions stated herein and such other terms and conditions, covenants, warranties and representations as may be required by [Allfirst] and be mutually acceptable to [CCI] and [Allfirst]. All terms and conditions contained herein shall survive the execution of such loan documentation.

Exhibit A, at page 2.

CCI and Allfirst did subsequently execute loan documentation for the $4 million line of credit, attached hereto as Exhibit "B". Nowhere in that loan documentation does it contain any restriction on CCI's use of proceeds. Furthermore, while the commitment letter does state that all "terms and conditions" contained in the commitment letter shall survive the execution of the loan documentation, the statement "Use of Proceeds: Finance work in process and accounts receivable" is not part of the terms and conditions expressly stated in the commitment letter. The "terms and conditions" of the commitment letter are expressly set forth on page two of the commitment letter directly under the heading "Terms and Conditions". There are eight terms and conditions of the commitment letter. The statement "Use of Proceeds: Finance work in process and accounts receivable" is not one of the terms and conditions that are listed on page two, but rather is set forth on the first page of the commitment letter before the terms and conditions are listed.

The commitment letter is a document drafted by Allfirst. If Allfirst intended the "Use of Proceeds" to be a term and condition of the $4 million line of credit between CCI and Allfirst, Allfirst certainly would have listed it as one of the terms and conditions. Accordingly, Allfirst cannot now say that the use of proceeds was a term or condition of the $4 million loan between CCI and Plaintiff.

## CONCLUSION

In light of the foregoing, and for the reasons set forth in Mr. Ortenzio's prior filings, Mr. Ortenzio respectfully requests that this Honorable Court grant his Motion for Summary Judgment and deny Allfirst's Motion for Summary Judgment.

                                          BLANK ROME COMISKY & McCAULEY LLP

Dated: June 20, 2002                BY: _____
                                                  EDWARD I. SWICHAR, ESQUIRE
                                                    ROBERT A. BURKE, ESQUIRE
                                                    *Attorneys for Defendant, John M. Ortenzio*



# FIRST NATIONAL BANK OF MARYLAND
## A Division of FMB Bank
Regional Corporate Group, Mail Code 133-02-01
3045 Market Street, Camp Hill, PA 17011-4530
Telephone: 717 612-5026 Facsimile: 717 612-5027

March 23, 1999


Ms. Sheri Phillips
Chief Financial Officer
CCI Construction Co., Inc.
P.O. Box 1129
Mechanicsburg, PA  17055

Dear Ms. Phillips:

I am pleased to advise you that The First National Bank of Maryland, a Division of FMB Bank (hereafter "Bank") has increased and reaffirmed an unsecured line of credit (hereafter "Loan") to CCI Construction Co., Inc. (hereafter "Borrower") as follows:

| | |
|---|---|
| Principal Amount of Loan: | $4,000,000.00 |
| Interest Rate: | Bank's Base Rate as in effect from time to time, minus ½% |
| Repayment Schedule: | Interest monthly, principal on demand |
| Use of Proceeds: | Finance work in process and accounts receivable |
| Collateral: | Unsecured |

Borrowings under the Loan will bear interest at an annual rate equal to the Bank's Base Rate as in effect from time to time, minus one-half percent (-1/2%). This interest rate will change when and as the Bank's Base Rate changes. Interest shall be calculated on the basis of the actual number of days in the current calendar year divided by 360. Interest will be payable monthly upon submission of the Bank's statement therefor.

Borrowings under the Loan will be payable on demand. If no demand is made, the Loan will expire and all borrowings will be due and payable, together with interest thereon, on April 30, 2000.

Δ π EXHIBIT 11
Deponent Ortenzio

C 1480

Ms. Sheri Phillips
CCI Construction Co., Inc.
March 23, 1999
Page Two

Terms and Conditions:

1. Annual CPA – audited financial statements of CCI Construction Co., Inc.

2. Quarterly work in process reports for CCI Construction Co., Inc.

3. Quarterly Company prepared financial statements of CCI Construction Co., Inc.

4. Monthly borrowers certification with monthly accounts receivable aging and listing.

5. Primary business deposits of CCI Construction Co., Inc. to be maintained at The First National Bank of Maryland, a Division of FMB Bank.

