**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLFIRST BANK, : | |
| Plaintiff, : | |
| v. : | CASE NO. 1:01-CV-786 |
| JOHN M. ORTENZIO, : | |
| Defendant. : | |

FILED
HARRISBURG, PA

NOV 14 2002

MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

## DEFENDANT'S SUPPLEMENTAL POST-TRIAL BRIEF

Defendant, John M. Ortenzio, by his undersigned counsel, respectfully submits this Supplemental Post-Trial Brief.

Allfirst Bank did not establish its fraud claim against Mr. Ortenzio by any standard, let alone by clear and convincing evidence. There was no reason for Mr. Ortenzio to believe that the method of repayment of CCI's $1.2 Million Short-Term Note was in any way prohibited, particularly since he was never advised to the contrary. Nor was there a prohibition in any of the CCI/Allfirst loan documents. The method of payment of the $1.2 Million Short-Term Note was, in fact, identical to the method of payment used by CCI to pay all its bills: namely, writing a check on CCI's account with Allfirst Bank. In fact, CCI made repayments on the equipment note facility in the identical manner.

### The November 1999 Financial Projections Did Not Constitute Fraud

The financial projections that were provided by CCI to Allfirst Bank in November 1999 do not provide a basis for a fraud claim against Mr. Ortenzio. First, the November 1999 financial projections were never introduced as evidence or even identified. Indeed, these documents were never produced to Mr. Ortenzio in discovery. Second, the only evidence admitted at trial regarding information that was conveyed to Allfirst Bank in that November, 1999 meeting was that CCI was having significant cash flow difficulties. Sherry Phillips testified that she advised Allfirst in that November, 1999 meeting that CCI was projected to lose as much as $6.5 million dollars. (Phillips, Vol. 2, 350:7-351:19). Mr. Zarcone testified that based upon the information given to Allfirst in November, 1999,

Allfirst was aware that the situation was serious for CCI and that the information was of such a nature as to cause CCI's rating at the bank to fall. (Zarcone, Vol. 3, 460:11-462:11).

Third, the information conveyed to Allfirst Bank in November, 1999, was in the nature of "projections". These projections were just that. (Ortenzio, Vol. 3, 498:1-500:14). There was no representation or requirement that these projections of future events would prove to be 100% accurate. The projections as to CCI's potential loss of up to $6.5 million dollars turned out to be accurate.

Accordingly, contrary to the position taken by Allfirst at trial, the November, 1999 financial projections that were provided to Allfirst not only advised Allfirst as to CCI's financial difficulties, but also turned out to be accurate. Allfirst was unable to establish by clear and convincing evidence that the November, 1999 financial projections were inaccurate or turned out to be false in any way. Moreover, there was nothing in any of the CCI/Allfirst loan documents that required CCI to perform in accordance with the November, 1999 "projections" before the $1.2 Short-Term Note could be repaid.

**All Information That Would Have Disclosed The Source Of Repayment Was Readily Discoverable By Allfirst And, Therefore, Allfirst Cannot Establish The Element of Justifiable Reliance.**

Allfirst cannot prevail in its fraud action because it cannot establish the element of justifiable reliance by clear and convincing evidence. When a party is

in a position to discover facts that would disclose the falsity of the alleged misrepresentation, his knowledge of those facts may be inferred. See, Marian Bank v. International Harvester Credit Corp., 550 F. Supp. 456, 462 (E.D. Pa. 1982); Emery v. Third Nat'l Bank of Pittsburgh, 308 Pa. 504, 162 A. 281 (1932). In order to discover the relevant information, Pennsylvania courts have held that a reasonable inquiry consists of inspecting any relevant documents or questioning the defendant. Marian Bank, 550 F. Supp. at 462.

In this case, Allfirst had easy access to the information that would have led to the discovery of the source of repayment.[1] (Gibson, Vol. 2, 432:7 – 440:12). Allfirst merely had to enter a few keystrokes on the computer to access the information in its possession. If Allfirst had undertaken this simple means of inquiry at any time on the following business day, the information on Allfirst's computers would have shown that the repayment of the $1.2 million loan resulted in a draw on the line of credit. (Zarcone, Vol. 3, 481:10-13). Allfirst's discovery

---

[1] At trial, Allfirst sought to introduce Mr. Ortenzio's testimony from his bankruptcy deposition wherein he stated that he may have advised Schwartz on February 11, 2000 that CCI's November, 1999 projections were accurate and that enough funds to repay the note were coming from receivables collected on CCI's projects. (Ortenzio, Vol. 1, 200:7-14). Ortenzio's statement was true. As the evidence introduced at trial showed, CCI collected more than $5 million in the month of February 2000 – more than enough to repay the $1.2 million loan and to repay almost the entire $4 million line of credit. (Ortenzio, Vol. 3, 503:4 – 504:8) and Account Statement (Exhibit D-24).