6. Negative pledge of assets other than purchase money.

7. The Company shall maintain a minimum tangible net worth of $4,500,000.00 measured at year end.

8. Advances not to exceed 80% of qualified accounts receivable less than 90 days past dues, excluding retainages.

Availability of the Loan is contingent upon the Borrower and the Bank entering into mutually acceptable loan documentation setting forth terms and conditions stated herein and such other terms and conditions, covenants, warranties and representations as may be required by the Bank and be mutually acceptable to the Borrower and the Bank. All terms and conditions contained herein shall survive the execution of such loan documentation.

This commitment is contingent upon the right of the Bank at any time hereafter and from time to time to review the commitment, to adjust terms and conditions, or to discontinue the commitment should the Bank in a reasonable exercise of its sole business discretion deem it necessary to do so.

C 1481

Ms. Sheri Phillips
CCI Construction Co., Inc.
March 23, 1999
Page Three

Please acknowledge your concurrence with these terms and conditions by signing, dating and returning the enclosed copy of this letter to the Bank on or before March 31, 1999.

Very truly yours,

Craig J. Schwartz
Vice President

CJS/jkp

Enclosure

ACKNOWLEDGED AND ACCEPTED THIS 24th DAY OF March, 1999.

ATTEST:                                            CCI CONSTRUCTION CO., INC.

BY: _____              BY: _____
Title: Assistant Secretary                       Title: CFO

\* a division of
FMB Bank

FILM/CASH SOLUTIONS PROMISSORY NOTE
(PENNSYLVANIA)

Instructions to Loan Officer: Use for (a) loans to corporations, regardless of amount, and (b) loans to non-corporate borrowers when the only purpose of any such loan is business and the principal amount of such loan exceeds $50,000.

$ 4,000,000.00           Mechanicsburg,    PA
                           (City)         (State)

FOR VALUE RECEIVED, the undersigned ("Borrower") promises to pay on demand to the order of THE FIRST NATIONAL BANK OF MARYLAND, ~~~~~~~~~~~~~~~~~~ ("Bank"), at any of Bank's offices, or at such other place as the holder of this Promissory Note may from time to time designate, the principal sum of FOUR MILLION and 00/100 Dollars ($ 4,000,000.00 ), or such other amount as may be advanced from time to time to Borrower, together with interest thereon at the rate or rates hereafter specified and any and all other sums which may be owing to Bank by Borrower pursuant to this Promissory Note. The following terms, as well as the applicable terms on Exhibit A, attached hereto and incorporated herein by reference, shall apply to this Promissory Note.

1. DEFINITIONS. The following terms have the following definitions:
   A. "Account" means the commercial checking account maintained by Borrower with Bank and designated as Account No. 28864514, together with any replacement account therefor.
   B. "Business Day" means any day other than Saturday, Sunday or other day on which commercial banks in the Commonwealth of Pennsylvania are authorized to close.
   C. "Incremental Advance Amount" means the amount indicated on Exhibit A as the Incremental Advance Amount. Each Loan must be an integral multiple of such amount.
   D. "Initial Excess Balance" means, for any Business Day, the amount by which the collected balance in the Account at the end of such Business Day after posting all credits to the Account (subject to funds availability), but prior to posting any debits to the Account, exceeds the Target Balance.
   E. "Line Availability" means, for any Business Day, an amount equal to the difference obtained by subtracting the aggregate principal balance outstanding under all Loans from the Maximum Line Amount.
   F. "Loan" means an advance of monies from Bank to Borrower pursuant to the terms of this Promissory Note; and the term "Loans" means more than one Loan.
   G. "Maximum Advance Amount" means an amount equal to the highest integral multiple of the Incremental Advance Amount which does not exceed the Line Availability.
   H. "Maximum Line Amount" means the amount indicated on Exhibit A as the Maximum Line Amount, which amount is the maximum aggregate principal balance of the Loans which may be outstanding at any one time.
   I. "Minimum Loan Advance" means the amount indicated on Exhibit A as the Minimum Loan Advance, which amount is the minimum principal amount of each Loan.
   J. "Presented Items" means, for any Business Day, the aggregate amount of debits which have been presented for payment against the Account.
   K. "Prime Rate" means a fluctuating annual rate of interest equal to the greater of: (i) that rate announced from time to time by Bank as its "prime rate;" or (ii) the rate obtained by adding one percent (1%) to the average rate, rounded to the nearest one-tenth of one percent, for three month maturity dealer placed commercial paper for the week most recently reported in the Federal Reserve Statistical Release No. H.15(519) entitled "Selected Interest Rates" or any succeeding publication.
   L. "Target Balance" means the amount indicated on Exhibit A as the Target Balance, which amount is the minimum collected balance that must be maintained in the Account.