3

of this information on the next business day would have given it ample time to reverse the transaction.[2]

**Allfirst Is Seeking To Recover The Balance Owed On The $4 Million Line Of Credit But For The Alleged Fraud, However, Allfirst's Breach Of The 30 Day Notice Of Default Provision Precludes Recovery.**

At trial, Allfirst contended that the damages it was seeking to recover for Ortenzio's alleged fraud was the balance due on the $4 million line of credit. However, the fact that Allfirst is due any amount on the line of credit is the result of Allfirst's own improper actions. Allfirst breached the $4 Million Line of Credit by using the material adverse change clause as the basis for default and by failing to provide 30 days notice of its intent to place the $4 Million Line of Credit in default.

The relevant loan documents between CCI and Allfirst provided that Allfirst was required to give CCI 30 days notice of its intent to place the line of credit in default. (Exhibit P-2). Despite the existence of this provision, Allfirst placed the $4 million line of credit in default without any notice to CCI, dishonored all checks previously written, and reversed wire transfers and checks previously honored, thereby putting CCI out of business causing its financial demise. The specific

---

[2] In fact, Schwartz testified that he may have actually accessed the information on Allfirst's computers that would have shown the $1.2 million loan payment was a draw on the line of credit. (Schwartz, Vol. 1, 66:19 – 70:10).

4

basis of the default, according to Allfirst's default letter, was that CCI's financial condition had suffered a material adverse change. However, the loan documents relied upon by Allfirst, show that the material adverse change provision was deleted from the line of credit.

Furthermore, as Phillips testified, the 30 day notice provision was particularly important to Ortenzio because he wanted CCI to have time to react and obtain alternate financing. (Phillips, Vol. 2, 356:3 – 15). Phillips also testified that the material adverse change provision was stricken from the $4 million line of credit to make it clear that Allfirst could not declare the line of credit to be in default in the event of a material adverse change in CCI's financial condition. (Exhibit P-2) and (Phillips, Vol. 2, 354:3 – 355:13).

Allfirst's failure to honor the 30 day notice provision and its reliance on a default provision that had been stricken from the loan documents should bar Allfirst from recovering any amount due under the $4 million line of credit, as it was Allfirst's own improper actions which caused the preference and CCI's purported "default."

### Zarcone's Testimony As To The Manner Repayment Was Clear

Allfirst's entire case rests on whether the method of repayment of the $1.2 Million Short-Term Note chosen by CCI was proper. Michael Zarcone testified clearly that the method of repayment chosen by CCI was not only proper, but was

"normal"; i.e: repaying one fully funded loan with a borrowing on a line of credit. Mr. Zarcone at no time conditioned his testimony on whether one loan facility was personally guaranteed or not. (Zarcone, Vol. 3, 490:7-12; 491:14-21). In fact, Mr. Zarcone was fully aware when he testified that the guaranteed loan was repaid from the unguaranteed loan. (Zarcone, Vol. 3, 479:2-25; 490:17-491:21).

### Schwartz's Testimony Is Irrelevant

Schwartz's testimony at trial as to what he "believed" was necessary for CCI to repay the $1.2 Million Short-Term Note is immaterial. The terms and conditions of the Allfirst/CCI loan documents are relevant, not in Schwartz's beliefs. According to Mr. Schwartz, in order for CCI to properly repay the $1.2 million dollar note, the following had to occur: (1) CCI had to perform in accordance with the November, 1999 "projections"; (2) the $4 million loan balance had to be completely paid down to zero (even though the $4 million line of credit was not due for renewal until one month after the $1.2 Million Short-Term Note would be repaid); (3) CCI had to have $1.2 million in its checking account; and (4) All the money that came into CCI had to come from receivables that were collected by CCI.

Whether Schwartz secretly or belatedly believed that all these conditions were necessary when he recommended that the $1.2 Million Short-Term Note be made to CCI in November, 1999 is irrelevant. None of these requirements were

6

placed in any of the loan documents that CCI (or Mr. Ortenzio) executed. These were loan documents that Allfirst drafted. If there were other requirements or conditions for repayment, Allfirst had an obligation to place these requirements in the loan documents. (Schwartz, Vol. I, 85:12-25).

## Conclusion

Based upon the forgoing reasons, Defendant, John M. Ortenzio, respectfully requests that this Honorable Court enter judgment in his favor. At the time CCI repaid the $1.2 million Short-Term Note, Mr. Ortenzio had no reason to believe that the method of repayment was in any way improper. (Ortenzio, Vol. 1, 202: 14-22). Allfirst Bank did not establish fraud by clear and convincing evidence.

        Respectfully submitted,

        BLANK ROME COMISKY & McCAULEY LLP

BY: _____
      EDWARD I. SWICHAR, ESQUIRE
      ROBERT A. BURKE, ESQUIRE
      *Attorneys for Defendant, John M. Ortenzio*

Dated: November 13, 2002

## CERTIFICATE OF SERVICE

Edward I. Swichar, attorney for Defendant, John Ortenzio, hereby certifies that he caused a true and correct copy of Defendant's Supplemental Post-Trial Brief to be served upon the following on this 13th day of November, 2002, by Federal Express, next day delivery:

> Lawrence Gebhardt, Esquire
> Gebhardt & Smith, LLP
> The World Trade Center, Ninth Floor
> Baltimore, MD  21202

_____
EDWARD I. SWICHAR

113449.00601/21082491v1