2. PROCEDURES FOR LOANS. All Loans shall be made in the form of a transfer of funds into the Account in accordance with the procedures set forth in this paragraph. Borrower hereby irrevocably authorizes Bank to make Loans in accordance with the procedures set forth herein. At the end of each Business Day, Bank shall calculate the Initial Excess Balance and the aggregate amount of the Presented Items. In the event the Initial Excess Balance is less than the aggregate amount of the Presented Items, Bank shall make a Loan by transferring funds into the Account in an amount equal to the amount, which when added to the Initial Excess Balance, would be equal to the aggregate amount of the Presented Items; provided, however, that: (a) the principal amount of the Loan shall not be less than the Minimum Loan Advance; (b) the principal amount of the Loan must be an integral multiple of the Incremental Advance Amount, and therefore, if it would not otherwise be an integral multiple of the Incremental Advance Amount, the amount of the Loan will be rounded up to the next higher integral multiple of the Incremental Advance Amount unless there is insufficient Line Availability in which case the Loan amount will be the Maximum Advance Amount; and (c) the principal amount of the Loan shall not exceed the Maximum Advance Amount. If at any time the amount of the Initial Excess Balance is less than the amount of the Presented Items by an amount greater than the Maximum Advance Amount, Bank shall: (i) make a Loan by transferring funds into the Account in an amount equal to the Maximum Advance Amount; and (ii) determine, in its sole discretion, which Presented Items will be paid, and which Presented Items will not be paid. In the event the Initial Excess Balance is greater than the amount of the Presented Items, Bank shall post and pay all of the Presented Items. If, following Bank's posting and paying of all of the Presented Items, there remains a balance in the Account in excess of the Target Balance, Bank is hereby irrevocably authorized to debit the Account in an amount up to the portion of the balance in the Account which exceeds the Target Balance, and apply such sums to the outstanding balance of the Loans. Bank agrees to make such debit of the Account to repay sums outstanding under the Loans as of the end of each Business Day; provided, however, that in the event the option labeled "Cash Solutions Protection" is marked on Exhibit A attached hereto, Bank shall not automatically debit the Account to make payments on the Loans, but may do so, in its sole and absolute discretion.

3. TERMINATION. The procedure for making Loans, and the obligation of Bank to provide Loans, as set forth in this Promissory Note, may be terminated by Borrower upon ten (10) days prior written notice to Bank and may be terminated by Bank upon thirty (30) days prior written notice to Borrower. Upon termination, no further Loans shall be made under this Promissory Note, but all other terms of this Promissory Note (including, but not limited to, the holder's right to demand payment at any time and for any reason) shall remain in full force and effect.

BS-3108A-9811 PAGE 1                    Page -1-                                    PK 10

Δ π EXHIBIT 12
Deponent Ortenzio
Date 2-11-02

4. **INTEREST.** From the date hereof until all sums due hereunder, including principal, interest, charges, fees and expenses are paid in full, the principal amount outstanding from time to time pursuant to this Promissory Note shall bear interest as follows (Check One):

[ ] **Fluctuating Rate.** At a fluctuating rate equal to _____ % per annum above the Prime Rate in effect from time to time. Bank at its discretion may charge a lesser rate from time to time. Interest on the principal amount outstanding shall be adjusted daily, with the rate for each day being adjusted to reflect the Prime Rate in effect at the close of business on that day. Bank makes loans at interest rates at, above and below the Prime Rate.

[X] **Other. (describe):** Interest shall accrue at a rate per annum equal to the Bank's Base Rate minus 1/2% as in effect from time to time.

5. **CALCULATION OF INTEREST.** Interest shall be calculated on the basis of a three hundred sixty (360) days per year factor applied to the actual days on which there exists an unpaid balance hereunder.

6. **REPAYMENT.** Borrower shall make payments of principal and interest in accordance with the following terms:
   (a) **Principal:** ALL SUMS OUTSTANDING UNDER THIS PROMISSORY NOTE, INCLUDING THE PRINCIPAL AMOUNT OF ALL OF THE LOANS, ARE IMMEDIATELY DUE IN FULL UPON THE FIRST TO OCCUR OF: (I) THE DEMAND OF THE HOLDER OF THIS PROMISSORY NOTE, WHICH DEMAND MAY BE MADE AT ANY TIME AND FOR ANY REASON, IN THE SOLE AND ABSOLUTE DISCRETION OF THE HOLDER OF THIS PROMISSORY NOTE; OR (II) THE OCCURRENCE OF ANY DEFAULT UNDER THE TERMS OF THIS PROMISSORY NOTE.
   (b) **Interest:** Borrower shall make payments of all accrued and unpaid interest on the ___31st___ day of each successive month, beginning on __March 31, 1999__ and continuing until all sums outstanding hereunder are paid in full. _with 30 days_ ___

   Borrower may prepay this Promissory Note in whole or in part at any time or from time to time without premium or additional interest.

7. **LATE PAYMENT CHARGE.** If any payment due hereunder (including any payment in whole or in part of principal) is not received by the holder within fifteen (15) calendar days after its due date, Borrower shall pay a late payment charge equal to five percent (5%) of the amount then due.

8. **APPLICATION OF PAYMENTS.** All payments made pursuant to this Promissory Note shall be applied first to accrued and unpaid interest, then to unpaid expenses and charges payable hereunder, and then to principal, or in such other order or proportion as the holder, in the holder's sole discretion, may elect from time to time.

    _See below → unsecured_

9. **SECURITY.** Sums due under this Promissory Note are secured by, and Borrower grants to Bank a security interest in, all deposits and property of Borrower now or at any time hereafter in the possession of or on deposit with Bank whether as custodian or depository or in any other capacity. Bank shall have the right to set-off and apply against the obligations of Borrower to Bank evidenced by this Promissory Note any sums of Borrower at any time on deposit with Bank whether such deposits are special, time or demand, provisional or final. In addition, this Promissory Note is secured by any property described as collateral in any security agreement, pledge agreement or other document previously, simultaneously, or hereafter entered into by Borrower in connection with any obligation or liability of Borrower to Bank or any corporate affiliate of Bank, such other security document(s) include but are not limited to the following:

[ ] Security Agreement(s)

[ ] Real estate mortgage or deed of trust on property known as _____ located in _____ County/City, State of _____.

[X] Other (describe): __Unsecured__

This Promissory Note specifically incorporates by reference, as if fully set forth herein, all of the language and provisions of the security documents described generally or specifically above.

10. **REPRESENTATIONS AND WARRANTIES.** Borrower (and if more than one Borrower, each Borrower) represents and warrants to Bank that the following statements are true, correct and complete as of the date hereof, and as of the date each Loan is made hereunder: (a) it is duly organized and in good standing under the laws of the state in which it is organized; (b) it has the full power and authority to execute, deliver and perform this Promissory Note; (c) neither such execution, delivery and performance, nor compliance by it with the provisions of this Promissory Note will conflict with or result in a breach or violation of its organizational documents, or any judgment, order, regulation, ruling or law to which it is subject or any contract or agreement to which it is a party or to which any of its assets and properties are subject; (d) this Promissory Note constitutes its legal, valid and binding obligation enforceable in accordance with its terms; (e) there is no litigation or proceeding pending or, to the knowledge of its representative signing this Promissory Note on its behalf, threatened against or affecting it which might materially adversely affect its business, financial condition or operations or its ability to perform and comply with this Promissory Note; (f) all financial statements and information furnished or to be furnished to Bank hereunder have been and will be prepared in accordance with generally accepted accounting principles and fairly present its financial condition as of the dates thereof and the results of its operations for the period covered thereby; (g) it is not in violation of any applicable federal, state or local law, statute, rule, regulation or ordinance and has not received any notice nor is the subject of any investigation to the effect that its operations are not in material compliance with any such law, statute, rule, regulation or ordinance, including, without limitation, applicable environmental, health and safety laws and regulations; (h) since September 2, 1974, no pension, employee benefit, multi-employer, profit sharing, savings, stock bonus or other deferred compensation plan ("Plan") maintained by it or any trade or business group with which it is affiliated subject to the requirements of the Employee Retirement Income Security Act of 1974 ("ERISA") has been terminated, no lien exists against Borrower in favor of the Pension Benefit Guaranty Corporation ("PBGC"), and no "reportable event" (as such term is defined in ERISA) has occurred with respect to any such Plan, and Borrower has not incurred any "accumulated funding deficiency" within the meaning of ERISA or any liability to the PBGC in connection with any Plan; and (i) no information, exhibit, report, statement, certificate or document furnished by Borrower or any other person to Bank in connection with the Loans, this Promissory Note or the negotiation thereof contains any material

Page -2-

misstatement of fact or omitted to state a material fact or any fact necessary to make the statements contained herein or therein not misleading.

11. DEFAULT. Any of the following will be a default under this Promissory Note: (a) failure to pay any principal, expense, fee, charge or interest when due, or failure to perform any other obligations hereunder; (b) a default by any Borrower upon any of the existing or future obligations of any Borrower to Bank; (c) a default by any guarantor or other person other than Borrower that is now or hereafter liable upon or in connection with any of the obligations of any Borrower to Bank or that has granted any lien or security interest to or for the benefit of Bank to secure any of the obligations of any Borrower to Bank ("Other Obligor"), upon any of the existing or future obligations of any Other Obligor to Bank; (d) a default in any other agreement, instrument or document between any Borrower or Other Obligor and Bank, or any corporate affiliate of Bank, including, without limitation, any security document referred to above, whether previously, simultaneously, or hereafter entered into; (e) ~~a material adverse change in the financial condition of any Borrower or Other Obligor from that expressed in the financial statement most recently submitted to Bank prior to the date of this Promissory Note, as determined in good faith by Bank in its sole discretion~~; (f) institution of bankruptcy, insolvency, reorganization or receivership proceedings by or against any Borrower or Other Obligor in any state or federal court; (g) the appointment of a receiver, assignee, custodian, trustee or similar official under any federal or state insolvency or creditors' rights law for any property of any Borrower or Other Obligor; (h) ~~failure of any Borrower or Other Obligor to furnish to Bank such collateral or additional collateral as Bank may in good faith request~~; (i) any warranty, representation, or statement to Bank by or on behalf of any Borrower or Other Obligor proving to have been incorrect in any material respect when made or furnished; (j) the occurrence of any event which is, or would be with the passage of time or the giving of notice or both, a default under any indebtedness of any Borrower or Other Obligor to any person other than Bank; (k) any material loss, theft or substantial damage, which is not fully insured, to any of the assets of any Borrower or Other Obligor, or the sale, transfer, lease, encumbrance or other disposition of all or any material part of the assets of any Borrower or Other Obligor other than in the ordinary course of business of Borrower or Other Obligor; (l) the entry of any final judgment against any Borrower or Other Obligor for the payment of money in excess of $5,000.00; (m) the levy upon or attachment of any assets of any Borrower or Other Obligor; (n) ~~the recordation of any federal, state or local tax lien against any Borrower or Other Obligor~~; (o) a change of ownership or dissolution, merger, consolidation, liquidation or reorganization of any Borrower or Other Obligor which is a corporation, partnership or other legal entity; (p) ~~the death of any Borrower or Other Obligor who is a natural person~~; (q) failure of any Borrower or Other Obligor to furnish to Bank such financial information as Bank may require from time to time, including, but not limited to, such financial statements as Bank may require; (r) failure of any Borrower or Other Obligor to comply with all laws, rules, regulations and decrees to which such Borrower or Other Obligor may be subject, the violation of which may have a material adverse effect on the business operation or financial condition of such Borrower or Other Obligor; (s) ~~the acquisition by a Borrower of all or substantially all of the assets, properties or equity interest of any other person or entity without Bank's prior written consent~~; (t) failure of any Borrower to maintain its existence in good standing in the jurisdiction of its organization; (u) any of the licenses or permits which are necessary to the conduct of any Borrower's business as now conducted is not maintained in full force and effect; or (v) ~~the determination in good faith by Bank, in its sole discretion, that the ability of any Borrower or Other Obligor to pay or perform any of their respective obligations to Bank is impaired for any reason~~.

12. REMEDIES. Upon a default, in addition to all other rights and remedies available to the holder of this Promissory Note under any document or agreement between Borrower and Bank or under applicable law, the holder of this Promissory Note, in the holder's sole discretion and without notice or demand, may raise the rate of interest accruing on the unpaid principal balance outstanding under this Promissory Note by two (2) percentage points above the rate of interest otherwise applicable. The Bank shall have no further obligation to provide any Loans to Borrower following: (a) a demand by Bank for payment hereunder; or (b) a default under this Promissory Note. Borrower agrees that a default under this Promissory Note is a default by Borrower under all other liabilities and obligations of Borrower to the holder, and that the holder shall have the right to declare immediately due and payable all liabilities and obligations owed by Borrower to the holder of this Promissory Note.

13. CONFESSION OF JUDGMENT. Borrower irrevocably and unconditionally authorizes any attorney admitted to practice before any court of record in the United States to appear on behalf of Borrower in any court in one or more proceedings, or before any clerk thereof or prothonotary or other court official, and appear for, to confess and enter judgment against Borrower, at any time, whether before or after the occurrence of any default hereunder, with or without averment of default, with or without complaint filed, and without prior notice or opportunity of Borrower for prior hearing, in favor of the holder of this Promissory Note in the full amount outstanding on this Promissory Note (including principal, accrued interest and any and all charges, fees and expenses) plus court costs, plus attorneys' fees equal to fifteen percent (15%) of the unpaid balance of principal, interest, charges, and other sums outstanding hereunder, with release of all errors and without right of appeal. Borrower waives the benefit of any and every statute, ordinance, or rule of court which may be lawfully waived conferring upon Borrower any right or privilege of exemption, homestead rights, appraisement, stay of execution, or supplementary proceedings, or other relief from the enforcement or immediate enforcement of a judgment or related proceedings on a judgment. (To the extend prohibited by applicable law, any judgment obtained by confession shall not constitute a lien on any real property located in Pennsylvania which is the residence of the Borrower.) The authority and power to appear for and enter judgment against Borrower shall not be exhausted by one or more exercises thereof, or by any imperfect exercise thereof, and shall not be extinguished by any judgment entered pursuant thereto; such authority and power may be exercised on one or more occasions from time to time, in the same or different jurisdictions, as often as the holder shall deem necessary or advisable. BORROWER HEREBY ACKNOWLEDGES THAT THE CONFESSION OF JUDGMENT PROVISIONS HEREIN CONTAINED WHICH AFFECT AND WAIVE CERTAIN LEGAL RIGHTS OF BORROWER HAVE BEEN READ, UNDERSTOOD AND VOLUNTARILY AGREED TO BY BORROWER.

14. EXPENSES. Borrower shall pay all costs and expenses, including attorneys' fees (to the extent not prohibited by law) incident to the making of the Loans. Borrower shall pay all costs and expenses incurred by Bank in collecting sums due under this Promissory Note, including without limitation the costs of any lien, judgment or other record searches, appraisals, travel expenses and the like. In addition, if this Promissory Note is referred to an attorney for collection, whether or not judgment has been confessed or suit has been filed, Borrower shall pay all of the holder's costs, fees (including, but not limited to, the holder's attorneys' fees, charges and expenses) and all other expenses resulting from such referral.

15. AMENDMENTS. The fees and charges required to be paid by Borrower in connection with the Loans may, at any time and from time to time, be amended by Bank, upon prior written notice thereof to Borrower and otherwise in compliance with applicable law. Any such amendment shall become effective on the first day of the month in which Borrower obtains a Loan, after the date specified in the notice of amendment (which date shall be not less than thirty (30) days from the date

Page -3-

BS-3108A-9811 PAGE 3

PK 10

the notice was mailed to Borrower), or upon such other date as may be required in accordance with applicable law. I Borrower obtains a Loan after the date specified in the notice, the changes in the fees and charges described in th amendment shall apply to all outstanding unpaid indebtedness and obligations under this Promissory Note, whether incurre or arising prior to, upon, or after the effective date of the amendment.

16.  **NEGOTIABLE INSTRUMENT.** Borrower agrees that this Promissory Note shall be deemed to be a negotiabl instrument, even though this Promissory Note may not qualify under applicable law, absent this paragraph, as a negotiabl instrument.

17.  **WAIVERS.** Borrower, and all parties to this Promissory Note, whether maker, indorser, or guarantor, waive presentment, demand, notice of dishonor and protest.

18.  **EXTENSIONS OF MATURITY.** All parties to this Promissory Note, whether maker, indorser, or guarantor, agree that the maturity of this Promissory Note, or any payment due hereunder, may be extended at any time or from time to time without releasing, discharging, or affecting the liability of such party.

19.  **NOTICES.** Any notice or demand required or permitted by or in connection with this Promissory Note, without implying the obligation to provide any notice or demand, shall be in writing at the address set forth below or to such other address as may be hereafter specified by written notice to Bank by Borrower. Any such notice or demand shall be deemed to be effective as of the date of hand delivery or facsimile transmission, one (1) day after dispatch if sent by telegram, mailgram, overnight delivery, express mail or federal express, or three (3) days after mailing if sent by first class mail with postage prepaid.

20.  **ASSIGNABILITY.** This Promissory Note may be assigned by Bank or any holder at any time.

21.  **JOINT AND SEVERAL LIABILITY.** If more than one person or entity is executing this Promissory Note as Borrower, all liabilities under this Promissory Note shall be joint and several with respect to each of such persons or entities.

22.  **BINDING NATURE.** This Promissory Note shall inure to the benefit of and be enforceable by Bank and Bank's successors and assigns and any other person to whom Bank may grant an interest in Borrower's obligations to Bank, and shall be binding and enforceable against Borrower and Borrower's personal representatives, successors and assigns.

23.  **INVALIDITY OF ANY PART.** If any provision or part of any provision of this Promissory Note shall for any reason be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of this Promissory Note and this Promissory Note shall be construed as if such invalid, illegal or unenforceable provision or part thereof had never been contained herein, but only to the extent of its invalidity, illegality or unenforceability.

24.  **MAXIMUM RATE OF INTEREST; COMMERCIAL LOAN.** Notwithstanding any provision of this Promissory Note to the contrary, Borrower shall not be obligated to pay interest hereunder in excess of the maximum rate of interest permitted by the laws of any state determined to govern this Promissory Note or the laws of the United States applicable to loans in such state. If any provision of this Promissory Note shall ever be construed to require the payment of any amount of interest in excess of that permitted by applicable law, then the interest to be paid hereunder shall be held subject to reduction to the amount allowed under applicable law, and any sums paid in excess of the interest rate allowed by law shall be applied in reduction of the principal balance outstanding under this Promissory Note. Borrower acknowledges that it has been contemplated at all times by Borrower that the laws of the Commonwealth of Pennsylvania will govern the maximum rate of interest that it is permissible for the holder of this Promissory Note to charge Borrower under this Promissory Note. Borrower warrants that this Promissory Note evidences a loan made solely to acquire or carry on a business or commercial enterprise.

25.  **CHOICE OF LAW; CONSENT TO VENUE AND JURISDICTION.** This Promissory Note shall be governed, construed and interpreted in accordance with the laws of the Commonwealth of Pennsylvania, even if the Commonwealth of Pennsylvania rules governing conflicts of laws would otherwise require that the laws of another jurisdiction govern this Promissory Note. Borrower consents to the jurisdiction and venue of the courts of any city or county in the Commonwealth of Pennsylvania or to the jurisdiction and venue of the United States District Court for the Middle District of Pennsylvania in any action or judicial proceeding brought to enforce, construe or interpret this Promissory Note.

26.  **UNCONDITIONAL OBLIGATIONS.** Borrower's obligations under this Promissory Note shall be the absolute and unconditional duties and obligations of Borrower and shall be independent of any rights of set-off, recoupment or counterclaim which Borrower might otherwise have against the holder of this Promissory Note, and Borrower shall pay absolutely the payments of principal, interest, fees, charges and expenses required hereunder, free of any deductions and without abatement, diminution or set-off.

27.  **ACTIONS AGAINST BANK.** Any action brought by Borrower against Bank which is based, directly or indirectly, or in whole or in part, upon this Promissory Note or any matter related to this Promissory Note shall be brought only in the courts of the Commonwealth of Pennsylvania.

28.  **WAIVER OF JURY TRIAL.** Borrower (by execution of this Promissory Note) and Bank (by acceptance of this Promissory Note) agree that any suit, action, or proceeding, whether claim or counterclaim, brought or instituted by Borrower, Bank, or any successor or assign of Borrower or Bank on or with respect to this Promissory Note or which in any way relates, directly or indirectly, to the obligations of Borrower to Bank under this Promissory Note, or the dealings of the parties with respect thereto, shall be tried only by a court and not by a jury. BORROWER AND BANK HEREBY EXPRESSLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION, OR PROCEEDING. Borrower and Bank acknowledge and agree that this provision is a specific and material aspect of the agreement between the parties and that Bank would not enter into the transaction with Borrower if this provision were not a part of their agreement.

[SIGNATURES CONTAINED ON NEXT PAGE]

IN WITNESS WHEREOF, and intending to be legally bound hereby, the undersigned executes this Promissory Note under seal, as Borrower, as of the date first written above.

WITNESS/ATTEST*:

_CCI Construction Co., Inc_
(Name of Organization)

_7500 Old Gettyshurg Rd_
(Street Address)

_Camp Hill, Pa 17011_
(City-State-Zip)

_717-909-4224_     _717-909-460_
(Telephone)              (Facsimile)

_EM Avery_
E.M. AVERY ASSISTANT SECRETARY
(Print Name)

By: _[signature], CFO_ _____(SEAL)
(Authorized Signature)

_Sheri Phillips, CFO_
(Print Name and Title)

_____
(Print Name)

By: _____(SEAL)
(Authorized Signature)

_____
(Print Name and Title)

*NOTE: Attestation by a corporate officer of another corporate officer's capacity to sign is required in all corporate transactions.

If Borrower is an individual he or she should sign below:

WITNESS:

_____
(Print Name)

_____(SEAL)
(Print Name)

_____
(Street Address)

_____
(City-State-Zip)

_____
(Telephone)         (Facsimile)

EXHIBIT A
FILM/Cash Solutions Promissory Note

Account Number: __28864514__

Borrower: __CCI Construction Co[...], Inc.__

The terms and provisions of the option checked below are incorporated in and made a part of the FILM/Cash Solutions Promissory Note executed by Borrower to which this Exhibit A is attached:

[X] **FILM LOAN OPTION** - The following terms apply to this option:
  i) Maximum Line Amount - __$4,000,000.00__
  ii) Minimum Loan Advance - $0.01
  iii) Incremental Advance Amount - __$1.00__
  iv) Target Balance - $ __0__
  v) Fees - __0__

[ ] **CASH SOLUTIONS PROTECTION OPTION** - The following terms apply to this option:
  i) Maximum Line Amount - _____
  ii) Minimum Loan Advance - $500.00
  iii) Incremental Advance Amount - $500.00
  iv) Target Balance - $ _____
  v) Fees - _____

[ ] **CASH SOLUTIONS MAXIMIZER OPTION** - The following terms apply to this option:
  i) Maximum Line Amount - _____
  ii) Minimum Loan Advance - $500.00
  iii) Incremental Advance Amount - $500.00
  iv) Target Balance - $ _____
  v) Fees - _____
  vi) Balance in Account is not transferred to investments until all Loans are paid in full.

[ ] **CASH SOLUTIONS LOAN OPTION** - The following terms apply to this option:
  i) Maximum Line Amount - _____
  ii) Minimum Loan Advance - $500.00
  iii) Incremental Advance Amount - $500.00
  iv) Target Balance - $ _____
  v) Fees - _____

WITNESS/ATTEST:                    BORROWER:
                                   _CCI Construction Co., Inc_
                                   By: _[signature], CFO_ (SEAL)
                                   Name: _Sheri Phillips_
                                   Title: _CFO_

If Borrower is an individual he or she should sign below:

_____          _____(SEAL)
                                 Name: _____

PA-FCS-PN
10/13/98

BS-2706B-9811                         Exhibit "A" - Page 1
                                                      PD 50

## CERTIFICATE OF SERVICE

Robert A. Burke, attorney for Defendant, John Ortenzio, hereby certifies that he caused a true and correct copy of Defendant's Motion for Leave to File a Supplemental Memorandum of Law to be served upon the following on this 20th day of June, 2002, by Federal Express Next Day Delivery:

> Lawrence Gebhardt, Esquire
> Gebhardt & Smith, LLP
> The World Trade Center, Ninth Floor
> Baltimore, MD 21020-3064

_____
ROBERT A. BURKE, ESQUIRE